**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| ELIC BARKWELL and GARY MASSEY, on behalf of themselves and all other similarly situated persons,<br><br>    Plaintiffs,<br><br>v.<br><br>SPRINT COMMUNICATIONS COMPANY, L.P., SPRINT NEXTEL CORPORATION, SPRINT SOLUTIONS, INC., and SPRINT SPECTRUM, L.P.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE<br><br>NO. 4:09-CV-56 (CDL)<br><br><br><br><br>**Jury Trial Demanded** |

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

COME NOW Plaintiffs Eric Barkwell and Gary Massey, on behalf of themselves and all

others similarly situated, upon personal knowledge as to themselves and their own acts, and as to

all other matters upon information and belief, and complain against Defendants Sprint

Communications Company, L.P., Sprint Nextel Corporation, Sprint Solutions, Inc., and Sprint

Spectrum, L.P. (collectively referred to herein as "Sprint" or "Defendants")[1] as follows:

---

[1] Defendant Sprint Communications Company, L.P. has indicated in discovery that it is not the proper Defendant; however, it has refused to provide Plaintiffs with the identity of the alleged proper party. Consequently, Plaintiffs have named the several Sprint entities that initial research and investigation indicates may be responsible.

INTRODUCTION

1.

Plaintiffs bring this action individually and on behalf of a proposed class of persons, as defined more fully herein, who were Sprint customers and were injured by Defendants' improper assessment of "Sprint Surcharges."

2.

Through a uniform scheme and common course of conduct, Sprint induces customers to enroll in subscriber agreements by advertising "flat rate" pricing without adequately disclosing prior to enrollment that they will also be subject to additional "Sprint Surcharges," imposes surcharges that are greater in amount than specified in the agreement, and imposes surcharges to recover expenses that are unrelated to "costs associated with governmental programs."

3.

Sprint's conduct gives rise to Plaintiffs' claims for (i) breach of contract; (ii) unconscionability; (iii) declaratory relief; and (iv) unjust enrichment.

PARTIES

4.

Plaintiff Eric Barkwell ("Mr. Barkwell") is an individual over the age of 18 years, currently residing in the City of Columbus in Muscogee County, Georgia.  Mr. Barkwell is a customer of Sprint and has been assessed "Sprint Surcharges."

5.

Plaintiff Gary Massey ("Mr. Massey") is an individual over the age of 18 years, currently residing in the City of Austin in Travis County, Texas.  Mr. Massey is a customer of Sprint and has been assessed "Sprint Surcharges."

6.

Defendant Sprint Communications Company, L.P. is a Delaware limited partnership with its principal place of business at 6500 Sprint Parkway, Overland Park, Kansas.  Defendant Sprint Communications Company, L.P. has already been served with process and has answered the initial Complaint.

7.

Defendant Sprint Nextel Corporation is a Kansas corporation with its principal place of business at 2001 Edmund Halley Drive, Reston, Virginia.

8.

Defendant Sprint Solutions, Inc. is a Delaware corporation with its principal place of business at 6500 Sprint Parkway, Overland Park, Kansas.

9.

Defendant Sprint Spectrum, L.P. is a Delaware limited partnership with its principal place of business at 6160 Sprint Parkway, Overland Park, Kansas.

<u>JURISDICTION AND VENUE</u>

10.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).  This is a class action involving more than 100 class members.  At least one member of the class is a citizen of a state

different from Defendants' state of incorporation or principal place of business, and the amount in controversy, in the aggregate, exceeds the sum of $5,000,000 exclusive of interest and costs.

11.

Venue is proper under 28 U.S.C. § 1391. Defendants conduct substantial business in this District. Defendants are licensed to conduct business in the State of Georgia and have transacted business, committed illegal and/or improper acts in, and maintained agents or representatives in this District. Defendants also regularly and continuously conduct business in interstate commerce that is carried out in part in this District.

FACTUAL ALLEGATIONS

12.

Sprint is in the business of providing wireless telephone and data services. Sprint offers several types of service plans.

13.

One type of plan is a "flat rate" plan, where customers receive a specified number of minutes per month to utilize their wireless telephone in exchange for a set flat payment to Sprint. The upside of such a plan to customers is obvious – so long as they use the specified number of minutes or less every month, their monthly bill will remain the same.

14.

Sprint aggressively markets and advertises its flat rate service plans through all outlets of the media, including in radio, internet, and television advertisements, and in calling plan brochures and handouts which are available to potential customers at Defendants' retail stores or the stores of Defendants' authorized agents.

15.

Sprint's advertisements eagerly convey to the customer that they can receive a certain number of minutes per month in exchange for a specified monthly fee.

16.

Many of the advertisements and marketing materials for these plans fail to disclose that Sprint intends to impose "Sprint Surcharges" *on top of* the specified rate.

17.

According to its invoices, "Sprint Surcharges" are "not taxes or amounts [Sprint] is required to collect from [its customers]" but rather are fees assessed by Sprint to "recover costs associated with governmental programs."

18.

The advertisements and marketing materials which do disclose the existence of "Sprint Surcharges" intentionally do so in a manner whereby the casual viewer or listener will miss it. For instance, the print marketing materials disclose the imposition of "Sprint Surcharges" in such a tiny font that it is barely legible to the naked eye.

19.

Sprint obviously intends that most individuals hearing or reading the advertisements will miss the surcharge caveat.

20.

As a result of such marketing and advertisements, many customers who are interested in enrolling in flat rate plans with Sprint are unaware that they will be charged "Sprint Surcharges" on a monthly basis.  Customers' reasonable expectation is that Sprint has included all ordinary and known charges within the quoted and agreed-upon flat rate amount.

21.

When a customer enters a Sprint retail store or a third-party retail store to enroll in a flat rate plan with Sprint, Sprint often has the customer sign an electronic keypad or paper form acknowledging certain contractual terms.  In some instances, this electronic keypad or paper form states that the customer has been provided the standard wireless Subscriber Agreement ("Agreement") which consists of the verbiage disclosed at the time of purchase and several other documents.

22.

The Agreement is not just a single document, but actually consists of multiple voluminous parts, including (i) the service/rate plan brochure, (ii) the coverage map brochure, (iii) the General Terms & Conditions of Service, (iv) any documents which are marked "Subscriber Agreement," and (v) the disclosures at the point of purchase.  Except for the last of the five categories, these documents are not actually provided to or shown to the customer and are generally not available if requested by the customer.  The Agreement is not subject to negotiation or modification and is thus a contract of adhesion.

23.

When a customer subsequently objects to a term or condition of which they were previously unaware, such as the imposition of "Sprint Surcharges," Sprint refers to the acknowledgement signed by the customer when they enrolled as proof that the customer read and agreed to abide by the terms of all of the parts of the Agreement.

24.

This would arguably be a meritorious defense if Sprint actually:  (i) provided copies of the documents comprising the Agreement to customers prior to asking them to sign the acknowledgement; (ii) adhered to the express language of the contract; and (iii) acted in good faith to the extent the contract affords Sprint discretion to assess surcharges.

25.

However, it is Sprint's policy and practice not to provide the documents comprising the Agreement.  Consequently, virtually all customers sign the acknowledgement without ever having read the Agreement.

26.

Clearly, Sprint endeavors to provide as little information as possible concerning the terms and conditions of service, including the imposition of "Sprint Surcharges," to customers prior to locking them into the Agreement.  Information that has been provided to millions of customers in at least some of the documents comprising the Agreement was affirmatively wrong as has been admitted by Sprint in this action.

27.

After a consumer enrolls with Sprint, Defendants send the customer a monthly invoice that itemizes charges into certain broad categories.  The invoices typically have a section which summarizes the "Sprint Surcharges" as:

> . . . rates we choose to collect from you to help defray costs imposed on us. Surcharges are not taxes or amounts we are required to collect from you by law. Surcharges may include: Federal USF, regulatory charges, administrative charges, gross receipts charges, and other charges incurred to recover costs associated with governmental programs . . . .

28.

In reality, however, the surcharges assessed by Sprint are not imposed solely to obtain reimbursement for "costs associated with governmental programs." Rather, they are also assessed to recoup ordinary business expenses that virtually every business regularly incurs. Rather than recoup such expenses out of the agreed-upon flat rates, Sprint uses its self-deeded contractual discretion to impose additional amounts on its customers to improve its profit margin. This practice is not disclosed to its customers.

29.

Plaintiff Eric Barkwell has been a Sprint customer since November 2007.

30.

In the early part of 2009, Mr. Barkwell determined that he needed to reduce the amount of money he was spending on his wireless service. He learned that Sprint had a plan where he would be billed $39.99 per month in exchange for 450 minutes of wireless service during peak hours.

31.

On February 3, 2009, Mr. Barkwell entered a Sprint store in Atlanta, Georgia, and indicated his desire to change to a lower flat rate plan. As part of the transaction, Mr. Barkwell recalls that the Sprint representative read him two lines of contractual verbiage and then stated that the remaining verbiage was similar "legal mumbo jumbo." The Sprint representative then asked Mr. Barkwell to sign his name to an electronic keypad. Mr. Barkwell did so.

32.

Mr. Barkwell was not presented with the documents comprising the Agreement before signing the keypad other than limited portions of the point of sale disclosure.

33.

Sprint contends that Mr. Barkwell was presented with a copy of one of the documents comprising the Agreement and that this document contained the following disclosure regarding "Sprint Surcharges":

> [m]onthly charges exclude taxes, Sprint Surcharges [incl. USF charge of up to 11.4% (varies quarterly), Administrative Charge ($0.75/line/mo), Regulatory Charge ($0.20/line/mo) & state/local fees by area (e.g., in some areas up to 16% but in most areas less than 3%)].
>
> Sprint Surcharges are not taxes or government-required charges and are subject to change.

Sprint has stipulated before the Court as part of this action that these terms reflect a binding contract between Mr. Barkwell and Sprint.

34.

In mid-February, Mr. Barkwell received his first monthly invoice from Sprint following the change to his account.  This invoice noted that he was being billed for the following "Sprint Surcharges":

| | |
|---|---|
| Federal-Univ Serv Assess Non-LD……………… | $0.69 |
| Administrative Charge…………………………… | $0.99 |
| Regulatory Charge……………………………… | $0.20 |
| | $1.88 |

35.

The $0.99 monthly "Administrative Charge" was greater than the $0.75 charge which was set forth in the disclosures allegedly presented to Mr. Barkwell at the time he began his new Sprint plan.  The procedures utilized by Sprint to enroll Mr. Barkwell were in use across the Sprint corporation.   For example, any point of sale contractual disclosures as to the "Administrative Charge" were an element of the sale transaction used by the company

nationwide.  As such, Mr. Barkwell was one of many persons who were erroneously informed that Sprint's "Administrative Charge" would not exceed $0.75.

36.

Mr. Barkwell did not receive any notice that the amount for the "Administrative Charge" would increase.

37.

Sprint has offered no justification for charging customers $0.24 in excess of the purportedly agreed-upon amount.  Moreover, Sprint has wholly failed to show that any portion of the "Sprint Surcharges" was actually necessary to defray "costs associated with governmental programs."

38.

In October 2009, Plaintiff Gary Massey entered a Sprint store in Austin, Texas to conduct some research on Sprint's wireless service.  He ultimately settled on a plan with Sprint whereby he would receive specified services in exchange for a set flat rate.

39.

Mr. Massey's receipt stated that he would be assessed the following "Sprint Surcharges" in conjunction with his service:

> Texas State-Univ Serv Assessment………………  $2.07
> Texas State-Margin Fee Reimbursement…………  $0.80
> Federal-Univ Serv Assess Non-LD………………  <u>$2.11</u>
> $4.98

40.

As part of the transaction, Mr. Massey recalls signing his name to an electronic keypad when asked to do so by the sales associate.  He was not, however, presented with all of the documents comprising the Subscriber Agreement before signing the keypad.

41.

In November 2009, Mr. Massey purchased a second wireless telephone at a Best Buy store in Temple, Texas and added a line to his account with Sprint.

42.

As part of the transaction, Mr. Massey recalls signing his name to an electronic keypad when asked to do so by the sales associate.  He was not, however, presented with all of the documents comprising the Subscriber Agreement before signing the keypad.

43.

In December 2009, Mr. Massey received his monthly invoice.  He was assessed "Sprint Surcharges" as follows:

Federal-Univ Serv Assess Non-LD……………… $2.34
Texas State-Margin Fee Reimbursement………… $1.01
Texas State-Univ Serv Assessment……………… $2.40
Administrative Charge…………………………… $1.98
Regulatory Charge……………………………… $0.40
                                                                $8.13

44.

The "Sprint Surcharges" are greater than that which was set forth in the disclosures presented to Mr. Massey at the time he entered his plan.

45.

Mr. Massey did not receive any notice between the time he changed his plan and his first subsequent bill that the amount for the "Sprint Surcharges" would increase.

<u>CLASS ACTION ALLEGATIONS</u>

46.

Plaintiffs Mr. Barkwell and Mr. Massey bring this action both individually and on behalf of:

<u>Simple Breach Class</u>

All persons in the United States, or such states as may be appropriate, and as the Court may order, who are or were Sprint customers, and paid Sprint Surcharges in an amount which exceeded that specified in their contract.

<u>Improper Costs Class</u>

All persons in the United States, or such states as may be appropriate, and as the Court may order, who are or were Sprint customers, and were assessed Sprint Surcharges in an amount that exceeded Sprint's actual "costs associated with governmental programs."

47.

The Classes are subject to change following discovery and prior to class certification.

48.

Currently, Plaintiffs do not know the number of persons included within these tentative class definitions; however, due to the size of Sprint and the millions of customers who are assessed Sprint Surcharges on a monthly basis, Plaintiffs believe that the Class members are so numerous that joinder of all members is impracticable.  The number of Class members can be determined through discovery.

49.

There are questions of law or fact common to the Classes, including at least the following, and these common questions predominate over questions affecting only individual Class members:

(a)     Whether Sprint's conduct in assessing Sprint Surcharges in amounts greater than disclosed to its customers is a breach of contract or gives rise to liability under statutory or common law;

(b)     Whether Sprint's conduct of seeking to recover non-governmental program associated expenses through Sprint Surcharges is a breach of contract or gives rise to liability under statutory or common law;

(c)     Whether Sprint charged the Class members Sprint Surcharges;

(d)     Whether Sprint was unjustly enriched;

(e)     Whether declaratory relief is appropriate;

(f)     Whether Plaintiffs and the Class members have been damaged, and if so, the proper measure of such damages; and

(g)     Whether injunctive relief is appropriate.

50.

Plaintiffs have the same interests in this case as all other Class members and their claims are typical of all other Class members.

51.

Plaintiffs will fully and adequately represent and protect the interests of the entirety of the Classes because of the common injuries and interests of the Class members and the singular conduct of Defendants applicable to all Class members.  Plaintiffs have retained counsel competent and experienced in the prosecution of class litigation.  Plaintiffs have no interests that are contrary to or in conflict with those of the Classes they seek to represent.

52.

A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  There is no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

53.

The prosecution of separate actions by individual Class members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards for Defendants under the laws alleged herein.

54.

Sprint has acted or refused to act on grounds generally applicable to the Classes thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole.

55.

The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and great expense necessary to conduct such litigation, especially in light of the modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

<u>COUNT I</u>

<u>BREACH OF CONTRACT</u>

56.

Plaintiffs incorporate by reference paragraphs 1 through 55 as if fully alleged herein.

A.      <u>Direct Breach.</u>

57.

Sprint contracted with Plaintiffs to provide wireless telephone service in exchange for specified financial payments from customers.

58.

The various elements of the Subscriber Agreement provide that customers will be charged certain amounts per month for Sprint Surcharges.  Although the Agreement also notes

that these charges will be subject change from time to time, it provides that Plaintiffs will receive notice of any such changes in advance.

59.

Plaintiffs and each Class member have performed in accordance with their contracts.

60.

By charging Plaintiffs and the Class members more per month in Sprint Surcharges than the amount specified in the Subscriber Agreement without affording proper notice, Sprint has directly breached the Agreement.

61.

As a proximate result of the aforementioned wrongful breach committed by Sprint, Plaintiffs and Class members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.  The damages proximately and directly resulting from such conduct should be taxed to Defendants.

B.      Breach of the Covenant of Good Faith and Fair Dealing.

62.

Under the law of the State of Georgia, and the other states, good faith is an element of every contract.  Every contract imposes upon each party a duty of good faith and fair dealing in its performance.  Good faith in contracting is the obligation to preserve the spirit of the bargain rather than merely the letter, the adherence to substance rather than form.  The statutory and common law of all states call for substantial compliance with the spirit, and not the letter only, of a contract in its performance.  Evasion of the spirit of the bargain and abuse of a power to specify terms have been judicially recognized as examples of bad faith in the performance of contracts.

63.

Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified.  But the obligation goes further; bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, willful rendering of imperfect performance, and abuse of a power to specify terms.

64.

Where an agreement affords one party discretion to determine the extent of the other's required performance, an obligation of good faith in making such a determination is implied. Sprint may use its discretion to choose the amounts and classifications of the Sprint Surcharges it imposes on its customers' accounts.  Because the nature and amounts of these Surcharges are set by Defendants, Sprint has an obligation to impose such charges in good faith.

65.

By charging customers costs in excess of Sprint's actual "costs associated with governmental programs," Sprint has breached its obligation to act in good faith.

66.

As a proximate result of the aforementioned wrongful breach committed by Sprint, Plaintiffs and Class members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.  The damages proximately and directly resulting from such conduct should be taxed to Defendants.

<u>COUNT II</u>

<u>BREACH OF CONTRACT AS A RESULT OF UNCONSCIONABILITY</u>

67.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-55 above as if set forth verbatim herein.

68.

Considering the great business acumen and experience of Defendants when compared to Plaintiffs and those similarly situated, the great disparity in their relative bargaining power, the inconspicuousness and incomprehensibility of the contract language relating to Sprint Surcharges, the oppressiveness of such terms, the commercial unreasonableness of such contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, any contract provisions authorizing Defendants to unnecessarily and arbitrarily impose "Sprint Surcharges" are unconscionable and therefore unenforceable as a matter of law.

69.

Here, Plaintiffs and those similarly situated are consumers, not corporations.  Sprint does not negotiate Sprint Surcharge terms with any customers.  Plaintiffs and the Class members were not in a position to bargain for more favorable contract terms, nor were they able to experience the results of Sprint's practices before contracting for their services.  With regard to the "surprise factor," Plaintiffs and those similarly situated were not made aware of Defendants' practices at the time the contract was entered into.

70.

Plaintiffs request an inquiry into the setting, purpose, and effect of these terms, including the basis and justification for unilaterally and arbitrarily imposing these charges. The wireless industry should not be immune from scrutiny. If the contractual terms as to Sprint Surcharges are deemed to be unconscionable then, with those provisions excised from the contract, Sprint will have breached the remaining contractual terms through the assessment of Sprint Surcharges.

71.

Defendants have structured totally one-sided transactions. The absence of equality of bargaining power, open negotiation, full disclosure, and a contract which fairly sets out the rights and duties of each party demonstrate that the transaction lacks those checks and balances which would inhibit the charging of unconscionable fees. Thus, each improper surcharge should be rescinded and refunded to Plaintiffs and those similarly situated.

COUNT III

DECLARATORY RELIEF IS WARRANTED

72.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-55 above as if set forth verbatim herein.

73.

There is an actual controversy between Plaintiffs, the Class members, and Sprint concerning the propriety of Sprint's assessment of Sprint Surcharges, as specified herein.

74.

Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

18

75.

Plaintiffs are interested parties who seek a declaration of their rights and legal relations with respect to Sprint with regard to the assessment of Sprint Surcharges in amounts that are greater than those specified by Sprint without providing prior notice of the change and to recover costs that are not associated with governmental programs.

COUNT IV

UNJUST ENRICHMENT

76.

Plaintiffs incorporate by reference the allegations in Paragraphs 1-55 above as if set forth verbatim herein.

77.

The claim is brought only in the alternative in case the customer agreements between the parties are found to be inapplicable or void.  Sprint received and retained a benefit conferred by Plaintiffs and the Class members at their expense through the assessment of Sprint Surcharges as specified herein.

78.

Sprint has benefited unjustly at Plaintiffs' and the Class members' expense, which in equity and good conscience, Sprint should not be permitted to retain.

79.

As a proximate result of the aforementioned wrongful breach committed by Sprint, Plaintiffs and Class members have suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

80.

Plaintiffs and the Class members are entitled to restitution from Sprint and for the disgorgement of all profits and benefits received by Sprint due to its wrongful conduct.

WHEREFORE, Plaintiffs, individually and on behalf of the Classes described herein, pray:

(1)     For an award of such damages as are authorized by law;

(2)     For restitution;

(3)     For certification of this matter as a class action lawsuit to proceed on behalf of the class of all Currently Unnamed Plaintiffs as defined after suitable discovery has been completed;

(4)     For declaratory relief;

(5)     For an award of all reasonable costs and attorneys' fees incurred by Plaintiffs;

(6)     For trial by jury of all matters; and

(7)     For such other and further relief as the Court may deem just and equitable.

DATED this 11th day of May, 2010.

                                        Respectfully submitted,

BY:    WEBB, KLASE & LEMOND, L.L.C.

        /s/ E. Adam Webb
       E. Adam Webb
          Georgia State Bar No. 743910
       Matthew C. Klase
          Georgia State Bar No. 141903

       1900 The Exchange, S.E.
       Suite 480
       Atlanta, Georgia 30339
       (770) 444-0773
       (770) 444-0271 (fax)

       Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2010, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will send a notice to the counsel of record listed below:

H. Wayne Phears, Esq.
Andrew J. Trask, Esq.
McGuire Woods LLP
1170 Peachtree Street N.E., Suite 2100
Atlanta, Georgia 30309
wphears@mcguirewoods.com
atrask@mcguirewoods.com

DATED this 11th day of May, 2010.

/s/ E. Adam Webb
E. Adam Webb