**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | |
|---|---|
| ─────────────────────────────── )<br>ERIC BARKWELL and GARY MASSEY, on )<br>behalf of themselves and all other similarly )<br>situated persons, )<br> )<br>　　　　　　Plaintiffs, )<br> )<br>v. )<br> )<br>SPRINT COMMUNICATIONS COMPANY, L.P, )<br>SPRINT NEXTEL CORPORATION, SPRINT )<br>SOLUTIONS, INC., and SPRINT SPECTRUM, )<br>L.P., )<br> )<br>　　　　　　Defendants. )<br>─────────────────────────────── ) | CIVIL ACTION FILE<br><br>NO. 4:09-CV-56 (CDL) |

**RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

E. Adam Webb
Georgia State Bar No. 743910
Matthew C. Klase
Georgia State Bar No. 141903

Webb, Klase & Lemond, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
(770) 444-0271 (fax)
Adam@WebbLLC.com
Matt@WebbLLC.com

Attorneys for Plaintiffs
Eric Barkwell and Gary Massey

COME NOW Plaintiffs Eric Barkwell and Gary Massey and submit their Response in Opposition to the Motion for Summary Judgment filed by Defendants Sprint Communications Company, L.P., Sprint Nextel Corporation, Sprint Solutions, Inc., and Sprint Spectrum, L.P. (collectively referred to as "Sprint"), showing this Honorable Court as follows:

First, Sprint argues that it has complete and unfettered discretion to increase the amount and nature of the Sprint Surcharges. While the contracts allow Sprint to change the amount of its Surcharges with notice to customers, they also specify that the Surcharges are a mechanism utilized by Sprint to recoup its costs of complying with government programs. Sprint's discretion with respect to changing the Surcharges is constrained by this provision and, of course, the covenant of good faith and fair dealing. Sprint has a duty to operate in good faith by increasing the Surcharges *only to the extent* that its government compliance costs also increase. Sprint's apparent contention that it can impose however many surcharges, and of whatever amount, it desires is wholly without merit.

Second, pursuant to the contracts, Sprint had an obligation to provide notice to Mr. Barkwell and Mr. Massey in conjunction with any changes to the Sprint Surcharges applicable to their accounts. The evidence shows that Sprint did not comply with these notice provisions. This is a direct breach on the part of Sprint, and thus summary judgment is not warranted.

Finally, Sprint's argument that Plaintiffs' claims are precluded by the voluntary payment doctrine is both premature and substantively baseless.

## FACTUAL BACKGROUND

### I.     Plaintiff Eric Barkwell.

Plaintiff Eric Barkwell, a resident of Columbus, Georgia, became a customer of Sprint's cell phone services in late 2007. See Barkwell Declaration, ¶ 4 (Exh. A hereto); November 16,

2007 Invoice (Exh. 1 to Barkwell Declaration).  In approximately January 2009, Mr. Barkwell decided he needed a more cost effective cell phone plan.  <u>See</u> Barkwell Declaration, ¶ 6.  He learned that Sprint had a flat rate plan that would reduce the amount of money he was spending on his cell phone service.  <u>Id.</u>  In or about early February 2009, Mr. Barkwell entered a Sprint store and engaged a sales associate as to switching his account to a lower flat rate plan.  <u>Id.</u> at ¶ 7.  As part of the transaction, the Sprint employee read him two lines of contractual verbiage and then stated that the remaining language was similar "legal mumbo jumbo."  <u>Id.</u>  The associate then asked him to sign an electronic keypad and he did so.[1]  <u>Id.</u>  Mr. Barkwell was not presented with the documents that Sprint now contends comprise his contract before signing the keypad and did not obtain these documents until they were produced in this litigation.  <u>Id.</u> at ¶ 8.

One of the documents Sprint now alleges is part of his contract, the "2009 Subscriber Agreement," indicates that Mr. Barkwell would be billed an "Administrative Charge" of $0.75.  <u>Id.</u> at ¶ 9; <u>also</u> 2009 Barkwell Subscriber Agr., p. 2 (Exh. 3 to Benton Aff.).[2]  This document

---

[1] Sprint continually misrepresents in its Motion that Mr. Barkwell acknowledges signing the Sprint "Subscriber Agreement" which is attached to the Affidavit of Pamela Benton as Exhibit 3. <u>See</u> Sprint Motion, pp. 3-4.  Mr. Barkwell, however, acknowledges only that he signed an electronic keypad in February 2009.  He was not presented with the "Subscriber Agreement" prior to signing the keypad and there is no evidence that the "legal mumbo jumbo" to which the Sprint associate referred was the "Subscriber Agreement" as opposed to one of the many other alleged contractual documents.  <u>See</u> Barkwell Declaration, ¶ 7.

[2] Plaintiffs object to the admissibility of the Affidavit of Pamela Benton and the documents attached thereto.  Nowhere in the Affidavit does Ms. Benton indicate that the statements made therein are based on her personal knowledge, nor does she give any foundation which would indicate that she is competent to verify the accuracy of the various attached documents, much less that the alleged contract documents are the ones that actually govern Plaintiffs' accounts.  <u>See generally</u> Benton Affidavit.  Given the sheer number of documents which Sprint contends are applicable (<u>see</u> Sprint Mot. for Summary Judgment, p. 2) and that these documents are constantly being modified and changed, Sprint at least had the burden to introduce a declaration by a competent individual who could describe which contractual documents are applicable and what qualifications that individual has to make this determination.  Sprint's failure to do so should bar it from referring to unauthenticated documents and claiming that Plaintiffs are bound by their terms.  By referring to the documents, Plaintiffs do not intend to waive these objections.

notes that Sprint may make changes to the "Ts&Cs or other parts of the Agreement," but that it would provide the customer with notice.  See Barkwell 2009 Subscriber Agr., pp. 2-3.  This notice requirement is echoed in the 2008 Terms & Conditions, which notes that Surcharges:

> . . . are subject to change as are the components used to calculate these amounts. [Sprint] will provide you with notice of any changes to Surcharges in a manner consistent with this Agreement (see "Providing Notice To Each Other Under The Agreement" section).  However, since some Surcharges are based on amounts set by the government or based on government formulas, it will not always be possible to provide advance notice of new Surcharges or changes in the amount of existing Surcharges.  Information on Surcharges is provided during the sales transaction and is available on our website.

See Sprint 2008 Terms & Conditions, Bates Nos. 595-96 (Exh. 4 to Benton Aff.).[3]

In mid to late February, Mr. Barkwell received his first monthly invoice from Sprint following the switch to the new monthly rate plan.  See Barkwell Declaration, ¶ 10.  This invoice, which contains a bill date of February 16, 2009, noted that he was being billed for an "Administrative Charge" of $0.99.  Id.; also February 16, 2009 Barkwell Invoice, Bates No. 213 (Exh. 6 to Benton Aff.).  Mr. Barkwell did not receive any communication whatsoever from Sprint prior to February 16, 2009, which indicated that the "Administrative Charge" applicable to his account would increase by $0.24.  See Barkwell Declaration, ¶ 11.  Although the February 16, 2009 invoice notes that Sprint has made changes to his account (see February 16, 2009 Barkwell Invoice, Bates Nos. 206-07), the changes that are listed do not include any reference to an increase in the "Administrate Charge."  See Barkwell Declaration, ¶ 12.  Following Mr.

---

[3] Pursuant to the section labeled "Providing Notice To Each Other Under The Agreement," Sprint is obligated to provide notice to the customer:

> . . . in [his or her] bill, correspondence to your last known billing address, to any fax number or e-mail address you've provided us, by calling you on your home phone or Device, by voice message on your Device or home phone, or by text message on your Device.

See 2008 Sprint Terms & Conditions, Bates No. 604 (Exh. 4 to Benton Aff.).

Barkwell's receipt of this invoice, he did not receive any communication whatsoever from Sprint which indicated that the "Administrative Charge" had increased from $0.75 to $0.99. Id. at ¶ 13. Indeed, Mr. Barkwell *never* received any notice that the amount for the "Administrative Charge" would increase or why such an increase was necessary. Id. at ¶¶ 14-15. Nevertheless, he was assessed the $0.99 "Administrative Charge" on several more monthly statements. Id.

> The 2009 invoices contained a paragraph which defines Sprint Surcharges as:

> . . . rates we choose to collect from you to help defray costs imposed on us. Surcharges are not taxes or amounts we are required to collect from you by law. Surcharges may include: Federal USF, regulatory charges, administrative charges, gross receipts charges, and other charges incurred to recover costs associated with governmental programs . . . .

E.g., February 16, 2009 Barkwell Invoice, Bates No. 213; May 16, 2009 Barkwell Invoice, Bates No. 252 (Exh. 7 to Benton Aff.); also Nov. 16, 2007 Barkwell Invoice, Bates No. 456 (defining Sprint Surcharges as "[c]harges assessed on Sprint that we elect to pass on to customers and are intended to recover the administrative and other costs of complying with government programs and mandates"). This paragraph echoes language found throughout the alleged contract documents which disclose that Sprint Surcharges stem from and are tied to the costs of complying with government programs and mandates. E.g., 2007 Terms & Conditions, Bates No. 496 (describing Surcharges as "charges we assess to recoup our government costs or costs of complying with certain government programs"); 2008 Terms & Conditions, Bates No. 595 (noting Surcharges include but are not limited to "Federal Universal Service, various regulatory fees, Sprint administrative charges, gross receipts charges, and charges for the costs we incur in complying with government programs"); 2009 Terms & Conditions, p. 8 (language identical to 2007 Terms & Conditions) (Exh. A to Dkt. No. 26). Mr. Barkwell was never sent notice that Sprint Surcharges would no longer be tethered to any real-world costs of Sprint, and that such fees could be increased purely at the whim of Sprint.

II.    **Plaintiff Gary Massey.**

Plaintiff Gary Massey, a resident of Austin, Texas, entered a Sprint store in October 2009 to conduct some research on Sprint's wireless services. See Massey Declaration, ¶ 4 (Exh. B hereto). After some discussion with the sales associate, he ultimately settled on the "simply everything" plan with Sprint whereby he would receive unlimited talk, text, and web for a flat rate of $99.99 per month. Id. To complete the transaction, he signed his name to an electronic keypad when asked to do so by the employee.[4] He was not presented with the documents that Sprint now contends comprise his contract before signing the keypad and did not obtain these documents until they were produced by Sprint to his counsel during this litigation. Id. at ¶ 6.

One of the documents Sprint contends is part of Mr. Massey's contract indicates that he would be billed an "Administrative Charge" of "$0.75/line/mo." Id. at ¶ 7; also October 19, 2009 Massey Subscriber Agr., p. 2 (Exh. 8 to Benton Aff.). This document contains the same notations that were provided in the 2009 Barkwell Subscriber Agreement, namely that Sprint could make changes to his Agreement, but that it would provide notice. See October 19, 2009 Massey Subscriber Agr., pp. 2-3; also Sprint 2008 Terms & Conditions, Bates Nos. 595-96.

Mr. Massey's first invoice from Sprint, dated November 22, 2009, noted that he was being billed for an "Administrative Charge" of $0.99. See Massey Declaration, ¶ 8; November 22, 2009 Massey Invoice, Bates No. 521 (Exh. 10 to Benton Aff.). Mr. Massey did not receive any communication from Sprint prior to November 22, 2009, which indicated that the "Administrative Charge" applicable to his account would increase by $0.24. See Massey Declaration, ¶ 9. Although the invoice states that Sprint had made changes to his account, the

---

[4] Like Mr. Barkwell, Mr. Massey acknowledges only that he signed an electronic keypad in October 2009. He was not presented with the "Subscriber Agreement" prior to signing the keypad and there is no evidence that by signing the keypad he agreed to the terms contained in the Subscriber Agreement. See Massey Declaration, ¶ 5.

changes that are listed do not include any reference to an increase in the "Administrate Charge" applicable to his account. Id. at ¶ 10; November 22, 2009 Massey Invoice, Bates Nos. 517-18. Mr. Massey *never* received any notice explaining why the increase was necessary. Id. at ¶ 11.

Both Mr. Massey's invoices, as well as the contract documents allegedly applicable to his account mirror the language contained in Mr. Barkwell's invoices and contracts to the effect that Sprint Surcharges stem from and are tied to the costs of complying with government programs and mandates. E.g., November 22, 2009 Massey Invoice, Bates No. 521; 2008 Terms & Conditions, Bates No. 595 (noting Surcharges include but are not limited to "Federal Universal Service, various regulatory fees, Sprint administrative charges, gross receipts charges, and charges for the costs we incur in complying with government programs"); 2009 Terms & Conditions, p. 8 (describing Surcharges as "charges we assess to recoup our government costs or costs of complying with certain government programs") (Exh. A to Dkt. No. 26). Mr. Massey was never sent notice that the Sprint Surcharges would no longer be tethered to any real-world costs of Sprint, and that such fees could be increased purely at the whim of Sprint.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    Sprint's Discretion to Change the Amount and Nature of its Surcharges Is Not Unfettered and Must Be Exercised in Good Faith.

As indicated by Sprint's counsel at the May 5, 2010 hearing, "Sprint's position is that we are entitled to add surcharges or increase surcharges at our discretion. That is Sprint's position." See May 5, 2010 Transcript, p. 28:21-23 (Exh. A to Dkt. No. 45). In support of this position, Sprint cites two provisions of the contractual documents: (1) "Sprint Surcharges are not taxes or government-required charges and are subject to change" [see Sprint Motion, p. 11 (citing 2009 Barkwell Subscriber Agr., p. 2)] and (2) "[y]ou agree to pay all surcharges [], which include, but are not limited to: . . . charges for the costs we incur in complying with governmental programs"

[id. (citing 2008 Sprint Terms & Conditions, Bates Nos. 595)].  According to Sprint, these two provisions allow it complete and unfettered discretion to add or increase the amounts of the Surcharges.  As such, Sprint asserts that it is legally entitled to bankrupt any customer at any time.  Obviously, such reasoning abjectly fails to incorporate sound principles of contractual interpretation or to comprehend the constraints of good faith and fair dealing.

Sprint's argument fails for multiple reasons.  First, the provision which indicates that the Surcharges are not "government-required charges" is wholly irrelevant.  Nowhere have Plaintiffs claimed that the Surcharges are limited to those charges which are "required" by the government.  Rather, Plaintiffs claim that the contract documents specify that Surcharges are imposed so Sprint can recoup its costs of complying with government programs and mandates.  See Amd. Complaint, ¶¶ 2, 27-28.  Indeed, the 2009 Terms and Conditions (i.e., those which were in effect when Plaintiffs executed their contracts), specifically states that:

> *[y]ou agree to pay the surcharges, fees and other charges that we assess to recoup our government costs or costs of complying with certain government programs* ("Surcharges").  Surcharges aren't taxes or government mandated charges; they're charges we choose to collect from you.

See 2009 Terms & Conditions, p. 9 (emphasis added) (Exh. A to Dkt. No. 26); also 2007 Terms & Conditions, Bates Nos. 496 (containing the same language).  Clearly, this language describing the Surcharges differs from the 2008 Terms and Conditions relied upon by Sprint.[5]  It indicates to the customer that the Surcharges are comprised of amounts necessary to reimburse Sprint for "government costs or costs of complying with certain government programs."  See 2009 Terms & Conditions, p. 9.  This sentiment is echoed in the monthly invoices which Sprint provided to Mr. Barkwell and Mr. Massey which further defined Sprint Surcharges as:

---

[5] Given that the 2009 Terms & Conditions are much more favorable to Plaintiffs, it is no wonder Sprint failed to cite to them and chose instead to rely on the out-of-date 2008 version.

> . . . rates we choose to collect from you to help defray costs imposed on us. Surcharges are not taxes or amounts we are required to collect from you by law. Surcharges may include: Federal USF, regulatory charges, administrative charges, gross receipts charges, and other charges incurred to recover costs associated with governmental programs . . . .

E.g., Feb. 16 and May 16, 2009 Barkwell Invoices, Bates Nos. 213, 252; Nov. 22, 2009 Massey Invoice, Bates No. 521; also Nov. 16, 2007 Barkwell Invoice, Bates No. 456 (Surcharges are "[c]harges assessed on Sprint that we elect to pass on to customers and are intended to recover the administrative and other costs of complying with government programs and mandates").

While Sprint enjoys some discretion to modify the Surcharges, it must exercise that discretion in good faith.[6]  Planning Technologies, Inc. v. Korman, 290 Ga. App. 715, 718 (2008) (where a contract gives one party discretionary authority to make decisions, the question in determining whether the contract has been breached is "whether the decision was made in good faith and involved the exercise of honest judgment").  Sprint is not entitled to represent to its customers in multiple contract documents and invoices that Surcharges are a mechanism utilized by Sprint to obtain reimbursement for government-related (not required) costs and then increase the Surcharges to recoup non-government related costs of doing business.  Such a tactic most certainly was not made in good faith and honest judgment.[7]  As Sprint does not enjoy unfettered discretion to add and increase the Surcharges, Sprint's Motion must be denied.

---

[6] What constitutes good faith is a question for the finder of fact.  E.g., Hunting Aircraft v. Peachtree City Airport Auth., 281 Ga. App. 450, 452 (2006).  Consequently, whether Sprint's profit making scheme of increasing Sprint Surcharges to account for non-government-related everyday costs of doing business violated the duty of good faith and fair dealing is one for the jury to decide.  See Amd. Complaint, ¶ 28.

[7] Although Plaintiffs need discovery to determine if (and to what extent) Sprint is seeking to recoup non-government-related costs within the Sprint Surcharges, the fact that Sprint has steadfastly defended its ability to assess surcharges for whatever reason it deems appropriate provides a strong indication that Sprint is engaging in such behavior.

8

## II. Sprint Has Directly Breached Its Contracts with Plaintiffs by Failing to Provide Notice of Its Decision to Increase the Surcharges.

In Georgia, the plaintiff in a breach of contract action must plead and prove subject matter of the contract, consideration, and mutual assent by all parties to all contract terms.  Cline v. Lee, 260 Ga. App. 164, 168 (2003).  Once the plaintiff has proven that a valid contract exists, he must then show: (1) breach; (2) resultant damage; and (3) that he has the right to complain about the contract being broken.  Kuritzky v. Emory Univ., 294 Ga. App. 370, 371 (2008) (citing Odem v. Pace Academy, 235 Ga. App. 648, 654 (1998)).

Texas contract law does not substantively differ on this issue.  E.g., American Family Life Ins. Co. of Columbus v. Intervoice, Inc., 659 F. Supp. 2d 1271, 1278 (M.D. Ga. 2009) (noting that under Texas law, a plaintiff must allege four elements to sustain a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach") (citing Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex. App. 1997)); also In re Staley, __ S.W.3d __, 2010 WL 3002331, *7 (Tex. App. Aug. 3, 2010) (same).

For purposes of this Motion, Plaintiffs do not dispute that their relationship with Sprint is governed by all or some of numerous contractual documents submitted by Sprint, to include the Subscriber Agreement and Terms and Conditions; consequently, there is no dispute as to the existence of a valid contract.  The main question is whether there has been a breach.  Both of the Subscriber Agreements which Sprint claims Plaintiffs signed limit the "Administrative Charge" portion of the Sprint Surcharges to "$0.75/line/mo."  See 2009 Barkwell Subscriber Agr., p. 2; October 19, 2009 Massey Subscriber Agr., p. 2.  Although the Agreements also note that Sprint Surcharges are "subject to change," the Terms and Conditions indicate that Sprint will provide notice in the event of such a change and sets forth how such notice may be provided.  See 2007

Terms & Conditions, Bates Nos. 496, 499; 2008 Terms & Conditions, Bates Nos. 595-96, 604; 2009 Terms & Conditions, pp. 9, 13 (Exh. A to Dkt. No. 26).  Counsel for Sprint conceded at the May 5 hearing that notice is required for the Surcharges to be changed.  <u>See</u> May 5, 2010 Transcript, pp. 25:23 – 26:3 ("[i]f Sprint changes [the Surcharges], it sends a notice out that says, 'We have changed it. You have 30 days to terminate'").

Sprint clearly had a duty pursuant to these contracts to provide notice to Mr. Barkwell and Mr. Massey of any change in the Sprint Surcharges.  However, the undisputed evidence shows that no notice was provided.  <u>See</u> Barkwell Declaration, ¶¶ 13-15; Massey Declaration, ¶¶ 9-11.  Consequently, Plaintiffs have shown that a breach occurred.  Additionally, given that Plaintiffs were billed $0.24 more per month for "Administrative Charges" (without notice) than their contracts indicated they would be (Mr. Barkwell for several months and Mr. Massey for one month), they have clearly suffered damages.[8]  Sprint has not introduced any evidence that Plaintiffs did not perform the obligations imposed upon them by the contracts or that they are not in a position to complain about the contract being broken.  In sum, Plaintiffs have set forth a prima facie case for breach of contract and Defendants' Motion must be denied.

**III.  <u>Sprint Has Breached Its Own Contractual Provisions by Assessing Sprint Surcharges in Excess of its Costs of Compliance with Government Programs.</u>**

As previously shown, Sprint's contracts state that the surcharges will be imposed so Sprint can obtain reimbursement for its costs of complying with governmental programs.  <u>See</u>

---

[8] Sprint argues that Mr. Barkwell and Mr. Massey could have cancelled their contracts with Sprint without penalty in the first 30 days if they did not like the increase in the Surcharges.  <u>See</u> Sprint Motion, pp. 4, 10.  Even assuming this was an option which was available to Plaintiffs, it does not change the fact that Sprint breached the contract by failing to provide notice.  At most, it relates to the amount of Plaintiffs' damages.  Furthermore, even if Plaintiffs could not prove any actual damages, they would be entitled to nominal damages as a matter of law. <u>E.g.</u>, <u>Georgia State Financing & Inv. Comm'n v. XL Specialty Ins. Co.</u>, 303 Ga. App. 540, 547 (2010); <u>Silver Lion Inc. v. Dolphin St. Inc.</u>, 2010 WL 2025749, *12-13 (Tex. App. May 20, 2010).

Section I, supra; also 2009 Terms & Conditions, p. 9; 2007 Terms & Conditions, Bates Nos. 496. Sprint confirms this fact to its customers every month in their statements. E.g., Feb. 16 and May 16, 2009 Barkwell Invoices, Bates Nos. 213, 252; Nov. 22, 2009 Massey Invoice, Bates No. 521; Nov. 16, 2007 Barkwell Invoice, Bates No. 456. By imposing fees that are not tied strictly to the recoupment of costs stemming from government programs, Sprint is in direct breach of the contracts. The damages suffered by Plaintiffs can be calculated by simply analyzing the difference between what was charged by Sprint and what was necessary to recoup its government-related expenses.

## IV.    Sprint's Reliance on the Voluntary Payment Doctrine Is Premature and Should Be Stricken from the Motion.

At the May 5, 2010 hearing in this matter, the Court indicated that it would allow Sprint to file an extremely narrow motion for summary judgment. See Transcript, p. 32:11-23. Pursuant to the Court's direct instructions, the motion was to be limited to the issue of whether the contract "clearly authorizes surcharges at the [D]efendant[]s['] discretion, and therefore, regardless of what those surcharges were for, there's no breach of contract or unjust enrichment." Id. at 31:3-6; see also id. at 28:7-23.

The Court was crystal clear that *only* this single, preliminary issue would be addressed and limited the discovery available to Plaintiffs as a result. Id. at 29:2-9 (noting that the Court would revisit other issues in the case after the preliminary issue of Sprint's discretion is decided); 29:10-21. Despite this directive, Sprint's Motion contains an argument that Plaintiffs' claims are subject to dismissal pursuant to the voluntary payment doctrine. See Sprint Motion, pp. 13-17.

Sprint has not only clearly violated the directives of the Court, but has prejudiced Plaintiffs in the process. In conjunction with its limitation on the scope of Sprint's Motion, the Court restricted the scope of Plaintiffs' discovery rights to merely obtaining copies of their

contracts. <u>See</u> Transcript, p. 32:11-23. Had Plaintiffs known that the voluntary payment doctrine would be an issue, they would have insisted that the scope of discovery be broadened to gain access to Sprint's information and documentation on topics such as: (i) whether all of the contractual language and other documentation referenced in the customer agreements was actually produced to Plaintiffs; (ii) whether Plaintiffs were made aware in a conspicuous fashion that the Surcharges were being increased; (iii) when the increased Surcharges were first imposed; (iv) whether the Surcharges were actually paid by Plaintiffs; (v) whether Plaintiffs exercised diligence or were negligent; (vi) whether refunding customers would prejudice Sprint; and (vii) whether the Surcharges were paid under duress or compulsion through the threat of cancellation of service. Discovery on these issues would garner Plaintiffs the evidence they need to fully and effectively respond to Sprint's claim that the voluntary payment doctrine precludes recovery. By moving on this issue without giving Plaintiffs the opportunity to conduct relevant discovery, Sprint has hamstrung Plaintiffs' ability to fully and fairly respond.

Because it is premature, the voluntary payment doctrine argument should be stricken from Sprint's Motion. <u>See</u> Mot. to Strike (Dkt. No. 45). This issue could be reasserted by Sprint in the next phase of the case following suitable discovery.

**V.     The Voluntary Payment Doctrine Does Not Bar Plaintiffs' Claims.**

In the unfortunate event that the Court allows Sprint to raise the voluntary payment doctrine at this time, Plaintiffs show herein that it does not preclude their claims.

**A.     Georgia Law.**

Georgia's voluntary payment doctrine is codified at O.C.G.A. § 13-1-13. Essentially three conditions must be met before recovery of a payment is barred: **First**, the payment must have been made through ignorance of the law or where all the facts are known. O.C.G.A. § 13-

1-13; also Goldstein v. Home Depot U.S.A., Inc., 609 F. Supp. 2d 1340, 1346 (N.D. Ga. 2009) (doctrine only applies to payors who have either actual or constructive knowledge of all the facts).  **Second**, the payment must not have been induced by misplaced confidence, artifice, deception, or fraudulent practice on the part of the person to whom the money is paid.  O.C.G.A. § 13-1-13; also Anthony v. American General Fin. Servs., Inc., __ Ga. __, 2010 WL 2553586, *9 (June 28, 2010); Energy & Process Corp. v. Jim Dally & Assoc., Inc., 291 Ga. App. 772, 774 (2008).  **Third**, the payment must not have been made under an urgent or immediate necessity. O.C.G.A. § 13-1-13; also D & H Constr. Co. v. City of Woodstock, 284 Ga. App. 314, 315-16 (2007).  Importantly, Georgia courts have recognized that this doctrine should not be applied in a vacuum, but rather must be construed in conjunction with other equitable principles.  D & H Constr., 284 Ga. App. at 316 (citing Gulf Life Ins. Co. v. Folsom, 256 Ga. 400, 402-06 (1986)). The result is that "a plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment – subject to a weighing of the equities between the parties by the trier of fact." Folsom, 256 Ga. at 406.

      1.     Sprint Has Introduced No Evidence that the Disputed Charges Were Paid.

      The facts reveal that the voluntary payment doctrine is inapplicable to Mr. Barkwell for several reasons.  Most obviously, there is absolutely *no* evidence in the record that he has fully paid all the "Administrative Charges" he attacks in the Amended Complaint, let alone that he did so voluntarily.  Indeed, the two invoices introduced by Sprint indicate that his account is seriously past due.  See Feb. 16, 2009 Invoice, p. 1 (Exh. 6 to Benton Aff.); May 16, 2009 Invoice, p. 1 (Exh. 7 to Benton Aff.).  If Mr. Barkwell has failed to pay any of the charges and an outstanding balance remains on the account, then he will ask that such charges be expunged

based on the claims made in this case. Sprint tries to sidestep its lack of evidence by arguing that it is undisputed that Mr. Barkwell paid the allegedly excessive Surcharges. <u>See</u> Sprint Mot. for Summary Judgment, p. 14. However, Plaintiffs have never stipulated to this fact and based on Sprint's lack of evidence on this point, it most certainly is disputed. Because Sprint has failed to establish the most fundamental element of its voluntary payment doctrine defense (i.e., that all of the attacked Surcharges were actually paid), its Motion must be denied.

2.    <u>Sprint's Artifice Prohibited Mr. Barkwell from Possessing Full Knowledge of the Surcharges He Was Obligated to Pay.</u>

Even if Sprint had sufficiently shown that the entirety of the disputed "Administrative Charges" were paid, Mr. Barkwell did not have full knowledge of the facts at the time payment was made. Specifically, he was not presented with the contractual documents until after this litigation commenced. <u>See</u> Barkwell Declaration, ¶ 8. Because he did not possess copies of the contracts at the time he allegedly paid the $0.99 "Administrative Charges," he had no reason to know that Sprint was contractually obligated to limit said charges to $0.75 (<u>see</u> Barkwell 2009 Subscriber Agr., p. 2) or to, at the very least, provide notice of any increase in such charges (<u>see</u> 2008 Terms & Conditions, Bates Nos. 595-96). Plaintiff has alleged that Sprint has a corporate policy of having its customers sign an electronic keypad or paper form acknowledging receipt of several contractual documents which are not actually provided. <u>See</u> Amd. Complaint, ¶¶ 21-22. It is through this artifice that Sprint is able to induce customers such as Mr. Barkwell into paying for the Surcharges that are contrary to the contracts. Because any payments of the excessive "Administrative Charges" were made by Mr. Barkwell without full knowledge of the facts and as a result of Sprint's artifice, the voluntary payment doctrine is clearly inapplicable.

In its Motion, Sprint relies primarily on <u>Fitzgerald Water, Light & Bond Comm'n v. Shaw Indus., Inc.</u>, 270 Ga. App. 68 (2004). In <u>Fitzgerald</u>, the voluntary payment doctrine was

held to bar the plaintiff's claims because the plaintiff had the information at its disposal which was necessary to determine if it was being overbilled.  Id. at 70 (finding that the plaintiff could have discovered the overbilling simply by comparing its invoices with information it had on hand).  Here, on the other hand, Mr. Barkwell was not presented with his contract documents at the time he enrolled.  See Barkwell Declaration, ¶ 8.  Unlike Shaw Industries, Mr. Barkwell did not have the information at its disposal to ascertain that the $0.99 "Administrative Charge" exceeded the amount specified in the contract or that Sprint had to provide him with notice if it desired to change this amount.  Furthermore, Mr. Barkwell was affirmatively told by Sprint on his monthly statements that the Surcharges were only to recoup costs related to governmental programs, not standard business expenses faced by all companies.

If anything, this matter is much more akin to Folsum, where the Supreme Court found that voluntary payments which are mistakenly made due a plaintiff's lack of diligence or negligence can be recovered so long as the other party would not be prejudiced.  256 Ga. at 406.  At worst, Sprint can argue that Plaintiff should have asked for all the documents comprising his contract to verify whether it had adhered to them in issuing the $0.99 "Administrative Charge."  However, even if Mr. Barkwell had such a duty, his failure to fulfill it was (at worst) the result of a lack of diligence or negligence and it is thus not a basis to preclude recovery of any payments.  Once again, there would have been no way through common diligence for Mr. Barkwell to realize that Sprint was charging him for its non-governmental-related costs when the company was plainly stating to the contrary on his monthly statements.

### 3.    Any Payments Were Made Under an Urgent Necessity.

Moreover, any payments which were made were made under duress.  Specifically, Sprint could have easily terminated Mr. Barkwell's telephone service for nonpayment.  Sprint's Terms

and Conditions authorize it to "without notice, suspend or terminate any [s]ervice at any time for any reason, including but not limited to (a) late payment . . . ." See 2008 Terms & Conditions, Bates No. 585. Mr. Barkwell, having no telephone at his home, and relying on his cellular service to sustain his livelihood, could not afford to have his service terminated. See Barkwell Declaration, ¶ 16. He was undoubtedly under great pressure to pay the excessive Surcharges.

Although the imminent termination of telephone service's effect on the applicability of the voluntary payment doctrine has never been considered in a Georgia case, it was considered by the Supreme Court of Illinois. In Getto v. City of Chicago, 426 N.E.2d 844 (Ill. 1981), a plaintiff filed a class action complaint against several telephone companies and several municipalities challenging defendants' method in calculating the municipal message tax. Id. at 846. The defendants argued that since the plaintiff had paid his utility bill without protest until suit was filed, he was barred by the voluntary payment doctrine. Id. at 849. The Illinois Supreme Court held that the voluntary payment doctrine was inapplicable because the plaintiff did not have full knowledge of the facts. Id. at 850-51. The court stated:

> [t]he ancient doctrine of duress of person, and later of goods, has been relaxed, and extended so as to admit of compulsion of business and circumstances, and perhaps a telephone corporation having a system in general operation and connected with customers and other business houses might reasonably influence a business house to make an unwilling payment of an amount illegally demanded, which would make the payment compulsory. The telephone has become an instrument of such necessity in business houses that a denial of its advantages would amount to a destruction of the business." (citation omitted)

Id. at 851. Because Mr. Barkwell's phone service was critical to his job, any payments were made under an urgent necessity and the voluntary payment doctrine is inapplicable.

4.    The Issues of Diligence and Prejudice Are Susceptible to Discovery and Must Be Weighed by a Jury.

Whether Mr. Barkwell's payments (if any) resulted from negligence or a lack of diligence or whether Sprint would be prejudiced by returning the payments are factual issues that should

be resolved by a jury. <u>Folsom</u>, 256 Ga. at 406 (trier of fact must weigh these equitable issues). Indeed, discovery could reveal facts which a jury could rely on to find that Mr. Barkwell's failure to ascertain the increase in Surcharges did not result from a lack of diligence given Sprint's policy of not providing full contractual disclosure at the point of sale or notice of Surcharge increases. Discovery is also likely to reveal that Sprint would not be prejudiced by returning the amounts it overcharged its customers without notice. The Court should allow discovery as to these and other elements of Sprint's voluntary payment defense and, after all the facts are presented, a jury should decide the issue.

**B.    <u>Texas Law.</u>**

In Texas, the voluntary payment doctrine provides that "money voluntarily paid with full knowledge of all the facts and without fraud, deception, duress or coercion cannot be received back although it was paid upon a void or illegal demand or upon a claim which had no foundation in fact and was paid without consideration." <u>Tyler v. Tyler</u>, 742 S.W.2d 740, 743 (Tex. App. 1987). Under Texas law, however, the doctrine is applicable only to actions for unjust enrichment and cannot be applied to claims for breach of contract. <u>E.g.</u>, <u>BMG Direct Marketing, Inc. v. Peake</u>, 178 S.W.3d 763, 775 (Tex. 2005) (if the subject matter of the plaintiff's claims is covered by contract, the doctrine is wholly inapplicable); <u>Texas S. Rentals, Inc. v. Gomez</u>, 267 S.W.3d 228, 243 (Tex. App. 2008) (the doctrine does not apply to breach of contract); <u>Exxon Mobil Corp. v. Gill</u>, 221 S.W.3d 841, 856-57 (Tex. App. 2007) (voluntary payment doctrine is defense to unjust enrichment, not breach of contract), <u>rev'd on other grounds</u>, 299 S.W.3d 124 (2010). Here, it is undisputed that Mr. Massey and Sprint had a contract and their relationship was governed thereby. <u>See</u> Sprint Answer, ¶¶ 33, 39. Pursuant to Texas law, the voluntary payment doctrine is inapplicable to Mr. Massey's contract claims.

17

While Mr. Massey has asserted a claim for unjust enrichment, he has done so as an alternative to his breach of contract claim.  See Amd. Complaint, ¶ 77.  Consequently, Sprint's voluntary payment defense is only applicable to Mr. Massey's unjust enrichment claim, which only becomes relevant if the contract is determined to be unenforceable or void.  Under such a scenario, Sprint's reliance on the doctrine would still fail.

First – Sprint has not introduced any evidence that Mr. Massey (like Mr. Barkwell) paid the disputed portions of the "Administrative Charge."  Because there is no proof that he disputed charges have been paid, the voluntary payment rule is inapplicable.

Second – Texas courts have routinely refused to apply the doctrine to situations like this matter where the payor did not have full knowledge of all applicable facts.  E.g., Peake, 178 S.W.3d at 772 (a person must pay "with full knowledge of all the facts" for the doctrine to apply); Brooks County Cent. Appraisal Dist. v. Tipperary Energy Corp., 847 S.W.2d 592, 596 (Tex. App. 1992) (when payor is not aware of all relevant facts, voluntary payment rule inapplicable).  Mr. Massey, like Mr. Barkwell, was not presented with the documents comprising his contract.  See Massey Declaration, ¶ 6.  He thus had no way to know that Sprint was obligated to limit the "Administrative Charge" to $0.75 (see Massey Oct. 2009 Subscriber Agr., p. 2) or to, at the very least, provide notice of any increase in such charges (see 2008 Terms & Conditions, Bates Nos. 595-96).  Further, Mr. Massey had no way to know that Sprint was assessing excessive fees that were not tied to its costs of government compliance.  Because he did not have full knowledge of the facts, the voluntary payment doctrine does not bar his claims.

## VI.   Sprint's Motion Does Not Address Plaintiffs' Count as to Unconscionability.

Although Sprint labels its Motion as one for summary judgment, it does not address the claim that its contracts with Plaintiffs are unconscionable.  See Amd. Complaint, ¶¶ 67-71 (alleging that the contracts are unconscionable and requesting rescission).  Thus, this claim is

18

unchallenged. For example, if the Court determines that, as a contractual matter, Sprint was entitled to impose a fee large enough to bankrupt a customer, for any reason or no reason at all, then it will necessarily have to find that such provisions are unconscionable. E.g., Hiers v. Estate of Heirs, 278 Ga. App. 242, 246 (2006) (holding that an unconscionable contract is one that no sane person not acting under a delusion would make and that no honest person would take advantage of); Besteman v. Pitcock, 272 S.W. 3d 777, 789 (Tex. App. 2008) (a term is unconscionable where its inequity is so extreme as to shock the conscience). Given that Sprint's central argument will necessarily render its customer agreements unconscionable, it is understandable that Sprint raises no defense to Count II.

## VII.    Plaintiffs Have Effectively Pleaded Alternative Theories of Relief.

Raising yet more issues that were not authorized to be brought in conjunction with this Motion at the May 5, 2010 hearing, Sprint contends that Plaintiffs' claims for unjust enrichment must fail because Plaintiffs have not effectively plead their claims for unjust enrichment "in the alternative." See Sprint Motion, pp. 16-17. Federal Rule 8(d) permits plaintiffs to plead alternative claims, even if the alternative claims are inconsistent. See Cleveland v. Policy Mgmt. Sys., Inc., 526 U.S. 795, 805 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth 2 or more statements of a claim or defense alternatively or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency'"); In re Checking Account Overdraft Litig., __ F. Supp. 2d __, 2010 WL 841305, *16 (S.D. Fla. March 11, 2010).

The same result has been reached by the Georgia and Texas courts. E.g., WESI, LLC v. Compass Envtl., Inc., 509 F. Supp. 2d 1353, 1363 (N.D. Ga. 2007) (holding that "Defendants currently are entitled to assert an unjust enrichment claim alternative to their breach of contract

claim under the Agreement, though they cannot recover under both theories"); <u>Baisden v. I'm Ready Productions, Inc.</u>, 2008 WL 2118170, *10 (S.D. Tex. May 16, 2008) (holding that a plaintiff's claim for unjust enrichment is not subject to dismissal merely because the subject matter of the claim may be covered by a written agreement but, instead, that pursuant to Rule 8(d)(2), a claim for unjust enrichment may properly be pleaded in the alternative).

The <u>Goldstein</u> case relied upon by Sprint is distinguishable. There, in his claim for money had and received, the plaintiff did not dispute the existence of a contract or attack its enforceability. 609 F. Supp. 2d at 1347. The court found that under such a scenario, the plaintiff had not properly pled a claim for money had and received, which is only available in the absence of a contract. <u>Id.</u> Unlike Mr. Goldstein, Plaintiffs have clearly pled claims for breach of contract and unjust enrichment in the alternative, even going so far as to note in the Amended Complaint that their unjust enrichment claim "is brought only in the alternative in case the customer agreements between the parties are found to be inapplicable or void." <u>See</u> Amd. Complaint, ¶ 77. As such, Plaintiffs have effectively pled alternative theories. <u>Cleveland</u>, 526 U.S. at 805.

## CONCLUSION

Sprint's contracts with Plaintiffs provide that Sprint Surcharges are collected to recover Sprint's costs of complying with government programs and mandates. While Sprint has discretion to change the Surcharges, such discretion is not absolute and must be exercised in good faith and in accordance with the terms of the contracts. Sprint's decision to increase the Surcharges without notice and beyond its actual "costs associated with governmental programs" is a breach of contract and violates its duty to act in good faith. Sprint's other arguments are improper at this time and have been thoroughly refuted herein. WHEREFORE, Plaintiffs respectfully request that this Court DENY Sprint's Motion for Summary Judgment in its entirety.

DATED this 13th day of August, 2010.

Respectfully submitted,

BY:     WEBB, KLASE & LEMOND, L.L.C.

 /s/ E. Adam Webb
E. Adam Webb
   Georgia State Bar No. 743910
Matthew C. Klase
   Georgia State Bar No. 141903

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
(770) 444-0271 (fax)

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2010, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will send a notice to the counsel of record listed below:

H. Wayne Phears, Esq.
Andrew J. Trask, Esq.
McGuire Woods LLP
1170 Peachtree Street N.E., Suite 2100
Atlanta, Georgia 30309
wphears@mcguirewoods.com
atrask@mcguirewoods.com

DATED this 13th day of August, 2010.

/s/ E. Adam Webb
E. Adam Webb