IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ERIC BARKWELL, on behalf of          *
himself and all other similarly
situated persons, and GARY           *
MASSEY,
                                     *
     Plaintiffs,
                                     *          CASE NO. 4:09-CV-56 (CDL)
vs.
                                     *
SPRINT COMMUNICATIONS COMPANY
L.P., *et al.*,                      *

     Defendants.                     *

O R D E R

In this breach of contract action, Plaintiffs allege that Defendants Sprint Communications Company, L.P., Sprint Nextel Corporation, Sprint Solutions, Inc., and Sprint Spectrum, L.P. (collectively, "Sprint") charged Plaintiffs fees that were not authorized by the cell phone contracts between Plaintiffs and Sprint. Presently pending before the Court is Sprint's Motion for Summary Judgment (ECF No. 44). For the reasons set forth below, Sprint's summary judgment motion is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the

light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

In support of its summary judgment motion, Sprint proffered various documents that it contends are the contracts between Sprint and Plaintiffs. Plaintiffs "do not dispute that their relationship with Sprint is governed by all or some of numerous contractual documents submitted by Sprint, to include the Subscriber Agreement and Terms and Conditions." Pls.' Resp. in Opp'n to Defs.' Mot. for Summ. J. 9, ECF No. 47 [hereinafter Pls.' MSJ Resp.]. Nonetheless, Plaintiffs also argue that the documents proffered by Sprint are not accurate, that the documents were not properly authenticated, and that there is no evidence that they signed the contracts. *E.g.,* Pls.' Resp. to Defs.' Statement of Material Facts 1-3 ¶ 1, ECF No. 47-3 [hereinafter Pls.' SMF Resp.]; *id.* at 3-4 ¶ 5. The Court addresses each issue in turn.

It is undisputed that Plaintiffs were cellular telephone customers of Sprint. Plaintiffs acknowledge that they each signed a contract (or contracts) with Sprint. Am. Compl. ¶¶ 31, 40, 42, ECF

2

No. 41; Pls.' MSJ Resp. Ex. A, Barkwell Decl. ¶¶ 4, 7, ECF No. 47-1 [hereinafter Barkwell Decl.]; Pls.' MSJ Resp. Ex. B, Massey Decl. ¶¶ 4-5, ECF No. 47-2 [hereinafter Massey Decl.]. They deny, however, that the contracts proffered by Sprint in this matter "are complete or correct." Pls.' SMF Resp. 1 ¶ 1. Although Plaintiffs "dispute the accuracy and veracity" of certain contract documents proffered by Sprint, *id.* at 4-5 ¶ 9, they do not present any documents that they contend are true and accurate versions of the contracts they entered with Sprint. Plaintiffs also do not provide any sworn statements detailing the contents of the contracts they entered with Sprint or explaining how the contracts proffered by Sprint differ from those they signed.

Plaintiffs emphasize that neither Barkwell nor Massey received a copy of all of the contract documents when they entered their agreements with Sprint. Barkwell Decl. ¶ 8; Massey Decl. ¶ 6; Pls.' SMF Resp. 4 ¶ 9, 8 ¶ 22. The precise point of this emphasis is not clear to the Court given that Plaintiffs seek to enforce certain provisions of the agreements rather than to invalidate them; in any event, the Court concludes that Plaintiffs are bound by the agreements (assuming they are properly authenticated), notwithstanding their failure to read them. Under both Georgia and Texas law, which apply to Plaintiffs claims as discussed more fully below, a "party who signs a document is presumed to know its

3

contents, including documents specifically incorporated by reference," and a party cannot avoid a contract clause by simply failing to read it unless he has a legal excuse for failing to do so. *In re Int'l Profit Assocs., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009) (internal quotation marks omitted); *accord Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co.*, 213 Ga. App. 481, 482-83, 445 S.E.2d 297, 299 (1994).

Here, there is no evidence in the present record that Sprint made misrepresentations to Plaintiffs regarding the contract provisions at issue in this action or that Plaintiffs sought but were refused a copy of the relevant contract documents. Moreover, each of the subscriber agreements advises the customer to "ask a representative to provide [him] any part of [his] agreement (Rate Plan Brochure, Ts&Cs, etc.) that [he] may be missing." Defs.' Mot. for Summ. J. Attach. 2, Benton Aff., ECF No. 44-2 [hereinafter Benton Aff.] Ex. 1, Subscriber Agreement at BKW 000004, Nov. 12, 2007, ECF No. 44-3 [hereinafter 2007 Barkwell Agreement]; Benton Aff. Ex. 3, Subscriber Agreement at BKW 000467, Feb. 3, 2009, ECF No. 44-5 [hereinafter 2009 Barkwell Agreement]; *accord* Benton Aff. Ex. 8, Subscriber Agreement at BKW 000543, Oct. 19, 2009, ECF No. 44-12 [hereinafter Oct. Massey Agreement]; *cf.* Benton Aff. Ex. 10, Subscriber Agreement at BKW 000538, Nov. 27, 2009, ECF No. 44-15

[hereinafter Nov. Massey Agreement] (acknowledging receipt of Sprint rate plan brochure and Ts&Cs).

The Subscriber Agreements further state that by signing, the customer agrees that he had "read and agreed to all terms of this Agreement, including the terms of [his] service plan and the Ts&Cs." 2007 Barkwell Agreement at BKW 000006; 2009 Barkwell Agreement at BKW 000468; *accord* Oct. Massey Agreement at BKW 000544; Nov. Massey Agreement at BKW 000538. For all of these reasons, the Court concludes that Plaintiffs' failure to read the contracts at issue here does not render the contracts unenforceable. Therefore, if the contracts are properly authenticated, then the Court will consider them in ruling on Sprint's summary judgment motion.

Plaintiffs contend that the Court should decline to consider the contracts proffered by Sprint in this action because the contracts have not been properly authenticated. Pls.' SMF Resp. 1-2 ¶ 1. Initially, Sprint produced the contract documents as exhibits to the affidavit of its employee, Pamela Benton. *See generally* Benton Aff. As Plaintiffs point out, Benton's original affidavit did not state that the statements in the affidavit were based on her personal knowledge; she merely stated that she was "Legal Analyst II at Sprint Nextel." *Id.* ¶ 1. In her supplemental declaration, Benton stated that she has been employed by Sprint since 1991 and is "personally familiar with Sprint's systems and practices with respect to customer

accounts and records." Defs.' Reply in Supp. of Mot. for Summ. J. Attach. 2, Benton Supplemental Decl. ¶ 2, ECF No. 51-2 [hereinafter Benton Supp'l Decl.]. Benton also stated that she routinely reviews customer account histories and retrieves account records, including "customer contracts, billing records, Terms & Conditions, Service Plan Guides, and similar documents for particular accounts." *Id.* ¶ 3. According to Benton, the exhibits to her original affidavit were maintained, used, and retrieved in the ordinary course of Sprint's business. *Id.* From this, the Court is satisfied that the exhibits to Benton's affidavit have been sufficiently authenticated or that the exhibits, which are Sprint business records, could be reduced to admissible form at trial. *See* Fed. R. Evid. 901(b)(1) (stating that a witness may authenticate a document by testifying that it is "what it is claimed to be"); *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (noting that, on a motion for summary judgment, a court "may consider only that evidence which can be reduced to an admissible form").

Finally, Plaintiffs argue that there is no evidence that they signed the agreements that are central to their breach of contract claims. The only evidence in the record on this point, however, establishes the following.

Barkwell entered a service agreement with Sprint on November 12, 2007. *See generally* 2007 Barkwell Agreement. Though Barkwell

contends that "there is no evidence that he was presented with or signed" the 2007 Barkwell Agreement, Pls.' SMF Resp. 3 ¶ 5, Benton stated in her affidavit that the document "is a true and correct copy of Mr. Barkwell's 2007 Subscriber Agreement," Benton Aff. ¶ 2. In addition, the document contains Mr. Barkwell's name at the top and a signature that appears to read "Eric Barkwell" at the bottom. 2007 Barkwell Agreement at BKW 000004, 000006. Barkwell acknowledges that he signed "an electronic keypad at the point of sale." Pls.' SMF Resp. 3 ¶ 5.

In 2009, Barkwell decided to switch to a different cell phone plan. Pls.' Barkwell Decl. ¶ 7; *see generally* 2009 Barkwell Agreement. Barkwell asserts that "there is no evidence that he was presented with or signed" the 2009 Barkwell Agreement, Pls.' SMF Resp. 4 ¶ 9, but Benton stated in her affidavit that the document "is a true and correct copy of Mr. Barkwell's 2009 Subscriber Agreement," Benton Aff. ¶ 4. In addition, the document contains Mr. Barkwell's name at the top and a signature that appears to read "Eric Barkwell" at the bottom. 2009 Barkwell Agreement at BKW 000467, 000469. According to Barkwell, the Sprint sales associate "read [him] two lines of contractual verbiage and then stated that the remaining language was similar 'legal mumbo jumbo.'" Barkwell Decl. ¶ 7. The associate then asked Barkwell to sign his name to an electronic keypad, and Barkwell did so. *Id.*

Massey entered a service agreement with Sprint on October 19, 2009. *See generally* Oct. Massey Agreement. Massey contends that "there is no evidence that he was presented with or signed" the October Massey Agreement, Pls.' SMF Resp. 8 ¶ 22, but Benton stated in her affidavit that the document "is a true and correct copy of Mr. Massey's October 19, 2009 Subscriber Agreement," Benton Aff. ¶ 9. In addition, the document contains Mr. Massey's name at the top and a signature that appears to read "G. Massey" at the bottom. Oct. Massey Agreement at BKW 000543, 000546. Massey acknowledges that he signed his name "to an electronic keypad when asked to do so by the sales associate." Massey Decl. ¶ 5.

Massey added a second line to his Sprint plan on November 27, 2009. Am. Compl. ¶ 41. He signed a second subscriber agreement. *See generally* Nov. Massey Agreement. Massey contends that "there is no evidence that he was presented with or signed" the November Massey Agreement, Pls.' SMF Resp. 8 ¶¶ 22, 27, but Benton stated in her affidavit that the document "is a true and correct copy of Mr. Massey's November 27, 2009 Best Buy Subscriber Agreement," Benton Aff. ¶ 11. In addition, the document contains two spaces that appear to contain the initials "GM," as well as a signature that appears to read "G. Massey." Nov. Massey Agreement at BKW 000537-000538.

Based on this evidence, which Plaintiffs did not present sufficient evidence to dispute, the Court finds that the contracts

proffered by Sprint govern Plaintiffs' relationship with Sprint. Accordingly, the Court will consider the contract exhibits in ruling on Sprint's summary judgment motion.

DISCUSSION

I.  **Breach of Contract Basics**

The parties do not dispute that Georgia law governs Barkwell's claims and that Texas law governs Massey's claims. *See* Benton Aff. Ex. 2, Terms & Conditions at BKW 000499, Jan. 1, 2007, ECF No. 44-4 [hereinafter 2007 Ts&Cs] (providing that contract is governed by the laws of the state encompassing the area code assigned to the customer's phone); Benton Aff. Ex. 4, Subscriber Agreement Gen. Terms & Conditions of Service at BKW 000605, Jan. 1, 2008, ECF Nos. 44-6 & 44-7 [hereinafter 2008 Ts&Cs] (same). Under Georgia law, a plaintiff in a breach of contract action must establish (1) an enforceable contract, (2) breach, and (3) "resultant damages to the party having the right to complain about the contract being broken." *TechBios, Inc. v. Champagne*, 301 Ga. App. 592, 595, 688 S.E.2d 378, 381 (2009); *Cline v. Lee*, 260 Ga. App. 164, 168, 581 S.E.2d 558, 562 (2003). Texas law is substantially similar: "[t]he elements of a breach of contract claim are: (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the

9

plaintiff's damage as a result of the breach." *In re Staley*, 320 S.W.3d 490, 499 (Tex. Ct. App. 2010).

The construction of a contract is ordinarily a question of law for the Court. *S. Point Retail Partners, LLC v. N. Am. Props. Atlanta, Ltd.*, 304 Ga. App. 419, 421, 696 S.E.2d 136, 139 (2010); *accord Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex. Ct. App. 2007). The Court must first determine if a contract is ambiguous; a "contract is ambiguous when the language used may be fairly understood in more ways than one." *S. Point Retail*, 304 Ga. App. at 421-22, 696 S.E.2d at 139; *accord Moon Royalty*, 244 S.W.3d at 394. "If the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the trial court enforces the contract according to its literal meaning." *S. Point Retail*, 304 Ga. App. at 422, 696 S.E.2d at 139; *accord Moon Royalty*, 244 S.W.3d at 394. In determining whether a contract is ambiguous, the courts generally interpret the contract by looking at the agreement as a whole, giving each word and phrase its plain, grammatical meaning. *Moon Royalty*, 244 S.W.3d at 394; *accord S. Point Retail*, 304 Ga. App. at 422, 696 S.E.2d at 139.

## II. The Contracts

Plaintiffs' contracts with Sprint consist of multiple documents, including a Subscriber Agreement, the Sprint Rate Plan brochure, and

10

Sprint's Ts&Cs. 2007 Barkwell Agreement at BKW 000004; 2009 Barkwell Agreement at BKW 000467; Oct. Massey Agreement at BKW 000543; Nov. Massey Agreement at BKW 000538.

All of the documents comprising the contracts provide that Sprint may charge Plaintiffs certain surcharges, called either "Sprint Fees" or "Sprint Surcharges." 2007 Barkwell Agreement at BKW 000005; 2009 Barkwell Agreement at BKW 000468; Oct. Massey Agreement at BKW 000544; Nov. Massey Agreement at BKW 000537; 2007 Ts&Cs at BKW 000496; 2008 Ts&Cs at BKW 000595-000596; Benton Aff. Ex. 5, Sprint Rate Plan Brochure at BKW 000574, ECF Nos. 44-8 & 44-9 [hereinafter Sprint Rate Plan Brochure].

Plaintiffs' key contention in this action is that Sprint breached its contracts with Plaintiffs by charging Sprint Surcharges that were not "tied strictly to the recoupment of costs stemming from government programs." Pls.' MSJ Resp. 10-11. In support of their argument, Plaintiffs point to the 2007 Ts&Cs, maintaining that the 2007 Ts&Cs require that Sprint Surcharges be tied to recouping government program costs. Sprint does not directly challenge Plaintiffs' interpretation of the 2007 Ts&Cs; rather, Sprint asserts that the 2008 Ts&Cs—not the 2007 Ts&Cs—apply to the Subscriber Agreements Plaintiffs entered in 2009. Thus, at this point, this case boils down to which set of Terms & Conditions is incorporated into Plaintiffs' contracts. As discussed in more detail below, if

the 2007 Ts&Cs apply, then Sprint Surcharges charged to Plaintiffs—and any increase to them—had to be tied to recoupment of government-related costs.  If the 2008 Ts&Cs apply, there is no such limitation.

A.    The 2007 Ts&Cs

The 2007 Ts&Cs define "Surcharges" as: "the surcharges, fees, and other charges that [Sprint] assess[es] to recoup [Sprint's] government costs or costs of complying with certain government programs."  2007 Ts&Cs at BKW 000496.  The 2007 Ts&Cs further provide:

> Surcharges aren't taxes or government mandated charges; they're charges [Sprint] choose[s] to collect from [the customer].  Surcharges are subject to change, sometimes on a monthly or quarterly basis.  Examples of Surcharges include, but are not limited to: Universal Service Fund, E911, Federal Programs Cost Recovery, Federal Wireless Number Pooling and Portability, and gross receipts charges. [Sprint] will make efforts to provide [the customer] notice of any changes to Surcharges in a manner consistent with this Agreement. . . . However, since most Surcharges are based on amounts set by the government or based on government formulas, it will not always be possible to provide advance notice of new Surcharges or changes in the amount of existing Surcharges.

*Id.*  The Court finds that this language is unambiguous. Based on the plain language of the 2007 Ts&Cs, Sprint Surcharges had to be tied to "government costs or costs of complying with certain government programs."  *See* 2007 Ts&Cs at BKW 000496.  Thus, although the 2007 Ts&Cs permit Sprint to change the amount of Surcharges, *id.* at BKW 000491-000492 ("[Sprint] may change any part of the Agreement at any

12

time including, but not limited to, rates, charges, how [Sprint] calculate[s] charges, or [the customer's] terms of Service."), the Surcharges must still be tied to "government costs or costs of complying with certain government programs." *See* 2007 Ts&Cs at BKW 000496.

B.   The 2008 Ts&Cs

The 2008 Ts&Cs state that Surcharges "include, but are not limited to: Federal Universal Service, various regulatory fees, Sprint administrative charges, gross receipts charges, and charges for the costs [Sprint] incur[s] in complying with governmental programs." 2008 Ts&Cs at BKW 000595. The 2008 Ts&Cs further provide:

> ***Surcharges are not taxes and are not required by law. They are rates [Sprint] choose[s] to collect from [the customer] and are kept by [Sprint] in whole or in part. The number and type of Surcharges may vary depending upon the location of [the customer's] primary billing address and can change over time. [Sprint] determine[s] the rate for these charges and these amounts are subject to change as are the components used to calculate these amounts.*** [Sprint] will provide [the customer] notice of any changes to Surcharges in a manner consistent with this Agreement . . . . However, since some Surcharges are based on amounts set by the government or based on government formulas, it will not always be possible to provide advance notice of new Surcharges or changes in the amount of existing Surcharges. Information on Surcharges is provided during the sales transaction and is available on [Sprint's] website.

2008 Ts&Cs at BKW 000595-000596. The Court finds that this language is unambiguous. Based on the plain language of the 2008 Ts&Cs, Sprint Surcharges under the 2008 Ts&Cs are not limited to recoupment

13

of government costs or costs of complying with certain government programs; instead, such costs are a component of Surcharges, which also include administrative charges. *See id.* Accordingly, the 2008 Ts&Cs do not require that Surcharges be tied to recoupment of government-related costs. Furthermore, this unambiguous language provides that Sprint may change the amount of the Surcharges. The 2008 Ts&Cs states:

> [Sprint] may change any part of the Agreement at any time, including, but not limited to, rates, charges, how [Sprint] calculate[s] charges, or [the customer's] terms of Service. [Sprint] will provide [the customer] notice of material changes, and may provide [the customer] notice of non-material changes, in a manner consistent with this Agreement . . . . If a change [Sprint] make[s] to the Agreement is material and has a material adverse effect on Services under [the customer's] Term Commitment, [the customer] may terminate each line of Service materially affected without incurring an Early Termination Fee . . . .

*Id.* at BKW 000584-000585. Finally, the 2008 Ts&Cs contains the following notice provision:

> [Sprint] will provide [the customer] notice in [the customer's] bill, correspondence to [the customer's] last known billing address, to any fax number or e-mail address [the customer] provided to [Sprint], by calling [the customer] on [the customer's] home phone or Device, by voice message on [the customer's] Device or home phone, or by text message on [the customer's] Device.

*Id.* at BKW 000604. Based on the unambiguous language of the 2008 Ts&Cs, Sprint is permitted to change the amount of the Surcharges, though it is required to provide the customer with notice. One way Sprint can provide notice under the 2008 Ts&Cs is via the customer's

14

bill. *Id.* Nothing in the 2008 Ts&Cs requires advance notice of changes to Surcharges; the contract specifically states that it is not always possible to provide advance notice "of new Surcharges or changes in the amount of existing Surcharges." *Id.* at BKW 000596.

## III. Which Set of Ts&Cs Applies?

As discussed above, all of the Subscriber Agreements incorporate Sprint's Terms and Conditions ("Ts&Cs"). According to Benton, Sprint's Ts&Cs remain in effect until a new version is promulgated. Benton Supp'l Decl. ¶ 4. Sprint adopted Ts&Cs in 2007, 2008, and 2010. *Id.*; 2007 Ts&Cs; 2008 Ts&Cs.[1]

It is undisputed that the 2007 Ts&Cs were in effect when Barkwell entered the 2007 Barkwell Agreement. The question for the Court is which set of Ts&Cs applies to the 2009 contracts. Benton stated that the 2008 Ts&Cs were in effect when Plaintiffs signed their 2009 contracts. Benton Supp'l Decl. ¶ 4. Plaintiffs contend, however, that "2009 Terms & Conditions" were in effect at that time. *E.g.*, Pls.' MSJ Resp. 7 & n.5. The document Plaintiffs contend is the 2009 Terms & Conditions is actually the 2007 Ts&Cs. Benton Supp'l Decl. ¶ 4. Thus, the Court must decide whether Plaintiffs pointed to sufficient evidence to create a fact question on whether the 2007 Ts&Cs were in effect when they entered the 2009 contracts.

---

[1]Sprint did not submit a copy of its 2010 Ts&Cs document, and the parties appear to agree that it is not relevant to this action.

In support of their argument that the 2007 Ts&Cs were still in effect in 2009, Plaintiffs point to Sprint's reply brief in support of its motion to deny class certification, in which Sprint represented: "[t]he Terms and Conditions are available online at http://www.sprintpcs.com/common/popups/popLegalTermsPrivacy.html#2." Sprint's Reply in Supp. of Mot. to Den. Class Certification 2 n.1, ECF No. 22. Plaintiffs represent that their counsel visited the web site provided by Sprint in December 2009 and found the 2007 Ts&Cs, with an updated 2009 copyright date.[2] Surreply in Further Opp'n to Mot. to Den. Class Certification 1, ECF No. 26; Surreply in Further Opp'n to Mot. to Den. Class Certification Ex. A, Terms & Conditions, ECF No. 26-1. Given that Sprint's own website posted the 2007 Ts&Cs in 2009 and that Sprint pointed Plaintiffs to the website containing the 2007 Ts&Cs, the Court concludes that a fact question exists as to whether the 2007 Ts&Cs—and not the 2008 Ts&Cs—applied to the agreements signed by Plaintiffs in 2009. Because the evidence, viewed in the light most favorable to Plaintiffs, could cause a reasonable juror to conclude that the 2007 Ts&Cs were in effect in December 2009, the Court will examine Plaintiffs' breach of contract claims under the 2007 Ts&Cs.

---

[2]Though Plaintiffs represent that their counsel accessed the document and printed it, Plaintiffs did not authenticate the document by, for example, providing the affidavit of the person who accessed the document on the internet and printed it. Nonetheless, the Court is satisfied that the document could be reduced to admissible form at trial.

## IV. Barkwell's Contracts and Invoices

### A. 2007 Barkwell Agreement

As discussed above, the 2007 Barkwell Agreement incorporated the 2007 Ts&Cs, which required that Surcharges be tied to recoupment of government costs. There is no evidence in the present record from which the Court can determine whether the Surcharges were tied to the recoupment of government-related costs. Thus, summary judgment is not appropriate on any claims based on the 2007 Barkwell Agreement.

### B. 2009 Barkwell Agreement

The 2009 Barkwell Agreement consists of Barkwell's Subscriber Agreement, Sprint's rate plan brochure, and Sprint's Ts&Cs. 2009 Barkwell Agreement at BKW 000467. The parties agree that the 2009 Barkwell Agreement provided for Sprint Surcharges that included an Administrative Charge of $0.75/line/month.[3] *Id.* at BKW 000468. It is undisputed that in Barkwell's first invoice after he switched his cell phone plan, Barkwell was charged $1.88 in Sprint Surcharges, including an Administrative Charge in the amount of $0.99. Benton Aff. Ex. 6, Barkwell Invoice at BKW 000213, Feb. 16, 2009, ECF No. 44-10 [hereinafter Barkwell Feb. Invoice]. The February invoice does not specifically state that there has been a change in the Administrative Charge, either in the "Sprint News and Notices"

---

[3] It is therefore unnecessary for the Court to determine whether a conflicting term in the Sprint rate plan brochure—which stated that Sprint Surcharges included an Administrative Charge of up to $1.99/line/month—applies. Sprint Rate Plan Brochure at BKW 000574.

section, the "Important Information Relating to Your Sprint Bill" section, or the "Sprint Surcharges" section. *Id.* at BKW 000207, 000213. Barkwell was also charged the $0.99 Administrative Charge in May 2009. Benton Aff. Ex. 7, Barkwell Invoice at BKW 000252, May 16, 2009, ECF No. 44-11 [hereinafter Barkwell May Invoice]. It is not clear from the present record whether Barkwell was charged the $0.99 Administrative Charge in March or April.

The question for the Court is whether the contract permitted Sprint to raise the Administrative Charge to $0.99/line/month. As discussed above, all portions of Barkwell's agreement state that Sprint Surcharges are subject to change. 2009 Barkwell Agreement at BKW 000468; 2007 Ts&Cs at BKW 000496; Sprint Rate Plan Brochure at BKW 000574; *see also* 2007 Ts&Cs at BKW 000491-000492 (stating that Sprint "may change any part of the Agreement at any time including, but not limited to, rates, charges, how [Sprint] calculate[s] charges, or [the customer's] terms of Service"). Assuming for summary judgment purposes that the 2007 Ts&Cs apply to the 2009 Barkwell Agreement, however, then Surcharges, including the Administrative Charge, had to be tied to the recoupment of government-related costs. There is no evidence in the present record that the Surcharges, or the increase to the Surcharges, were tied to the recoupment of government-related costs. Accordingly, since genuine disputes of material fact exist as to whether the 2007 Ts&Cs

18

apply to the 2009 Barkwell Agreement, summary judgment is not appropriate as to claims based on the 2009 Barkwell Agreement.

## V. Massey's Contracts and Invoices

### A. Massey October Agreement

The Massey October Agreement consists of Massey's October Subscriber Agreement, Sprint's rate plan brochure, and Sprint's Ts&Cs. Oct. Massey Agreement at BKW 000543. The parties agree that the October Massey Agreement provided for Sprint Surcharges that included an Administrative Charge of $0.75/line/month.[4] *See* Oct. Massey Agreement at BKW 000544. It is undisputed that after Massey signed up for Sprint service in October 2009, he received an invoice dated November 22, 2009. Benton Aff. Ex. 9, Massey Invoice, Nov. 22, 2009, ECF Nos. 44-13 & 44-14 [hereinafter Massey Nov. Invoice]. In that invoice, Massey was charged $13.03 in Sprint Surcharges, including an Administrative Charge in the amount of $0.99. *Id.* at BKW 000521. The November Invoice does not specifically state that there has been a change in the Administrative Charge, either in the "Sprint News and Notices" section, the "Important Information Relating to Your Sprint Bill" section, or the "Sprint Surcharges" section. *Id.* at BKW 000518, 000521.

_____

[4]Again, given the parties' agreement on this issue, it is unnecessary for the Court to determine whether a conflicting term in the Sprint rate plan brochure—which stated that Sprint Surcharges included an Administrative Charge of up to $1.99/line/month—applies. Sprint Rate Plan Brochure at BKW 000574.

As discussed above, if the 2007 Ts&Cs apply to the Massey October Agreement, then Surcharges, including the Administrative Charge, had to be tied to the recoupment of government-related costs. There is no evidence in the present record that the Surcharges, or the increase to the Surcharges, were tied to the recoupment of government-related costs. Accordingly, since genuine disputes of material fact exist as to whether the 2007 Ts&Cs apply to the Massey October Agreement, summary judgment is not appropriate as to claims based on the Massey October Agreement.

B.  Massey November Agreement

Massey's November Subscriber Agreement states that it includes, among other things, "the General Terms and Conditions, and the specific terms & conditions of the service(s) activated on [Massey's] account." Nov. Massey Agreement at BKW 000538. The November Massey Agreement states that Sprint Surcharges include "USF charge of up to 9.5% (varies quarterly), Administrative Charge (up to $1.99/line/mo.), Regulatory Charge ($0.20/line/month) & state/local fees by area." *Id.* at BKW 000537. In his December invoice, Massey was charged $1.98 for the Administrative Charge—$0.99 per line. Benton Aff. Ex. 11, Massey Invoice at 6, Dec. 22, 2009, ECF No. 44-16 [hereinafter Massey Invoice].

As discussed above, if the 2007 Ts&Cs apply to the Massey November Agreement, then Surcharges, including the Administrative

Charge, had to be tied to the recoupment of government-related costs. Even though the Administrative Charge component of the Surcharges in Massey's December invoice was within the range provided for in Massey's November Agreement, there is no evidence in the present record that the Surcharges, or any increase to the Surcharges, were tied to the recoupment of government-related costs. Since genuine disputes of material fact exist as to whether the 2007 Ts&Cs apply to the Massey November Agreement, summary judgment is not appropriate as to claims based on the Massey November Agreement.

## VI. Voluntary Payment Doctrine

Sprint argues that even if genuine disputes of material fact exist as to whether Sprint breached its contracts with Plaintiffs, the claims of Barkwell and Massey are barred by the voluntary payment doctrine. Under the voluntary payment doctrine, a party who voluntarily pays money "with knowledge of all the facts" or "by mistake without a valid reason for failing to ascertain the truth" is barred from recovering the payment. *Applebury v. Teachers' Retirement Sys. of Ga.*, 275 Ga. App. 194, 194-95, 620 S.E.2d 452, 453 (2005); *accord* O.C.G.A. § 13-1-13; *Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009); *Pennell v. United Ins. Co.*, 243 S.W.2d 572, 576 (Tex. 1951).

Pretermitting the question whether Barkwell and Massey made their payments "voluntarily" with full knowledge of the facts or by

mistake without a good reason for learning the facts, there is insufficient evidence in the present record on a more fundamental element of the voluntary payment doctrine: whether Barkwell or Massey actually paid the Surcharges in full.

Benton stated that, based on her review of Plaintiffs' billing and payment records, Barkwell and Massey paid the charges on their bills for the accounts at issue. Benton Supp'l Decl. ¶ 5. The only records Sprint submitted in support of its argument do *not*, however, reflect that Plaintiffs actually paid the Surcharges which they now contend are objectionable. First, it is not clear from the present record whether Barkwell paid the Surcharges, including the Administrative Charge. Rather, the present record reflects that Barkwell's account was past due and that he did not pay the full amount balance in either January or April of 2009. Barkwell Feb. Invoice at BKW 000206; Barkwell May Invoice at BKW 000245. Second, it is not clear from the present record whether Massey paid the Surcharges, including the Administrative Charge. Rather, his December invoice reflects that he received a "Goodwill Credit" in the amount of $29.99 and a "Data Free Month Promo Discount" in the amount of $61.21. Massey Invoice 1. It appears that he did pay the remainder of his November bill. *Id*.

In summary, Sprint's records submitted in support of its summary judgment motion show that Barkwell's account was past due and that

Massey only paid part of his bill.  Barkwell Feb. Invoice at BKW 000206; Barkwell May Invoice at BKW 000245; Massey Invoice 1.  Given that the records Sprint proffered in support of its summary judgment motion appear to be in conflict with Benton's declaration and that Sprint did not submit any additional documents that would reconcile the conflict, the Court concludes that genuine disputes of material fact exist as to whether Plaintiffs paid the Administrative Charges. Accordingly, summary judgment is not appropriate on the voluntary payment doctrine issue.

CONCLUSION

For the reasons set forth above, Sprint's Motion for Summary Judgment (ECF No. 44) is denied.  All other pending motions are moot. The parties shall confer and provide the Court with a joint proposed revised scheduling order by December 20, 2010.  The proposed revised scheduling order should meet the requirements set forth in the Court's previously issued Rule 16/26 Order (ECF No. 3).  The parties should include a deadline for Plaintiffs to file a motion for class certification.

IT IS SO ORDERED, this 6th day of December, 2010.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE