**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

_____

|  |  |  |
|---|---|---|
| ERIC BARKWELL and GARY MASSEY, on behalf of themselves and all other similarly situated persons, | ) ) ) ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | CIVIL ACTION FILE |
| v. | ) | |
|  | ) | NO. 4:09-CV-56 (CDL) |
| SPRINT COMMUNICATIONS COMPANY, L.P, SPRINT NEXTEL CORPORATION, SPRINT SOLUTIONS, INC., and SPRINT SPECTRUM, L.P., | ) ) ) ) | |
|  | ) | |
| Defendants. | ) | |

_____

## PLAINTIFFS' AND CLASS COUNSEL'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS

Plaintiffs and Class Counsel respectfully move for Preliminary Approval of the Class Action Settlement Agreement attached hereto as Exhibit 1 ("Settlement" or "Agreement"), which will resolve Plaintiffs' and all Settlement Class Members' claims against Sprint in the above-captioned action (the "Action").[1]  The Court should grant Preliminary Approval because the Settlement provides substantial relief for the class of Sprint customers defined in sections I(LL) and I(P) of the Agreement ("Settlement Class"), and because the terms of the Settlement are within the range of reasonableness, consistent with applicable case law.  Indeed, given the significant risks inherent in this Action, the Settlement – which consists of Prospective Relief in the form of revisions to Sprint's customer contracts and disclosures; Cash or Non-Cash Benefits to members of the Fee Notice Sub-Class; plus Sprint's payment of all costs and fees associated

_____

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

with Class Notice and Claims administration – is an outstanding result for the Settlement Class. See Joint Declaration of E. Adam Webb and Matthew C. Klase ("Joint Decl.") ¶ 32 (Exh. 2 hereto).

Accordingly, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement; (4) approve the Claim process set fort in the Agreement; (5) approve the form and content of the Notices and Claim Form attached to the Settlement as Exhibits C through G; (6) approve and order the opt-out and objection procedures set forth in the Agreement; (7) appoint as class representatives Plaintiffs Eric Barkwell and Gary Massey; (8) appoint as Class Counsel E. Adam Webb and Matthew C. Klase of Webb, Klase & Lemond, LLC; (9) stay the Action against Sprint pending Final Approval of the Settlement; and (10) schedule a Final Approval Hearing during the week of March 10, 2014, if convenient for the Court.  A [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class is attached to the Settlement as Exhibit A.

## I.     **INTRODUCTION**

Plaintiffs Eric Barkwell and Gary Massey sued Sprint on behalf of themselves and all other similarly situated Sprint customers who were assessed Sprint Surcharges that were not properly disclosed and/or authorized by their wireless services agreements.  According to Plaintiff, Sprint's practices violated its contractual and good faith duties, were substantively and procedurally unconscionable, and resulted in unjust enrichment to Sprint.  Joint Decl. ¶ 5.

Plaintiffs and Class Counsel litigated this Action for more than four years.  The litigation was hard-fought and the Parties engaged in significant motion practice on the issues of judgment

on the pleadings, class certification, summary judgment, arbitration, and discovery.  See pp. 4-5, infra.  The Action involved sharply opposed positions on several fundamental legal questions, including: (i) the legal viability of Plaintiffs' claims; (ii) the interpretation of Sprint's wireless services agreements and specifically whether they authorize Sprint's assessment and modification of Sprint Surcharges; (iii) whether Plaintiffs' claims are barred by prior class settlements; (iv) whether Plaintiffs' claims are barred by the voluntary payment doctrine; and (v) whether Sprint's arbitration agreements are enforceable and/or whether Sprint waived its right to pursue arbitration by actively participating in this litigation.  Joint Decl. ¶ 3.

Preliminary settlement discussions began in early 2011.  Joint Decl. ¶ 10.  An initial mediation in February 2011 with mediator Arthur Glazer was productive, but ultimately unsuccessful.  Id.  However, following further litigation, the parties continued discussions with the assistance of Eleventh Circuit Court of Appeals Mediator William Roland.  Id. at ¶¶ 11-12.  As a result of their continued efforts, Class Counsel and Sprint ultimately reached agreement in principle.  Id. at ¶ 12.

Under the Settlement, all Settlement Class Members will automatically receive important Prospective Relief in the form of revisions to Sprint's disclosures and wireless services agreements that are intended to clarify the nature and details of Sprint Surcharges.  Agreement § II(A).  Additionally, members of the Fee Notice Sub-Class will have the right to file a Claim to obtain a Cash or Non-Cash Settlement Benefit.  Id. at § II(B).  Finally, Sprint has agreed to pay all fees, costs, and charges incurred in connection with the administration of the Notice and Claims programs and the Settlement.  Id. at § VI(A)-(B).

Plaintiffs and Class Counsel now seek Preliminary Approval so that Settlement Class Members can be notified of the terms of the Settlement and afforded an opportunity to opt-out or

object.  For the reasons set forth herein, Plaintiffs and Class Counsel respectfully request that the Court grant Preliminary Approval.

## II.    STATEMENT OF FACTS

### A.    Procedural History.

In April 2009, Plaintiff Eric Barkwell filed this case in Muscogee County Superior Court seeking monetary damages, restitution, and declaratory relief, and challenging Sprint's disclosure and assessment of Sprint Surcharges.  See generally Complaint (Dkt. No. 1-1).  Sprint subsequently removed the case to this Court.  See Dkt. No. 1.  Plaintiff immediately served written discovery requests on Sprint.  Joint Decl. ¶ 8.  Sprint responded to Plaintiff's discovery requests, producing a substantial amount of responsive documents.  Id.

Sprint also filed a motion for judgment on the pleadings, attacking the sufficiency of Plaintiff Barkwell's allegations.  See Dkt. No. 7.  Sprint then moved to deny certification on the grounds that the putative class members had already settled their claims in prior class settlements.  See Dkt. No. 11.  Sprint also moved to stay discovery pending the disposition of these motions.  See Dkt. No. 12.  Plaintiff Barkwell and Class Counsel vigorously opposed all of these motions and also moved to compel Sprint to provide amended discovery responses, appear for deposition, and produce additional documents.  E.g., Dkt. Nos. 9, 14, 19-20.

On January 25, 2010, Plaintiff Barkwell and Class Counsel moved the Court for leave to file an amended complaint (i) adding Plaintiff Gary Massey and various Defendant Sprint entities to the case and (ii) clarifying the factual and class allegations based on information that had been uncovered during discovery and continued investigation.  See Dkt. Nos. 29, 36.  Sprint opposed this request.  See Dkt. No. 32.

On March 25, 2010, the Court granted Sprint's motion to stay further discovery.

On May 5, 2011, following a lengthy hearing, the Court granted Plaintiff's request to file an amended complaint and denied all other pending motions as moot.  See Dkt. No. 40.

On May 11, 2010, Plaintiffs Eric Barkwell and Gary Massey filed their First Amended Complaint.  See Dkt. No. 41.  Therein, Plaintiffs sought relief on behalf of two classes of current and former Sprint consumer customers:  (i) those who paid Sprint Surcharges in an amount that was greater than specified in their customer agreements and (ii) those who paid Sprint Surcharges in an amount that exceeded Sprint's actual "costs associated with governmental programs."  See Dkt. No. 41, ¶ 46.

On May 25, 2010, Sprint filed its Answer, denying Plaintiffs' allegations of wrongdoing and asserting 29 affirmative defenses.  See Dkt. No. 42.

On July 21, 2010, Sprint filed a motion for summary judgment arguing primarily that the language of its wireless services agreements gave it complete discretion to change the amounts and/or nature of Sprint Surcharges.  See Dkt. Nos. 44, 51.  Sprint specifically argued that the agreements did not limit Sprint Surcharges to recoupment of only costs and fees associated with governmental programs.  Id.  Plaintiffs opposed primarily on the ground that Sprint's interpretation of its customer agreements failed as a matter of law.  See Dkt. No. 47.

On December 6, 2010, the Court issued an Order denying Sprint's motion for summary judgment.  See Dkt. No. 56.  The Order found that the 2007 version of the wireless services agreement terms and conditions mandated that Sprint Surcharges be tied to "government costs or costs of complying with government programs," but the 2008 version did not.  Id. at 12-15.  The Court further noted that both versions allowed Sprint to change the amount of Sprint Surcharges if notice was provide to the customer.  Id.  The Order ultimately found that there were triable issues of fact as to which version governed the Plaintiffs' claims.  Id. at 15-21.

5

On February 16, 2011, the parties attended a full day of mediation with mediator Arthur Glazer of Henning Mediation but no final agreement was reached.  Joint Decl. ¶ 10.

In May 2011, the Supreme Court's decision in AT&T Mobility LLC v. Concepcion, __ U.S. __, 131 S. Ct. 1740 (2011), was released and Sprint moved to enforce the arbitration provision in its standard customer agreements.  See Dkt. Nos. 63, 65.  Plaintiffs opposed on the ground that Sprint had waived its right to pursue arbitration by actively participating in the litigation for more than two years.  See Dkt. No. 64.

On January 12, 2012, this Court denied Sprint's motion to compel arbitration on waiver grounds.  See Dkt. No. 67.  Sprint thereafter appealed this decision and the Court stayed the case pending the outcome of the arbitration appeal.  See Dkt. Nos. 68, 72.

In March 2012, Sprint filed its initial appellate brief in the Court of Appeals.  Joint Decl. ¶ 11.  The appeal was subsequently referred to mediation at the Eleventh Circuit's Kinnard Mediation Center.  Id.

On December 10, 2012, as a result of two earlier sessions of mediation with mediator William Roland of the Kinnard Mediation Center, the parties executed a Memorandum of Agreement ("MOA") evidencing an agreement in principle to settle this litigation on a class-wide basis.  Id. at ¶ 13.  The Agreement was conditioned on Sprint providing confirmatory discovery showing that the total amount of Sprint Surcharges that were assessed during the relevant years were less than the costs it expended in conjunction with government programs. Id.

On December 17, 2012, the Eleventh Circuit stayed proceedings in the appeal for a period of 120 days to allow the parties to finalize the open issues identified in the MOA, complete confirmatory discovery, execute a final settlement agreement, and obtain preliminary and final

approval from this Court.  Id. at ¶ 14.  The Eleventh Circuit thereafter granted several additional stays in order to facilitate the completion of these tasks.  Id.

During the stay periods, the parties worked together to resolve the open issues.  For example, the parties revised certain notice and disclosure language at issue in this lawsuit.  Id. at ¶ 15.  In addition, an outside auditor conducted a review of Sprint's records for confirmatory discovery purposes.  Id.  The parties also performed additional work to finalize the settlement, including holding many conference calls and exchanging hundreds of drafts and emails in an effort to finalize the details of the Agreement and related documents.  Id.

On August 22, 2013, the parties moved to lift the stay so (i) a stipulated protective order governing confirmatory discovery could be entered and (ii) the parties could seek preliminary approval of the Settlement.  See Dkt. Nos. 75, 76.  On August 23, 2013, this Court lifted the stay and entered the stipulated protective order.  See Dkt. No. 77.

The audit report and additional confirmatory discovery was subsequently exchanged.  Joint Decl. ¶ 17.  On October 8, 2013, the parties executed the Agreement.

### B.    Summary of the Settlement Terms.

The Settlement's terms are detailed in the Agreement attached hereto as Exhibit 1.  The following is a summary of the material terms of the Settlement.

### 1.    The Settlement Class and Sub-Class.

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.  The Settlement Class is defined as:

> All Persons in the United States or the U.S. territories, who are or were parties to an Individual Liable Account with Sprint for wireless services between January 1, 2007, and the date of this Agreement and who were charged or were subject to Sprint Surcharges on any or all wireless lines of service.  The Settlement Class does not include governmental or corporate accounts.

Agreement § I(LL).

Additionally, there is a sub-class, the "Fee Notice Sub-Class," which is defined as "Persons holding Individual Liable Accounts who were subject to Sprint Surcharges and who did not receive notice of Sprint Surcharge increases."  It is not possible to define that Sub-Class precisely by date, but Sprint has identified the approximately 2.3 million members of this Sub-Class by account number and has developed lists by account number of the persons that make up this sub-class.  For guidance and notice purposes, the Sub-Class members generally held one or more of the following Sprint accounts:

- Individual Liable Accounts that were opened on or after November 11, 2007, and on or before December 31, 2007;

- Individual Liable Accounts that were on suspension on November 11, 2007, but that were subsequently reinstated;

- Individual Liable Accounts that were opened on or after October 5, 2008, and on or before December 31, 2008;

- Individual Liable Accounts that were on suspension on October 5, 2008, but that were subsequently reinstated;

- Individual Liable Accounts that were opened as new accounts in Sprint retail stores in 2009;

- Individual Liable Accounts that were opened on or after November 8, 2009, and on or before December 31, 2009; and

- Individual Liable Accounts that were on suspension on November 8, 2009, but that were subsequently reinstated.

Agreement § I(P).

## 2.     Prospective Relief for the Settlement Class.

In this case, Plaintiffs alleged that the disclosures and wireless services agreements that Sprint provided to its customers were inherently unclear as to (i) whether Sprint Surcharges could only be imposed to recoup Sprint's costs of complying with governmental programs, (ii) whether the nature and make-up of Sprint Surcharges were subject to change, and (iii) the type of

notice Sprint had to provide before increasing the amounts of Sprint Surcharges.  E.g., Dkt. No. 41.  These questions are answered in the important Prospective Relief that is being provided to all Class Members.   Agreement § II(A).   In collaboration with Class Counsel, Sprint has reviewed and revised its point of sale disclosures, invoice disclosures, wireless services agreement terms and conditions, website disclosures, and invoice notices to reflect the following:

- that Sprint Surcharges are not taxes or amounts Sprint is required to collect from its customers by law;

- that Sprint Surcharges are separated and clearly differentiated from Government Taxes and Fees that Sprint is required to collect from customers;

- that Sprint shall not refer to Sprint Surcharges set by Sprint as being taxes or amounts that Sprint is required by law to collect and remit to any government entity; and

- that when Sprint increases the amounts of Sprint Surcharges it will provide notice of any such change which will inform customers of the change, the effective date of the change, how to obtain additional information, and a reminder to consult their wireless services agreement.

Id.  The revised notices and disclosures are set forth in Exhibit H to the Agreement.  This relief ensures that in the future customers will be fully informed not only about the true nature and amount of Sprint Surcharges, but of any changes thereto, as well as what the customers' rights are in response to such changes.  Joint Decl. ¶ 20.

### 3. Additional Settlement Benefits for the Fee Notice Sub-Class.

In addition to the foregoing relief, the approximately 2,300,000 members of the Fee Notice Sub-Class may file a Claim with the Claims Administrator to receive either a Cash Benefit or one of the Non-Cash Benefits.  Agreement I(P), II(B); also Joint Decl. ¶ 22.

The Cash Benefit is (1) a $1 account credit for a current customer or a former customer with an unpaid account due Sprint, or (2) a $1 check, electronic transfer or e-account credit to a former customer whose account is not past due.  Id. at § II(B)(2).

The <u>Non-Cash Benefits</u> are:  (1) a 30-minute long distance, domestic calling card; (2) a 30% discount on any accessory purchased at a Sprint-owned retail store, limited to one accessory; or (3) a waiver of the $36 activation fee when activating a new line of service under Sprint's then-existing Terms & Conditions of Services.  To be eligible for the waiver of the $36 activation fee, the Claimant must be eligible under Sprint's activation and credit policies.  <u>Id.</u> at ¶ II(B)(3).

Given that these individuals were allegedly not given notice of very minor increases in Sprint Surcharges (i.e., $0.24/month), the available relief represents a substantial portion of the damages the Sub-Class could have hoped to win at trial.  Joint Decl. ¶ 22.

### 4.      All Costs Associated with the Settlement.

Sprint will pay any and all claims administration and notice costs, separate and apart from any monetary relief that is being paid to the Fee Notice Sub-Class.  Agreement § IV(A)-(D).  Such costs will be substantial.

### 5.      Release of Claims against Sprint.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will be deemed to have released Sprint from claims related to the subject matter of the Action.  The detailed release language can be found in Section VII of the Agreement.

### 6.      The Notice Program.

The Notice Program – Section III of the Agreement – is designed to provide the best notice practicable and is tailored to take advantage of the information Sprint has available about the Settlement Class Members.  Sprint will pay all fees and costs of the Notice Program.  <u>Id.</u> at § VI(A).  The Notice Program is reasonably calculated under the circumstances to apprise the

Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Fees and Cost Application and request for Incentive Awards for Plaintiffs, and their rights to opt-out of the Settlement Class or object to the Settlement.  The Notices and Notice program constitute sufficient notice to all persons entitled to notice and satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

The Notice program is comprised of five parts: (1) Invoice Notice to all identifiable Settlement Class Members who are current customers; (2) Direct Mail Notice to all identifiable Settlement Class Members who are former customers; (3) a Summary Notice, to be posted on www.sprint.com; (4) a Publication Notice designed to reach those Settlement Class Members for whom Invoice Notice and Direct Mail Notice is not possible; and (5) a Long Form Notice with more detail than the other notices that will be available on the Settlement Website (www.sprint surchargesettlement.com) and via mail upon request.  Agreement III(A)-(E).  Copies of the Notices are attached to the Agreement as Exhibits C through F.

All forms of Notice to the Settlement Class will include, among other information: a description of the Settlement; a date by which Settlement Class Members may exclude themselves from or "opt out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing will occur; and the toll free telephone number and address of the Settlement Website at which Settlement Class Members may access the Agreement and other related documents and information.  Id.

In addition to the information described above, the Long Form Notice will also describe the procedure Settlement Class Members must use to opt out of the Settlement or to object to the Settlement, and/or to Class Counsel's Fee and Costs Application.  All opt-outs and objections

must be postmarked before the specified deadline.  For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any such cases, and any relevant orders issued in response to such past objections; the identity of the objector's counsel; any agreements relating to the objection or the process of objecting between the objector or the objector's counsel and any other person or entity; a statement confirming whether the objector will appear at the final approval hearing and a description of counsel or witnesses who will appear on behalf of the objector at the final approval hearing; and the objector's signature.  Agreement § V(B).

    **7.  The Claims Process.**

   Gilardi & Co. shall serve as the Claims Administrator.  Agreement § I(J).

   Potential Fee Notice Sub-Class Members are given the option of completing the Claim Form online at the Settlement Website or submitting the Claim Form by mail.  For Persons claiming a Cash Benefit or Non-Cash Benefit, the Claims Administrator shall require sufficient proof supporting a claim to meet a preponderance of evidence standard, and shall categorize the claim depending upon the type of claim and quality of proof provided, in accordance with the Settlement Benefit Rules set forth in the Agreement.  Id. at §§ II(B)-(C).  A copy of the Claim Form is attached to the Agreement as Exhibit G.

   Claimants shall have until the Claims Deadline to file a Claim Form and to show sufficient proof that they are eligible under the Settlement Benefit Rules.  Agreement § I(H). The deadline for submitting the Claim Form shall be 105 days from the date of preliminary approval.  Id.

If a Claim for Cash Benefits is accepted, there shall be no notice of acceptance required to be sent to the Claimant.  Tender of the settlement benefit shall suffice for notice.  On the other hand, if a Claim for Non-Cash Benefits is accepted, the Claims Administrator shall provide the Claimant with a letter or email containing a unique code and/or instructions that will enable the Claimant to obtain his or her Non-Cash Benefit if and when such settlement benefits are tendered, along with instructions for how and when to obtain the Settlement Benefit.  Agreement § II(C)(9)-(11).

### 8.      Settlement Termination.

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court.  Agreement § V(D).  Sprint also has the right to terminate the Settlement if the number of Settlement Class Members who timely opt out of the Settlement Class constitutes a significant percentage of the Settlement Class as agreed on by the Parties in writing.  Id. at § V(D)(b).

### 9.      Incentive Awards to Class Representatives.

Class Counsel will seek and Sprint will not oppose Incentive Awards of $5,000 per Class Representative.  Agreement § VI(D).  These awards will compensate the named Plaintiffs for their time and effort in the Action, and for the risk they undertook in prosecuting the Action against Sprint.

### 10.      Attorneys' Fees and Costs.

Sprint will not oppose Class Counsel's request for attorneys' fees and expenses of up to $500,000.  Agreement § VI(C).  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this

Settlement.  Id.; Joint Decl. ¶ 24.  Such fees and expenses will not be deducted from benefits available to the Class or Sub-Class.

## III.   ARGUMENT AND AUTHORITY

### A.   The Legal Standard for Preliminary Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  In re U.S. Oil and Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  See, e.g., Association for Disabled Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977)); see also 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness."  4 Newberg § 11.26. Settlement negotiations that involve arm's length and informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.  See Manual for Complex Litigation, Third, § 30.42 (West 1995).

When determining whether a settlement is ultimately fair, adequate, and reasonable, courts in this circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the

range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved."  <u>Bennett</u>, 737 F.2d at 986.  Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage.  <u>See, e.g.</u>, <u>Smith</u>, 2010 WL 2401149 at *2.[2]

The Court's grant of Preliminary Approval will allow all Settlement Class Members to receive notice of the Settlement's terms, and of the date and time of the Final Approval Hearing at which Settlement Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the Parties.  <u>See</u> <u>Manual for Complex Litig.</u>, at §§ 13.14, 21.632.  Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  <u>Id.</u> at § 13.14.

### B.   This Settlement Satisfies the Criteria for Preliminary Approval.

Each of the relevant factors weighs in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed, and arm's length negotiations by competent counsel.  Furthermore, a preliminary review of the factors related to the fairness, adequacy, and reasonableness of the Settlement demonstrates that Preliminary Approval is appropriate.

---

[2] Plaintiffs do not address the fifth factor related to objections to the Settlement in the context of this motion, because at this preliminary stage, Settlement Notice has not yet been distributed. Plaintiffs address the remaining factors here, but reserve a more thorough discussion of each factor for the Motion for Final Approval of the Settlement.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  Plaintiffs and Class Counsel maintain that the claims asserted are meritorious, that any motion for class certification would prove successful, and that Plaintiffs would prevail if this matter proceeded to trial.  Sprint maintains that Plaintiffs' claims are unfounded, may be pursued only through arbitration, and cannot be maintained as a class action.  Sprint denies any potential liability, and has shown a willingness to litigate those claims vigorously.

The Parties have concluded that the benefits of settlement in this case outweigh the risks attendant to continued litigation, which include, but are not limited to, the time and expenses associated with proceeding to trial, the time and expenses associated with appellate review, and the countless uncertainties of litigation, particularly in the context of a large and complex class litigation.

>    1.    **This Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations.**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."  Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977); see also Lipuma v. American Express Co., 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case.  The Parties engaged in mediation before two experienced and respected mediators.  When the initial mediation was not fully successful, Class Counsel and Sprint continued negotiations

and held two more mediations.  These negotiations were arm's-length and extensive.  Joint Decl. ¶¶ 10-12;  see also  Perez v. Asurion Corp., 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Furthermore, counsel for both sides are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  Joint Decl. ¶ 25.  Counsel zealously represented their clients' interests through protracted litigation before this Court and the Eleventh Circuit for well over four years.  Id. at ¶¶ 2, 5-9.

In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and a familiarity with the facts of this Action as well as with other cases involving similar consumer claims.   Joint Decl. ¶ 25.  Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and Sprint's defenses, and engaged in discovery with Sprint. Id. at ¶ 26.  Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the case, and prepared counsel for well-informed settlement negotiations.  Id.; see also Francisco v. Numismatic Guaranty Corp. of Am., 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation").

### 2.    The Facts Support a Preliminary Determination that the Settlement Is Fair, Adequate, and Reasonable.

As noted, this Court may conduct a preliminary review of the Bennett factors to determine whether the Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement is warranted.

a.      Likelihood of Success at Trial.

While Plaintiffs and Class Counsel are confident in the strength of their case, they are also pragmatic in their awareness of the various defenses available to Sprint, and the risks inherent to litigation.  Joint Decl. ¶ 27.  As noted above, in addition to the arbitration issue, Plaintiffs faced the risk of dismissal on various theories, including the voluntary payment doctrine.  Furthermore, confirmatory discovery has revealed that even if Plaintiffs were successful in obtaining certification of a nationwide class, which may have been difficult given the choice of law clause in the wireless services agreement, defeating further dispositive motions, and proceeding to trial, their potential trial damages may have been limited (or potentially non-existent).  Joint Decl. ¶¶ 17, 21.  Protracted litigation carries inherent risks that would necessarily have delayed and endangered Settlement Class Members' monetary recovery.  Id. at ¶ 28.  Even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal.  Id. at ¶¶ 4, 28; see Lipuma, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides relief to Settlement Class Members without further delay.  Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with Sprint outweighs the risks of continued litigation.

b.      Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair.

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties."  Cotton, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  Id.

18

Courts have determined that settlements may be reasonable even where plaintiffs recover only some of their alleged losses.  See Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."  Lipuma, 406 F. Supp. 2d at 1323.

Class Counsel have a thorough understanding of the practical and legal issues they would continue to face litigating these claims against Sprint.  Joint Decl. ¶¶ 3, 27.  In this case, Plaintiffs faced a number of serious challenges, including arbitration, voluntary payment, and difficulty proving damages chief among them.  Id.  As described above, Sprint asserted that the arbitration provision in its wireless services agreements requires all Settlement Class Members to *individually* pursue their claims through individual arbitration proceedings rather than before this Court.  If Sprint were to prevail in enforcing its right to compel arbitration, there would be no further litigation of these claims in this Court on a class-wide basis.  Id. at ¶¶ 6, 27, 29.  Additionally, given that confirmatory discovery has shown that Sprint's costs of complying with governmental programs exceeded the amounts it collected from Sprint Surcharges, it is possible Plaintiffs could have proven their claims but been unable to prove any actual damages.  Id. at ¶¶ 17, 21.

The Settlement is outstanding given the complexity of the Action and the significant hurdles to be surmounted between now and final judgment: arbitration and arbitration-related appellate proceedings; class certification; interlocutory Rule 23(f) appeal of class certification; motions for summary judgment; trial; and post-trial appeals.  Joint Decl. ¶ 33.

c.      Complexity, Expense, and Duration of Litigation.

The traditional means for handling claims like those at issue here would unduly tax the court system, require a massive expenditure of public and private resources, and, given the small value of the claims of the individual class members, would be impracticable.  The Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  Joint Decl. ¶ 34.  Ongoing litigation would involve substantial, expensive fact and expert discovery, lengthy additional pretrial proceedings in this Court and the appellate courts and, ultimately, a trial and appeal.  Id.  Absent the Settlement, the Action would likely continue for at least two or three more years.  Id.

d.      Stage of the Proceedings.

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."  Lipuma, 406 F. Supp. 2d at 1324.

Plaintiffs settled the Action with the benefit of pretrial and confirmatory discovery.  Joint Decl. ¶¶ 8-9.  As noted, review of responsive documents and information positioned Class Counsel to initially evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and confirm that their suspicions with respect to the potential damages.  Id.

C.      Certification of the Settlement Class Is Appropriate.

For settlement purposes, Plaintiffs and Class Counsel respectfully request that the Court certify the Settlement Class and Fee Notice Sub-Class defined above and in sections I(P) and (LL) of the Agreement.  "A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue."  Borcea v. Carnival Corp., 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). "Confronted with a request for settlement-only class certification, a district court need not

inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997).

Certification of a nationwide class for settlement purposes permits notice of the proposed Settlement to issue to the class to inform settlement class members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the final approval hearing. See Manual for Complex Litig., at §§ 21.632, 21.633. For purposes of this Settlement only, Sprint does not oppose class certification. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class and Fee Notice Sub-Class consist of millions of people throughout the United States and joinder of all such persons is impracticable. Joint Decl. ¶ 36; see also Fed. R. Civ. P. 23(a)(1); Kilgo v. Bowman Trans., 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members."  Williams v. Mohawk Industries, Inc., 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted).  Here, the commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class and Fee Notice Sub-Class that center on Sprint's disclosure and assessment of Sprint Surcharges.  Joint Decl. ¶ 37; see also Fed. R. Civ. P. 23(a)(2).

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied.  See Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").  Plaintiffs are typical of absent Settlement Class Members and Fee Notice Sub-Class Members because they were subjected to the same Sprint practices and claim to have suffered from the same injuries, and because they will equally benefit from the relief provided by the Settlement.  Joint Decl. ¶¶ 38-39.

Plaintiffs also satisfy the adequacy of representation requirement.  Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation.  Fabricant, 202 F.R.D. at 314.  The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class."  Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted).  Plaintiffs' interests are

coextensive with, not antagonistic to, the interests of the Settlement Class and Fee Notice Sub-Class, because Plaintiffs and absent Class Members have an equally great interest in the relief offered by the Settlement, and absent Class Members have no diverging interests.  Joint Decl. ¶¶ 38-39.   Further, Plaintiffs are represented by qualified and competent Class Counsel with extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case.   Id.   Class Counsel have devoted substantial time and resources to vigorous litigation of the Action from inception through the date of the Settlement. Id.

The predominance requirement of Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."  Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  Plaintiffs satisfy the predominance requirement because liability questions common to all Settlement Class Members and Fee Notice Sub-Class Members substantially outweigh any possible issues that are individual to each such Class Members.  Joint Decl. ¶ 40.  For example, each Settlement Class Member and Fee Notice Sub-Class Member's relationship with Sprint arises from a wireless services agreement that is the same or substantially similar in all relevant respects to other Class Members' agreements.  See Sacred Heart Health Sys., 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").  Furthermore, resolution of millions of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication.  See Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

**D.      The Court Should Approve the Proposed Notice Program and Claims Process.**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Complex Litig., § 21.312 (internal quotation marks omitted).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." Twigg v. Sears, Roebuck & Co., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); see also Manual for Complex Litig., § 21.312 (listing relevant information).

The proposed Notice Program satisfies all of these criteria.  As recited in the proposed Settlement and above, the Notice Program will inform Settlement Class Members and Fee Notice Sub-Class Members of the substantive terms of the Settlement, will advise them of their options for opting-out or objecting to the Settlement, and how to obtain additional information about the Settlement.  See Exhibits C-F to Agreement.  The Notice Program is designed to reach a high percentage of Settlement Class Members and Fee Notice Sub-Class Members, and it exceeds the requirements of constitutional due process.  Therefore, the Court should approve the Notice Program and the form and content of the Notices attached to the Agreement as Exhibits C through F and I.

Additionally, the Claims process for Fee Notice Sub-Class Members as set forth in the Agreement, including the Claim Form appended as Exhibit G to the Agreement, is clear, reasonable, and appropriate under the circumstances.  It provides potential members of the Fee Notice Sub-Class with sufficient guidance and direction to submit the information that is necessary for their claim to be approved.  Id.  Therefore, the Court should approve the Claims process and the form and content of the Claims Form attached to the Agreement as Exhibit G.

E.      The Court Should Schedule a Final Approval Hearing.

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement.   Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval.  The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a final order and judgment under Rule 23(e); and whether to approve Class Counsel's Fee and Costs Application and request for Service Award for the Plaintiffs.  Plaintiffs request that the Court schedule the Final Approval Hearing for the week of March 10, 2014, if convenient for the Court.  Plaintiffs and Class Counsel will file their Motion for Final Approval of the Settlement, including their Fee and Costs Application and request for Incentive Awards for Plaintiffs, no later than 120 days after Preliminary Approval is entered.

IV.    CONCLUSION

Based on the foregoing, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement; (4) approve the Claim process set fort in the Agreement; (5) approve the form and content of the Notices and Claim

Forms attached to the Settlement as Exhibits C through G; (6) approve and order the opt-out and objection procedures set forth in the Agreement; (7) appoint as class representatives Plaintiffs Eric Barkwell and Gary Massey; (8) appoint as Class Counsel E. Adam Webb and Matthew C. Klase of Webb, Klase & Lemond, LLC; (9) stay the Action against Sprint pending Final Approval of the Settlement; and (10) schedule a Final Approval Hearing during the week of March 10, 2014.  A [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class is attached to the Settlement as Exhibit A.

DATED this 9th day of October, 2013.

Respectfully submitted,

BY:   WEBB, KLASE & LEMOND, L.L.C.

*/s/ E. Adam Webb*
E. Adam Webb
   Georgia State Bar No. 743910
Matthew C. Klase
   Georgia State Bar No. 141903

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-0773
(770) 217-9950 (fax)

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2013, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will send a notice to the counsel of record listed below:

H. Wayne Phears, Esq.
R. Patrick Dover, Esq.
McGuire Woods LLP
1170 Peachtree Street N.E., Suite 2100
Atlanta, Georgia 30309
wphears@mcguirewoods.com
rdover@mcguirewoods.com

DATED this 9th day of October, 2013.

*/s/ E. Adam Webb*
E. Adam Webb
