IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

ERIC BARKWELL and GARY MASSEY, )
on behalf of themselves and all other similarly )
situated persons, )
             )
      Plaintiffs, )
             )
vs. )    CASE NO. 4:09-CV-56 (CDL)
             )
SPRINT COMMUNICATIONS )
COMPANY L.P., *et al.*, )
             )
      Defendants. )
_____ )

## CLASS ACTION SETTLEMENT

This stipulation of Class Action Settlement and Settlement Agreement (the "Agreement"), including its attached Exhibits, is entered into by and among Plaintiffs Eric Barkwell and Gary Massey, on behalf of themselves and on behalf of each of the Settlement Class Members, and Defendants Sprint Spectrum L.P., Sprint Communications Company, L.P., Sprint Nextel Corporation n/k/a Sprint Corporation, Inc. and Sprint Solutions, Inc. (collectively, "Sprint"), on behalf of themselves, and all Sprint's affiliates, including all Released Parties. Capitalized terms used herein are defined in Article I herein or indicated in parenthesis elsewhere in the Agreement. This Agreement is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as the term is defined below) pursuant to the terms and conditions of the Agreement, subject to the approval of the Court.

**PREAMBLE**

WHEREAS, Sprint, through its various direct and indirect operating subsidiaries and affiliates (collectively defined in Article I below as "Sprint"), provides and/or has provided wireless services to customers in one or more or all of the United States;

WHEREAS, Eric Barkwell and Gary Massey (collectively, "Plaintiffs") are named Plaintiffs and putative class representatives in the above-captioned action titled *Barkwell, et al., v. Sprint Communications Co., L.P., et al.,* Case No. 4:09-cv-56 (the "Action," as defined in Article I below);

WHEREAS, Plaintiffs represent a putative class of persons who allege that Sprint charged its Individual Liable Account (as defined in Article I below) customers Sprint Surcharges (as defined in Article I below) that were not properly disclosed and/or authorized by their wireless services agreements;

WHEREAS, Sprint moved for summary judgment on all or certain claims and the Judge herein has issued an Order construing certain of the wireless services agreements at issue herein;

WHEREAS, Sprint further moved to compel arbitration of Plaintiffs' claims, and has appealed the Order denying arbitration, *Sprint Communications Company, L.P., et al. v. Barkwell, et al.,* Appeal No. 12-10666-C (11th Cir.);

WHEREAS, the Parties have exchanged information, have participated in extensive mediations under the guidance of experienced mediators Arthur Glaser and William Roland, and have had a full and fair opportunity to evaluate the strengths and weaknesses of each other's respective positions;

WHEREAS, Sprint denies any and all wrongdoing and all of the allegations and claims asserted by Plaintiffs in the Action, denies all allegations of wrongdoing and liability, and denies

2

any causation of damages to the Settlement Class. In no event shall this Agreement, or any part thereof, be construed or deemed to be evidence of an admission or a concession on the part of Sprint of any fault or wrongdoing of any kind, nor an admission or concession of liability of any kind, whether for damages or equitable or declaratory relief or any other form of legal remedy, or a concession of any infirmity in any of the defenses that have been, could have been, or could be asserted in the Action, or a waiver of the enforcement of Sprint's mandatory arbitration provision within Sprint's Terms and Conditions of Service;

WHEREAS, Sprint nevertheless considers it desirable that all claims against it be settled on the terms hereinafter set forth in order to avoid further expense, inconvenience, and delay, to dispose of the protracted lawsuit, and to put to rest all controversy concerning all claims which have been asserted against Sprint in the Action. Therefore, for settlement purposes only, Sprint, while continuing to deny any and all allegations of liability, has agreed to settle and terminate the lawsuit against it as set forth herein.

WHEREAS, Plaintiffs believe that the claims asserted in the Action are meritorious;

WHEREAS, Plaintiffs nevertheless have concluded that, in light of the costs and delay of litigation of the matters in dispute, particularly in complex class action proceedings, and in the desire to provide relief to the Settlement Class sooner rather than later, this Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class;

NOW THEREFORE, it is hereby stipulated and agreed that, in consideration of the agreements, promises, and covenants set forth in this Agreement, and subject to approval of the Court, the Action and the Related Claims shall be fully and finally settled and the Action dismissed with prejudice under the following terms and conditions:

3

## I.   DEFINITIONS

As used in this Agreement and the related documents attached hereto as Exhibits, the terms set forth below shall have the meanings set forth below. The singular includes the plural and vice versa.

A.   "Action" means the civil action entitled *Barkwell, et al. v. Sprint Communications Co., L.P., et al.*, No. 4:09-cv-56, filed in the United States District Court for the Middle District of Georgia, including, but not limited to the amendment to the Complaint filed therein, and any claims that were and/or could have been asserted therein. "Action" also includes any claims that Sprint has asserted or could assert by way of defense and/or counterclaim.

B.   "Administrative Charge" means a per line, per month charge applied by Sprint to help defray various costs incurred by Sprint, including, but not limited to, charges imposed on Sprint from other telecommunications carriers and charges and fees from local telephone companies for delivery of calls from Sprint's customers and for certain network facilities and services Sprint must purchase from them. The Administrative Charge appears as a separate line item in the Sprint Surcharges or Surcharges and Fees section of its customers' invoices. This charge is not a tax and is not an amount Sprint is required to collect from its customers by law. The Administrative Charge and the components used to calculate this charge are subject to change from time to time.

C.   "Agreement" means this stipulation of Class Action Settlement (including all Exhibits attached hereto).

D.   "Approved Claim" means a claim by a Claimant that the Claims Administrator, in its discretion and subject to review by Counsel for the Parties, determines to be timely, accurate, complete, in proper form and signed. Sprint retains the right to verify all Approved Claims and notify the Claims Administrator of any discrepancies, subject to Class Counsel review.

4

E.     "Cash Benefit" means the Settlement Benefit described in Article II(B)(2) of this Agreement.

F.     "Claim" means a request for relief pursuant to Article II of this Agreement submitted by a Fee Notice Sub-Class member on a Claim Form filed with the Claims Administrator in accordance with the terms of the Agreement.

G.     "Claimant" means a member of the Fee Notice Sub-Class who has submitted a Claim by the Claim Deadline.

H.     "Claim Deadline" means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely. The Claim Deadline shall be 165 days from the date of the Preliminary Approval Order.

I.     "Claim Form" means the online web form interface and written claim form substantially in the form of Exhibit G to this Agreement, by which a Claimant may submit a Claim to the Claims Administrator. The Claim Form shall require a Claimant to provide the following information in a sworn verification subject to the penalty of perjury: (a) identifying information confirming that the Claimant is a Fee Notice Sub-Class member (including the Claimant's name, account number, address, telephone number(s) for the Individual Liable Account for which a Settlement Benefit is being claimed); (b) a statement indicating whether or not the Claimant paid the challenged Sprint Surcharges claimed to be improper; and (c) the Settlement Benefit selected by the Claimant.

J.     "Claims Administrator" means Gilardi & Co. LLC, 3301 Kerner Boulevard, San Rafael, California 94901.

K.     "Class Counsel" means E. Adam Webb and Matthew C. Klase of Webb, Klase & Lemond, LLC, 1900 The Exchange SE, Suite 480, Atlanta, Georgia 30339.

5

L.     "Class Notice" or "Notice" means the Long Form Notice, Published Notice, Summary Notice, Direct Mail Notice and Invoice Notice, which will be disseminated to the Settlement Class informing them about the Settlement. Class Notice shall be completed in accordance with Article III below.

M.     "Compliance Costs" means general and administrative costs incurred by Sprint, directly or indirectly, for compliance with government programs, requirements, decisions, and initiatives. Such Compliance Costs expressly include costs that, while not directly imposed by a governmental agency, were reasonably incurred in the ordinary course of business as a result of a governmental program, decision, requirement, or initiative.

N.     "Direct Mail Notice" means the Notice that will be emailed to Settlement Class Members who will not receive the Invoice Notice because they are either not current Sprint customers or otherwise scheduled to receive a billing statement when the Invoice Notice is published. If an email is returned as undeliverable, or in the event Sprint does not have an email address for a Settlement Class Member, the Claims Administrator will mail the Notice in the form of a postcard. Sprint will complete the Direct Mail Notice no later than 90 days after entry of the Preliminary Approval Order. The Direct Mail Notice will be in a form substantially similar to Exhibit C hereto.

O.     "Effective Date" means the first date by which all of the following events shall have occurred: (a) the Court has entered the Preliminary Approval Order substantially in the form of Exhibit A attached hereto; (b) the Court has entered the Final Approval Order and Judgment substantially in the form of Exhibit B attached hereto; and (c) the Final Approval Order and Judgment has been entered approving the Settlement Agreement in all respects, dismissing the case with prejudice, and such Final Order being immediately appealable; (d) the

6

time for appeal from the Final Order shall have expired, or if any appeal of the Final Order as to the Settlement Agreement is taken, that appeal shall have been finally determined by the highest court, including motions for reconsideration and/or petitions for writ of certiorari, and which Final Order is not subject to further adjudication or appeal, and has been confirmed in whole pursuant to the terms of the Agreement and Final Order as entered and effective.

P.    "Fee Notice Sub-Class" means Persons holding Individual Liable Accounts who were subject to Sprint Surcharges and who did not receive notice of Sprint Surcharge increases. It is not possible to define that Sub-Class precisely by date, but Sprint has identified the approximately 2.3 million members of this Sub-Class by account number and has developed lists by account number of the persons that make up this class. For guidance and notice purposes, the Sub-Class members generally fall into one or more of the following categories:

- Individual Liable Accounts that were opened on or after November 11, 2007, and on or before December 31, 2007;

- Individual Liable Accounts that were on suspension on November 11, 2007, but that were subsequently reinstated;

- Individual Liable Accounts that were opened on or after October 5, 2008, and on or before December 31, 2008;

- Individual Liable Accounts that were on suspension on October 5, 2008, but that were subsequently reinstated;

- Individual Liable Accounts that were opened as new accounts in Sprint retail stores in 2009;

- Individual Liable Accounts that were opened on or after November 8, 2009, and on or before December 31, 2009; and

7

- Individual Liable Accounts that were on suspension on November 8, 2009, but that were subsequently reinstated.

Q.     "Fees and Cost Application" means the written motion or application by which Eric Barkwell, Gary Massey, and/or Class Counsel will request that the Court award attorneys' fees, costs, expenses and incentive awards in this matter.

R.     "Final" means one business day following the latest of the following events: (i) the date upon which the time expires for filing a notice of appeal of the Court's Final Approval Order and Judgment approving the Settlement substantially in the form of Exhibit B; or (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to attorneys' fees and reimbursement of expenses, the date of termination of all such appeals that finally affirms and leaves in place without material modification the Final Approval Order and Judgment or; and (iii) the date of final dismissal of any appeal, the expiration of the period in which a petition for certiorari from any appellate decision or motions for reconsideration may be filed in the U.S. Supreme Court, or the denial by the U.S. Supreme Court of any petition for certiorari.

S.     "Final Approval Hearing" means the hearing scheduled to take place at least 90 days after the date of entry of the Preliminary Approval Order at which time the Court shall: (a) determine whether to grant final approval to this Settlement Agreement and to certify the Settlement Class; (b) consider any timely objections to this Settlement and all responses thereto; (c) rule on the Fees and Cost Application; and (d) rule on any requests for incentive awards.

T.     "Final Approval Order and Judgment" means the order, substantially in the form of Exhibit B attached hereto, in which the Court grants final approval of this Settlement Agreement, certifies the Settlement Class, and authorizes the entry of a final judgment and

8

dismissal of the Action with prejudice. The form of the Final Approval Order and Judgment, attached as Exhibit B hereto, is a material term of this Settlement Agreement.

U. "Government Taxes and Fees" means taxes and fees imposed directly on customers, which Sprint collects on the government's behalf.

V. "Individual Liable Account" means a Code-Division Multiple Access ("CDMA") Sprint post-paid cellular account held by an individual who is responsible for the account under a wireless services agreement and is using (or used) the service line(s) for personal, household, business or a mixed use. "Individual Liable Account" does not include governmental or corporate accounts.

W. "Invoice Notice" means the notice that will appear in the Sprint subscriber billing statements for one full billing cycle (approximately one month) of Sprint's subscriber billing statements advising all then-active and current Sprint customers of the Settlement. The Invoice Notice will be in a form substantially similar to Exhibit F hereto.

X. "Long Form Notice" means the Notice of Proposed Settlement of Class Action that will be published on a website established by the Claims Administrator substantially in the form attached as Exhibit E.

Y. "Non-Cash Benefit" means the Settlement Benefit described in Article II(B)(3) .

Z. "Notice Plan" means the method of providing Class Notice to the Settlement Class of the pendency of the Action, the proposed Settlement and the Final Approval Hearing, as set forth in Section III herein.

AA. "Parties" means Eric Barkwell, Gary Massey and Sprint.

BB. "Person" means any natural person or entity holding an Individual Liable Account.

9

CC.    "Preliminary Approval Order" means the order, substantially in the form of Exhibit A attached hereto, in which the Court grants its preliminary approval to this Settlement Agreement and preliminarily certifies the Settlement Class, approves and authorizes dissemination of Notice to the Settlement Class, and appoints the Claims Administrator. The form of the Preliminary Approval Order, attached as Exhibit A hereto, is a material term of this Settlement Agreement.

DD.    "Prospective Relief" means the relief set forth in Article II(A) of this Agreement.

EE.    "Publication Notice" means the Notice that will be published on one occasion in USA Today as described in Article III below. The Publication Notice will be in a form substantially similar to Exhibit D hereto (the Claims Administrator will reformat the language in Exhibit D prior to publication).

FF.    "Regulatory Charges" means charges collected by Sprint from Individual Liable Account customers that were disclosed as costs incurred for compliance with government programs, requirements, decisions, and initiatives.

GG.    "Released Claims" means any and all actions, causes of action, claims, demands, liabilities, obligations, damage claims, restitution claims, injunction claims, declaratory relief claims, fees, costs, sanctions, proceedings and/or rights of any nature and description whatsoever, whether legal or equitable, including, without limitation, violations of any state or federal statutes and laws, rules or regulations, or principles of common law, whether liquidated or unliquidated, known or unknown, in law, equity, arbitration, or otherwise, whether or not concealed or hidden, that in any way relate to, in whole or in part, or arise out of, any of the allegations, claims, and/or theories up to and including the date the Preliminary Approval Order is entered that were raised or could have been raised in the Action against Sprint arising from or

10

related to Sprint Surcharges, Regulatory Charges, and Administrative Charges by Sprint and the disclosure or lack thereof of Sprint Surcharges generally. The term "Released Claims" further includes any and all actions, causes of action, claims, demands, liabilities, obligations, damage claims, restitution and unjust enrichment claims, injunction claims, declaratory relief claims, fees, costs, sanctions, proceedings and/or rights of any nature and description whatsoever, whether legal or equitable, that in any way challenge: (i) Sprint's decision to bill, charge, and/or collect Sprint Surcharges to and/or from its customers; (ii) the amount or quantity of Sprint Surcharges billed to its customers; (iii) Sprint's classification of certain Regulatory and/or Administrative Charges as Sprint Surcharges; (iv) the adequacy of Sprint's disclosures, device and services training manuals and instructions, advertisements and contracting practices relating to Sprint Surcharges, including that such disclosures, device and services training manuals and instructions, contracting practices or advertisements are unlawful, unfair, deceptive, inaccurate, misleading, fraudulent, unconscionable or unreasonable; (v) Sprint's communications related to Sprint Surcharges; and (vi) Sprint's policies and procedures related to marketing, advertising, device and services training manuals and instructions, and contracting practices, describing and disclosing Sprint Surcharges.

HH.     "Released Parties" means Sprint (as defined herein) and any and all of its predecessors, successors, assigns, parents, subsidiaries, employees, agents, consultants, directors, officers, partners, financial or investment advisors, insurers, lenders, legal representatives, affiliates, vendors and suppliers or other entities in which Sprint has a controlling interest or which are related to or affiliated with it, including: (a) Sprint; (b) Sprint's counsel; (c) Sprint's successors and predecessors and their past, present, and future direct and indirect owners, parents, subsidiaries, and other corporate affiliates, vendors and suppliers or other entities in

11

which Sprint has a controlling interest; and (d) for each of the foregoing Persons, each of their past, present, or future officers, directors, shareholders, owners, employees, representatives, agents, principals, partners, members, administrators, legatees, executors, heirs, estates, predecessors, successors, or assigns.

II.     "Request for Exclusion" means a valid request for exclusion from a member of the Settlement Class. To be valid, a request for exclusion must: (a) be submitted by the member of the Settlement Class; (b) be submitted to the Claim Administrator and postmarked by a date not later than 135 days from the date of the Preliminary Approval Order; (c) contain the submitter's name, address and telephone number; and (d) otherwise comply with the instructions set forth in the Notice.

JJ.     "Settlement Agreement," "Settlement," or "Agreement" means this stipulation and Agreement of Settlement, including all attached and/or incorporated exhibits.

KK.     "Settlement Benefits" means the Cash Benefit and Non-Cash Benefit.

LL.     "Settlement Benefit Rules" means those rules set forth in Article II(C) below.

MM.     "Settlement Class" means all Persons in the United States or the U.S. territories, who are or were parties to an Individual Liable Account with Sprint for wireless services between January 1, 2007, and the date of this Agreement and who were charged or were subject to Sprint Surcharges on any or all wireless lines of service. The Settlement Class does not include governmental or corporate accounts.

NN.     "Settlement Class Member" means any Person within the Settlement Class who does not submit a timely and valid Request for Exclusion.

OO.     "Sprint" means Sprint Spectrum L.P., Sprint Communications Company, L.P., Sprint Nextel Corporation n/k/a Sprint Corporation, Inc.,, Sprint Solutions, Inc., and Sprint

Corporation, and all of their affiliates, parent companies, wholly or partially owned subsidiaries companies, corporations, trusts, partnerships, and divisions, direct and indirect parent companies and companies, including Sprint Nextel Corporation n/k/a Sprint Corporation, Inc.;, and each of their officers, directors, employees, trustees, principals, personal representatives, counsel, heirs, executors, administrators, successors, assigns, and any and all predecessors, successors or parent corporations and companies, trusts, partnerships and divisions, or affiliates of the foregoing.

PP.  "Sprint's Counsel" means McGuireWoods LLP, 1230 Peachtree Street, N.E., Suite 2100, Atlanta, GA 30309-3534.

QQ.  "Sprint Surcharges" means rates Sprint collects from its customers to help defray certain costs, including, but not limited to, costs associated with government programs and network connections. Sprint Surcharges are not taxes and Sprint is not required to collect Sprint Surcharges from customers by law.  Any and all Sprint Surcharges appear under the "Sprint Surcharges" section of the customer's billing invoice.

RR.  "Summary Notice" means the short form of notice that will be published on www.Sprint.com.  The Summary Notice will be in a form substantially similar to Exhibit D hereto.

SS.  "United States" includes the fifty states of the United States and all territories and possessions of the United States.

## II.  CLASS RELIEF

In consideration of a full, complete, and final settlement of the Action, dismissal of the Action with prejudice, and the full release of the Released Claims as set forth in Article VII below, and subject to the Court's approval, the Parties agree to the following relief:

13

A.     Prospective Relief to All Class Members

Sprint agrees that all Settlement Class Members shall receive the Prospective Relief set forth below.      Isolated violations of Article II(A), including marketing materials or representations, or technical and/or human errors resulting in an issue that renders a failure to comply with the requirements hereunder, will not result in a formal action or motion to the Court related to any matters set forth in this Settlement Agreement, including but not limited to an application for an order of contempt, unless said violations are not appropriately addressed after they have been identified in writing to Sprint by Class Counsel:

1.     In collaboration with Class Counsel, Sprint has reviewed and revised its point of sale disclosures, invoice disclosures, Terms & Conditions, website disclosures and invoice notices to reflect the following:

- that Sprint Surcharges are not taxes or amounts Sprint is required to collect from its customers by law;

- that Sprint Surcharges are separated and clearly differentiated from Government Taxes and Fees that Sprint is required to collect from customers; and

- that Sprint shall not refer to Sprint Surcharges set by Sprint as being taxes or amounts that Sprint is required by law to collect and remit to any government entity.

2.     In collaboration with Class Counsel, Sprint has also reviewed and revised the notice it provides to its customers when it increases the amounts of its Sprint Surcharges to reflect the changes noted in Exhibit H.

14

3.      The revised notices and disclosures agreed to between Sprint and Class Counsel are set forth in Exhibit H. Class Counsel acknowledges that the language in Exhibit H fully and fairly conveys the information set forth above.

4.      The Parties acknowledge that the notice and disclosure language may need to be revised in the future, and that Sprint may make such changes as long as the language remains consistent with the objectives set forth above and substantially similar to the language in Exhibit H.

B.      Settlement Benefits

1.      In addition to all other consideration set forth in the Agreement, including the Prospective Relief, members of the Fee Notice Sub-Class may file a Claim with the Claims Administrator to obtain a Settlement Benefit selecting either the Cash Benefit or one of the Non-Cash Benefits set forth in subparagraphs 2 and 3 below.

To be eligible to receive a Settlement Benefit, Fee Notice Sub-Class members must submit a completed Claim Form to the Claims Administrator by the Claims Deadline and comply with the Settlement Benefit Rules described below.

2.      Cash Benefit: The Cash Benefit is a $1 account credit for a current customer or a former customer with an unpaid account due Sprint, or a $1 check, electronic transfer or e-account credit to a former customer whose account is not past due.

3.      Non-Cash Benefits: The Non-Cash Benefits are:

(i)      a 30-minute long distance, domestic calling card; or

(ii)     a 30% discount on any accessory purchased at a Sprint-owned retail store, limited to one accessory; or

(iii)    a waiver of the $36 activation fee when activating a new line of service

15

under Sprint's then-existing Terms & Conditions of Services; such Claimant must be eligible under Sprint's activation and credit policies.

    C.    Settlement Benefit Rules

    1.    A Claim for Settlement Benefits will not be an Approved Claim unless a Claimant submits to the Claims Administrator by the Claims Deadline a Claim Form completed in its entirety providing information to verify that he or she is appropriately claiming a Settlement Benefit in accordance with this Agreement.

    2.    A Claimant will not be entitled to a Settlement Benefit unless he or she: (a) is the authorized representative on an Individual Liable Account; (b) provides information to identify his or her Individual Liable Account; and (c) swears under oath, and/or provides documentation showing that he or she was charged, paid, and/or was not refunded or credited Sprint Surcharges.

    3.    No Fee Notice Sub-Class member will be entitled to a Settlement Benefit if the Fee Notice Sub-Class member: (i) previously received a credit, refund, adjustment or offset of all paid Sprint Surcharges; or (ii) released Sprint from liability arising out of Sprint Surcharges in a prior claim or lawsuit.

    4.    No Fee Notice Sub-Class member will be entitled to a Settlement Benefit if the Fee Notice Sub-Class member never paid to Sprint any amounts for Sprint Surcharges.

    5.    Claimants shall have until the Claims Deadline to file a Claim Form and to show sufficient proof that they are eligible under the Settlement Benefit Rules.

    6.    Settlement Benefits may be requested by deceased Fee Notice Sub-Class members through representatives of their estate if appropriate documentation is provided.

16

7.   No Settlement Benefits shall be distributed under this Settlement Agreement until after the Effective Date, unless otherwise agreed to by the Parties. If this Settlement Agreement is not approved, no payments or distributions of Settlement Benefits of any kind shall be made.

D.   Settlement Benefits Claim Process

1.   The Claims Administrator shall maintain a website that provides information regarding the Settlement, including the Long Form Notice, and enables the on-line filing of Claim Forms. That website shall be denominated www.sprintsurchargesettlement.com.

2.   Fee Notice Sub-Class members shall be given the option of completing and submitting a Claim Form online or submitting a completed Claim Form by mail.

3.   From the date that Class Notice is first provided and through at least the Claims Deadline, the Claims Administrator shall also maintain a toll-free telephone number for Fee Notice Sub-Class members to obtain information regarding the Settlement, including instructions on how to file a Claim.

4.   The Claims Administrator shall deem Claims to be Approved Claims only in accordance with this Settlement Agreement. The Claims Administrator shall not determine that a Claim is an Approved Claim unless the Claimant provides all of the information requested on the Claim Form or otherwise provides sufficient proof to meet a preponderance of evidence standard confirming that he or she is entitled to a Settlement Benefit. The Claims Administrator will consult and confer with counsel for both parties and will consult Sprint's records in evaluating the validity of a Claim or eligibility for a Settlement Benefit.

5.   The Claims Administrator shall identify duplicate Claims using reasonable means (such as the use of unique identifying numbers on each Claim Form) and deny the duplicate Claim(s).

17

6.     The Claims Administrator shall deny Claims that are not submitted by the Claims Deadline.

7.     Sprint and Class Counsel shall have the right to inspect and verify the Claim Forms (including forms submitted electronically) received by the Claims Administrator, and Sprint may submit pertinent information to the Claims Administrator for review and consideration by the Claims Administrator for purposes of determining whether a Claim shall be deemed an Approved Claim.

8.     Sprint shall have the right to object to Claims being deemed an Approved Claim for any reason that is in accordance with this Settlement Agreement, including where a Fee Notice Sub-Class member is seeking a Cash Benefit but in fact was never charged or paid for Sprint Surcharges or received a full credit or refund for a disputed charge or has otherwise previously participated in an applicable settlement or has been bound by a prior judgment or release. The Claims Administrator shall provide Class Counsel with a list of Claims to which an objection is made, together with the reasons for the objection. If Class Counsel do not dispute an objection to a Claim Form within 15 days after receiving notice of such dispute, that Claim Form shall be rejected by the Claims Administrator. If a dispute arises between Class Counsel and Sprint regarding any objection to a Claim Form and/or decision by the Claims Administrator regarding a lack of qualifying proof on a Claim Form that results in a materially lower settlement benefit categorization than has been requested by a putative Claimant, Sprint and Class Counsel shall agree upon a dispute resolution process that shall, at a minimum, require that the Parties confer regarding the same, and if no agreement is reached, the submission of the dispute to an arbitrator to be appointed by the Court. Regardless of the dispute resolution process agreed upon, in the absence of contrary evidence from a Claimant,

information from Sprint's data, customer records and billing systems shall be conclusive.

9.      If a Claim Form is rejected by the Claims Administrator, the Claims Administrator shall provide written notice to the Claimant making the Claim by mailing a letter and/or emailing such notice to the physical and/or email address provided by the Person for the receipt of correspondence by the Claims Administrator.

10.     Except as set forth above, if a Claim for Cash Benefits is accepted, there shall be no notice of acceptance required to be sent to the Claimant. Tender of the Settlement Benefit shall suffice for notice.

11.     If a Claim for Non-Cash Benefits is accepted, the Claims Administrator shall provide the Claimant with a letter or email containing a unique code and/or instructions that will enable the Claimant to obtain his or her Non-Cash Benefit if and when such Settlement Benefits are tendered, along with instructions for how and when to obtain the Settlement Benefit.

## III.    NOTICE AND REQUESTS FOR EXCLUSION

### A.    Notice Period

The Settlement Administrator and Sprint shall begin the provision of Direct Mail Notice and Invoice Notice as soon as practicable after the entry of the Preliminary Approval Order, but in any event shall complete the provision of Direct Mail Notice and Invoice Notice no later than 90 days after entry of that Order. All other aspects of the Notice Plan shall commence within 30 days after the date of entry of the Preliminary Approval Order.

### B.    Long Form Notice

The Long Form Notice shall be posted on the Internet at the website established by the Claims Administrator. The Long Form Notice and Claim Forms will be removed from the Internet Website established by the Claims Administrator within ten (10) days after the Claim Deadline has expired.

19

C.     Invoice Notice

Sprint shall cause the Invoice Notice to appear in one full billing cycle (one month) of Sprint's subscriber billing statements for Individual Liable Accounts.

D.     Direct Mail Notice

Sprint shall provide Direct Mail Notice via email to putative Settlement Class Members who will not receive the Invoice Notice because they are either not current Sprint customers or otherwise scheduled to receive a billing statement when the Invoice Notice is published. If an email is returned as undeliverable, or in the event Sprint does not have an email address for a Settlement Class Member, the Claims Administrator will mail the Notice in the form of a postcard.

E.     Summary Notice

The Summary Notice shall be published on www.Sprint.com.

F.     Publication Notice

The Claims Administrator shall cause one insertion of at least one-sixth of a page in size to be placed in the *USA Today* newspaper.

G.     Declarations of Compliance

Sprint, Class Counsel, and the Claims Administrator shall prepare declarations attesting to compliance with the mailings set forth above. Such declarations shall be provided to Class Counsel and Sprint's Counsel and filed with the Court no later than ten (10) days prior to the Final Approval Hearing.

H.     Best Notice Practicable

The Parties agree, and the Preliminary Approval Order shall state, that compliance with the procedures described in this Article is the best notice practicable under the circumstances and

20

shall constitute due and sufficient notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class, the terms of the Settlement Agreement, and the Final Approval Hearing, and shall satisfy the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law, rule and/or regulation.

      I.      Report on Requests for Exclusion

Not later than ten (10) days before the Final Approval Hearing, the Claims Administrator shall prepare and deliver to Class Counsel, who shall file it with the Court, and Sprint's Counsel, a report stating the total number of Persons that have submitted timely and valid Requests for Exclusion from the Settlement Class, and the names of such Persons. Such Persons will not be entitled to receive any relief under this Settlement Agreement.

**IV.    CONFIRMATORY DISCOVERY**

Class Counsel have conducted a thorough investigation into the facts and law relating to the Action. Among other things, Class Counsel have reviewed a summary of an independent third party accounting review by a national accounting firm showing that Sprint's Compliance Costs incurred between January 1, 2007, and December 31, 2009 reasonably approximated all Sprint Surcharges collected during that time period, as well as certain supporting data. Class Counsel have also reviewed and negotiated changes to Sprint's notices and disclosures. Numerous follow-up questions and exchanges have been undertaken between the Parties over a period of many months. The Parties agree that all confirmatory discovery has been completed as of the date of this Agreement. All documents and information exchanged as confirmatory discovery constitute privileged and confidential settlement communications under Federal Rule of Evidence 408, and are subject to the Court's protective order (Dkt. No. 77) and the confidentiality provisions of the Parties' signed Memorandum of Agreement.

## V. COURT APPROVAL OF SETTLEMENT

### A. Preliminary Approval

As soon as practicable after the execution of this Settlement Agreement, Plaintiffs and Class Counsel shall jointly apply for entry of the Preliminary Approval Order in the form of Exhibit A hereto. The Preliminary Approval Order shall include provisions: (a) preliminarily certifying the Settlement Class for settlement purposes only; (b) preliminarily approving this Settlement and finding this Settlement sufficiently fair, reasonable and adequate to allow Notice to be disseminated to the Settlement Class; (c) approving the form, content, and manner of the Notice; (d) setting a schedule for proceedings with respect to final approval of this Settlement; (e) providing that, pending entry of a Final Approval Order and Judgment, the Parties shall cooperate in seeking orders that no Settlement Class Member (either directly, in a representative capacity, or in any other capacity) shall commence or continue any action against Sprint or other Sprint-Related Released Parties asserting any of the Released Claims; and (f) staying the Action, other than such proceedings as are related to this Settlement.

### B. Objections to Settlement

Any Settlement Class Member wishing to object to or to oppose the approval of this Settlement and/or the Fee and Cost Application shall file a written objection (with a statement of reasons) with the Court and serve it on Class Counsel (Attn: Matthew Klase and Adam Webb, Webb, Klase & Lemond, LLC, 1900 The Exchange, S.E., Suite 480, Atlanta, Georgia 30339) and Sprint's Counsel (Attn: Wayne Phears and Patrick Dover, McGuireWoods LLP, 1230 Peachtree Street, N.E., Suite 2100, Atlanta, GA 30309-3534) no later than 135 days from the date of the Preliminary Approval Order.

For an objection to be considered by the Court, the objection must also set forth:

    a. the name of the Action;

22

b.  the objector's full name, address and telephone number;

c.  an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e.  the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.  the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

h.  any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

23

     i.  the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

     j.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

     k.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

     l.  the objector's signature (an attorney's signature is not sufficient).

Any Settlement Class Member that fails to provide such information shall be foreclosed from making such objection or opposition. Plaintiffs will file with the Court their response to any objections at least seven (7) days before the date of the Final Approval Hearing. Any Settlement Class Member who fails to file a timely and proper written objection shall have no right to appear at the Final Approval Hearing and/or file an appeal relating to the approval of this Settlement.

C.    Final Approval Hearing

The Parties shall request that the Court, on the date set forth in the Preliminary Approval Order or on such other date that the Court may set, conduct a Final Approval Hearing to: (a) determine whether to grant final approval to this Settlement Agreement and to certify the Settlement Class; (b) consider any timely objections to this Settlement and the Parties' responses to such objections; (c) rule on the Fee and Cost Application; and (d) rule on any applications for incentive awards. No later than 120 days from the date of the Preliminary Approval Order, Class Counsel will submit their brief in support of final settlement approval and final certification of the Settlement Class. At the Final Approval Hearing, the Parties shall ask the Court to give final approval to this Settlement Agreement. If the Court grants final approval to this Settlement

24

Agreement, then the Parties shall ask the Court to enter a Final Approval Order and Judgment, substantially in the form of Exhibit B attached hereto, which approves this Settlement, certifies the Settlement Class, authorizes entry of a final judgment, and dismisses the Action with prejudice.

D.  Disapproval, Cancellation, Termination, or Nullification of Settlement

1.  Each Party shall have the right to terminate this Settlement Agreement if either (i) the Court denies preliminary approval or final approval of this Settlement Agreement in its entirety or modifies the Settlement Agreement, as entered between the Parties, including but not limited to changes that cause an increase to Sprint's monetary liability, or changes to its business practices or policies, including, but not limited to changes or any monetary increase to (a) Cash Benefits, (b) Non Cash Benefits, (c) Prospective Relief, (d) award for attorneys' fees and costs in excess of $500,000, or (e) Notice obligations, or (ii) the Final Approval Order and Judgment (substantially in the form of Exhibit B attached hereto) does not become Final by reason of reconsideration by the Court or a higher court reversing final approval by the Court, and the Court thereafter declines to enter a further order or orders approving settlement on the terms set forth herein. If a Party elects to terminate this Agreement under this paragraph (a), that Party must provide written notice to the other Party's counsel within 30 days of the occurrence of the condition permitting termination. Such written notice shall be provided by hand delivery or first class mail to the Party's counsel of record in this case.

2.  Sprint also shall have the right to terminate this Settlement Agreement if, prior to the date of the Final Approval Order and Judgment, the total number of Persons that have submitted timely and valid Requests for Exclusion from the Settlement Class constitutes a significant percentage of the Settlement Class as agreed on by the Parties in writing. If Sprint

25

elects to terminate this Agreement under this paragraph (b), Sprint must provide written notice to Class Counsel on or before the date of the Final Approval Order and Judgment. Such written notice shall be provided by hand delivery or mail to Class Counsel.

3.    In the event that the Court fails to enter the Preliminary Approval Order or fails to enter the Final Approval Order and Judgment, or the Final Approval Order and Judgment is set aside for any reason, Class and Defendant's Counsel shall endeavor to cure any defect identified by the Court; provided however, that Sprint shall not be obligated to accept such cure if it increases the cost or burden of the Settlement Agreement to Sprint, in Sprint's sole judgment.

4.    In the event that the Settlement Agreement is terminated for any reason, or the Final Approval Order and Judgment does not occur or is set aside for any reason, then no term or condition of the Settlement Agreement or any draft thereof, or any discussion, negotiation, documentation, or other part or aspect of the settlement discussions shall have any effect, nor shall any such matter be admissible or offered in evidence for any purpose in this case or in any other proceeding.

5.    If the settlement fails to be consummated for any reason, Class Counsel agree that: (a) any preliminary approval of the settlement shall be of no force or effect, shall be vacated, and Plaintiffs shall join in a motion seeking to vacate such preliminary approval; (b) all drafts, discussions, negotiations, documentation or other information prepared in relation to the Settlement Agreement and the settlement discussions shall be treated as strictly confidential and may not be disclosed to any person other than the Parties' counsel, and only for purposes of this case; and (c) Sprint's rights with respect to arbitration and class certification are expressly reserved and preserved.

26

## V.  ADMINISTRATIVE EXPENSES, ATTORNEYS' FEES, AND COSTS

### A.  Costs of Notice

All costs of providing the Notice as provided herein, including the costs of identifying members of the Settlement Class and the costs of printing and web hosting the Notice, shall be paid by Sprint.

### B.  Costs of Administering Settlement

All costs of administering this Settlement, including all fees of the Claims Administrator and the costs of generating and mailing any Claim Forms, checks, and/or related correspondence issued as part of this Settlement, shall be paid by Sprint.

### C.  Attorneys' Fees and Costs

No later than 120 days from the date of the Preliminary Approval Order, the Class Representatives and/or Class Counsel shall make a Fees and Cost Application seeking an award of attorneys' fees and expenses in an amount not to exceed $500,000. Sprint will not oppose or undermine the Fees and Cost Application or solicit others to do so. Attorneys' fees and costs consistent with this paragraph that are approved by the Court, up to $500,000, shall be paid by Sprint separate and apart from the Cash and Non-Cash Benefits being provided to the Fee Notice Sub-Class. Not later than 15 days after the Effective Date, and only in the event that the Effective Date occurs, Sprint shall make payments under this provision to Webb, Klase & Lemond, LLC. Webb, Klase & Lemond, LLC and Class Counsel shall be solely responsible for further distributing any payments made under this provision. The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.

D.    Incentive Award

No later than 120 days from the date of the Preliminary Approval Order, Class Representatives or Class Counsel on their behalf, may make an application for incentive awards to be paid to Class Representatives Eric Barkwell and Gary Massey in an amount not to exceed $5,000.00 per individual. Sprint will not oppose or undermine the application or solicit others to do so. Not later than 15 days after the Effective Date, and only in the event that the Effective Date occurs, Sprint shall pay incentive awards as approved by the Court. These payments shall be compensation and consideration for Mr. Barkwell and Mr. Massey's efforts as the class representatives in the Action.

E.    Effect on Settlement

The Parties agree that the rulings of the Court regarding the amount of attorneys' fees or costs and any incentive award, and any claim or dispute relating thereto, will be considered by the Court separately from the remaining matters to be considered at the Final Approval Hearing as provided for in this Settlement Agreement and any determinations in that regard will be embodied in a separate order. Any order or proceedings relating to the amount of attorneys' fees or incentive award, including any appeals from or modifications or reversals of any order related thereto, shall not operate to modify, reverse, terminate, or cancel the Settlement Agreement, affect the releases provided for in the Settlement Agreement, or affect whether the Final Approval Order and Judgment becomes Final as defined herein, unless such order would, if entered, cause Sprint's total liability for attorneys' fees to exceed $500,000, in which event, Sprint may terminate this Settlement Agreement in accordance with the provisions set forth above.

28

## VI.   RELEASES UPON EFFECTIVE DATE

### A.   Binding and Exclusive Nature of Settlement Agreement

On the Effective Date, the Parties and each and every Settlement Class Member who has not filed an effective Request for Exclusion in a timely manner shall be bound by this Settlement Agreement and shall have recourse exclusively to the benefits, rights, and remedies provided hereunder. No other action, demand, suit or other claim may be pursued against the Released Parties with respect to the Released Claims.

### B.   Releases

On the Effective Date, the Settlement Class and each Settlement Class Member shall be deemed to have, and by operation of this Agreement shall have, fully, finally and forever released, relinquished and discharged the Released Parties from any and all of the Released Claims. This Settlement Agreement may be pleaded by Sprint and the Released Parties as a bar to all, or any relevant portion, of any action pending or filed by a Settlement Class Member concerning, relating to or arising out of the Released Claims, and Class Counsel will cooperate with Sprint to enforce this Agreement and Final Approval Order and Judgment, if entered pursuant to the terms herein, as to Released Claims, Released Parties, and any collateral attacks or subsequent claims or actions.

### C.   Waiver of Unknown Claims

On the Effective Date, the Released Parties and the Settlement Class Members shall be deemed to have, and by operation of this Agreement shall have, with respect to the subject matter of the Released Claims, including any claim related to Sprint Surcharges, expressly waived the benefits of any statutory provisions or common law rules that provide, in sum or substance, that a general release does not extend to claims which the party does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected

29

its settlement with any other party. In particular, but without limitation, the Released Parties and the Settlement Class Members waive the provisions of California Civil Code § 1542 (or any like or similar statute or common law doctrine), and do so understanding the significance of that waiver. Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE
> RELEASE, WHICH IF KNOWN BY HIM OR HER
> MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR.

Neither this paragraph nor any other provision of this Settlement Agreement shall be construed to effectuate a general release of claims. The releases provided for in this Settlement Agreement are limited to the Released Claims, as defined in Article I above.

    D.    Assumption of Risk

In entering into this Settlement Agreement, each of the Parties assumes the risk of any mistake of fact or law. If either Party should later discover that any fact which the Party relied upon in entering this Agreement is not true, or that the Party's understanding of the facts or law was incorrect, the Party shall not be entitled to modify, reform, or set aside this Settlement Agreement, in whole or in part, by reason thereof.

## VI.    EFFECT OF FCC RULINGS ON FEDERAL PREEMPTION

In the event that the Federal Communications Commission (FCC) issues a ruling or order preempting state regulation of any of the Released Claims, in whole or in part, Sprint will not seek to vacate this Settlement Agreement on the basis of such a ruling or order. This Article in no way limits Sprint's rights to otherwise terminate this Settlement Agreement consistent with Article V(D).

## VII.  NON-WAIVER OF ARBITRATION RIGHTS

Nothing in this Settlement Agreement shall be construed as a waiver of, and Sprint expressly does not waive, Sprint's right to enforce its agreement to arbitrate all claims with customers for matters outside this Settlement Agreement, including, but not limited to, customers who opt out or exclude themselves from this Settlement Agreement.  To the extent that this Settlement is not approved by the Court, Sprint hereby preserves its right to move forward with its appeal in *Sprint Communications Company, L.P., et al. v. Barkwell, et al.*, Appeal No. 12-10666-C (11th Cir.), seeking to compel arbitration of claims on an individual, non-class wide basis as set forth in Sprint's agreements with its customers and Plaintiffs preserve their rights to defend such appeal.

## VII.  LIMITATIONS ON USE OF SETTLEMENT AGREEMENT

### A.  No Admission

Neither the acceptance by Sprint of the terms of this Settlement Agreement nor any of the related negotiations or proceedings constitutes an admission with respect to the merits of the claims alleged in the Action, the validity of any claims that could have been asserted by any of the Settlement Class Members in the Action, or the liability of Sprint in the Action.  Sprint specifically denies any liability or wrongdoing of any kind associated with the claims alleged in the Action.  Neither the acceptance by Class Representatives of the terms of this Settlement Agreement nor any of the related negotiations or proceedings constitutes an admission with respect to the merits of the claims alleged in the Action.

### B.  Limitations on Use

This Agreement shall not be used, offered, or received into evidence in the Action for any purpose other than to enforce, to construe, or to finalize the terms of the Settlement Agreement and/or to obtain the preliminary and final approval by the Court of the terms of the Settlement

31

Agreement. Neither this Settlement Agreement nor any of its terms shall be offered or received into evidence in any other action or proceeding, except that where properly offered or received into evidence as set forth above in Part VII.B, this Settlement Agreement shall be binding and shall have preclusive effect on any claims barred by the release provisions and waiver of unknown claim provisions set forth above.

## VIII.   MISCELLANEOUS PROVISIONS

### A.   Confidentiality

The terms and fact of this Settlement shall be confidential and shall not be disclosed to anyone other than Class Counsel, the named Plaintiffs, and staff or experts assisting Class Counsel until such time as the Settlement is made public through agreed filings in court that are not themselves sealed or confidential. The Parties recognize, however, that the Settlement shall be filed in accordance with the requests for preliminary and final approval. Counsel shall insure that each person, specifically including the named Plaintiffs, is made aware of this confidentiality agreement and agrees to be bound by it. If for any reason the Settlement is not finalized and has not been lawfully disclosed previously, this confidentiality provision shall survive and continue without expiration. The Parties further agree that, prior to the provision of information to the Claims Administrator, the Claims Administrator will execute a confidentiality agreement satisfactory to Sprint.

### B.   No Assignment

Each Party represents, covenants, and warrants that she or it has not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber any portion of any liability, claim, demand, cause of action, or rights that she or it herein releases.

32

C.     Binding on Assigns

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, successors, and assigns.

D.     Captions

Titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

E.     Class Member Signatures

It is agreed that, because the Settlement Class Members are so numerous, it is impractical to have each Settlement Class Member execute this Agreement. The Notice will advise all Settlement Class Members of the binding nature of the Releases and of the remainder of this Agreement, and in the absence of a valid and timely Request for Exclusion, such Notice shall have the same force and effect as if each Settlement Class Member executed this Agreement.

F.     Construction

The Parties agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party, or his or its counsel, participated in the drafting of this Agreement.

G.     Counterparts

This Agreement and any amendments hereto may be executed in one or more counterparts, and either Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and both of which counterparts taken together

33

shall constitute but one and the same instrument. A facsimile or PDF signature shall be deemed an original for all purposes.

H.      Governing Law

Construction and interpretation of the Agreement shall be determined in accordance with the laws of the State of Georgia, without regard to the choice-of-law principles thereof.

I.      Integration Clause

This Agreement, including the Exhibits referred to herein, which form an integral part hereof, contains the entire understanding of the Parties with respect to the subject matter contained herein. There are no promises, representations, warranties, covenants, or undertakings governing the subject matter of this Agreement other than those expressly set forth in this Agreement. This Agreement supersedes all prior agreements and understandings among the Parties with respect to the settlement of the Action. This Agreement may not be changed, altered or modified, except in a writing signed by the Parties and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

J.      Exclusive Remedy; Dismissal of Claims; Jurisdiction of Court

1.      This Agreement shall be the exclusive source of remedy for all Released Claims, any claim arising out of this Agreement, and any complaint by any Settlement Class Member against the Released Parties related to the Released Claims. No Released Party shall be subject to liability or expense of any kind to any Settlement Class Member related to the Released Claims except as provided in this Agreement. Upon the Effective Date, every Settlement Class Member shall be permanently barred and enjoined from asserting any of the Released Claims against any Released Party in any proceeding.

34

2.      The Parties agree that, after the Court's approval of this Settlement, a judgment substantially in the form of the Final Approval Order and Judgment attached as Exhibit B shall be entered dismissing with prejudice the Action and releasing the Released Claims.

3.      The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

K.      Presiding Judicial Officer

The Parties agree to jointly request that the Honorable Clay D. Land preside, by designation if necessary, over the settlement approval process, including without limitation any Fees and Costs Application and application for incentive awards. In the event that Judge Land is unable to preside, the Parties agree to jointly request that the settlement approval process be presided over by a different judge from the United States District Court, Middle District of Georgia.

L.      No Collateral Attack

This Agreement shall not be subject to collateral attack by any Settlement Class Member at any time on or after the Effective Date. Such prohibited collateral attacks shall include, but shall not be limited to, claims that a Settlement Class Member's claim was improperly denied, that the payment to a Settlement Class Member was improperly calculated, and/or that a Settlement Class Member failed to receive timely notice of the Settlement Agreement.

M.      Parties' Authority

The signatories hereto represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions hereof.

35

N.    Receipt of Advice of Counsel

The Parties acknowledge, agree, and specifically warrant to each other that they have read this Settlement Agreement, have received legal advice with respect to the advisability of entering into this Settlement, and fully understand its legal effect.

O.    Waiver of Compliance

Any failure of any Party to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties entitled to the benefit of such obligation, covenant, agreement, or condition.  A waiver or failure to insist upon compliance with any representation, warranty, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

P.    Terms and Conditions Not Superseded

Nothing in this Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course to the relationship between Sprint and its customers, or to the products and services provided by Sprint and purchased by its customers.

Q.    Settlement Conditioned on Certain Matters

This entire Settlement Agreement is contingent upon the Parties reaching agreement on the contents of the Exhibits.

R.    Modification and Amendment

This Agreement may be amended or modified only by a written instrument signed by counsel for Sprint and Class Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS SETTLEMENT

AGREEMENT ON THE DATES SET FORTH BELOW

Dated: _10/9/13_

Webb, Klase & Lemond, LLC

E. Adam Webb, Attorney for Plaintiffs

Matthew Klase, Attorney for Plaintiffs.

Dated: _____

Eric Barkwell

Dated: _9/18/13_

Gary Massey

Dated: _____

McGuireWoods LLP

H. Wayne Phears, Attorney for Defendants

Dated: _____

Representative of Sprint

37

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS SETTLEMENT
AGREEMENT ON THE DATES SET FORTH BELOW

Dated: _____                    **Webb, Klase & Lemond, LLC**

_____
E. Adam Webb, Attorney for Plaintiffs

_____
Matthew Klase, Attorney for Plaintiffs

Dated: 9/13/13

_____
Eric Barkwell

Dated: _____

_____
Gary Massey

Dated: _____                    **McGuireWoods LLP**

_____
H. Wayne Phears, Attorney for Defendants

Dated: _____

_____
Representative of Sprint

37

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS SETTLEMENT AGREEMENT ON THE DATES SET FORTH BELOW

Dated: _____          **Webb, Klase & Lemond, LLC**

                          _____
                          E. Adam Webb, Attorney for Plaintiffs

                          _____
                          Matthew Klase, Attorney for Plaintiffs

Dated: _____          _____
                          Eric Barkwell

Dated: _____          _____
                          Gary Massey

Dated: _____          **McGuireWoods LLP**

                          _____
                          H. Wayne Phears, Attorney for Defendants

Dated: 10/9/13            _____
                          Representative of Sprint

37