# Exhibit B

## (Final Approval Order and Final Judgment)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| ERIC BARKWELL and GARY MASSEY, | : | |
| on behalf of themselves and all other | : | |
| similarly situated Persons, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO. 4:09-CV-56 (CDL) |
| | : | |
| SPRINT COMMUNICATIONS | : | |
| COMPANY, L.P, SPRINT NEXTEL | : | |
| CORPORATION, SPRINT SOLUTIONS, | : | |
| INC., and SPRINT SPECTRUM, L.P., | : | |
| | : | |
| Defendants. | : | |

**[PROPOSED] ORDER OF FINAL APPROVAL OF SETTLEMENT, AUTHORIZING**
**INCENTIVE AWARDS, AND GRANTING FEES AND COSTS APPLICATION**

On MONTH 00, 2013, Plaintiffs and Class Counsel filed their Motion for Final Approval

of Settlement and Application for Incentive Awards and Attorneys' Fees and Costs ("Motion"),

seeking Final Approval of the Class Action Settlement Agreement ("Agreement" of

"Settlement") with Sprint.  See Dkt. No. [[]].  In support, declarations were submitted from

Plaintiffs, from Class Counsel, and from experts on attorneys' fees.  See Dkt. Nos. [[]].

This matter came before the Court on MONTH 00, 2014, for a Final Approval Hearing

pursuant to the Court's Preliminary Approval Order of MONTH 00, 2013.  See Dkt. No. [[]].

The Court reviewed all of the filings related to the Settlement and heard argument on the Motion.

After careful consideration of the presentations of the Parties, the Court finds that this

Settlement provides a fair, reasonable and adequate recovery for Settlement Class Members,

including Fee Notice Sub-Class Members.  The Settlement fully complies with Fed. R. Civ. P.

23(e) and, thus, the Court grants Final Approval to the Settlement, certifies the Settlement Class,

and awards the fees and costs requested by Class Counsel as well as the requested Incentive Awards for Mr. Barkwell and Mr. Massey.

## I.      BACKGROUND.

The Court is familiar with the history of this consumer class action brought against Sprint, having presided over it for over four years.  During that time, the Court has had an opportunity to observe Class Counsel and Sprint's counsel in action.  These attorneys vigorously litigated the Action up to the time of the Settlement.  The Settlement is quite obviously the result of arm's-length negotiations, and the Court so finds.

The present evidentiary record is more than adequate for the Court to consider the fairness, reasonableness, and adequacy of the Settlement.  A fundamental question is whether the district judge has sufficient facts before him to evaluate and intelligently and knowledgeably approve or disapprove the settlement.  In re General Tire & Rubber Co. Sec. Litig., 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) (citing Detroit v. Grinnell, 495 F.2d 448, 463-68 (2d Cir. 1974)). In this case, the Court clearly has such facts before it in considering the Motion, including the evidence and opinions of Class Counsel and their experts.

### A.      Factual and Procedural Background of the Action.

In April 2009, Plaintiff Eric Barkwell filed this case in Muscogee County Superior Court seeking monetary damages, restitution, and declaratory relief, and challenging Sprint's disclosure and assessment of Sprint Surcharges.  See generally Complaint (Dkt. No. 1-1).  Sprint subsequently removed the case to this Court.  See Dkt. No. 1.  Written discovery was subsequently exchanged.

Sprint thereafter filed several motions, including a motion for judgment on the pleadings (Dkt. No. 7), a motion to deny class certification (Dkt. No. 11), and a motion to stay further

discovery (Dkt. No. 12).  Plaintiff Barkwell and Class Counsel vigorously opposed all of these motions and also moved to compel Sprint to provide amended discovery responses, appear for deposition, and produce additional documents.  See e.g., Dkt. Nos. 9, 14, 19-20.

On January 25, 2010, Plaintiff Barkwell and Class Counsel moved the Court for leave to file an amended complaint (i) adding Plaintiff Gary Massey and various Defendant Sprint entities to the case and (ii) clarifying the factual and class allegations based on information that had been uncovered during discovery and continued investigation (Dkt. Nos. 29 and 36), a request which Sprint opposed (Dkt. No. 32).

On March 25, 2010, the Court granted Sprint's motion to stay further discovery.

On May 5, 2011, following a lengthy hearing, the Court granted Plaintiff's request to file an amended complaint and denied all other pending motions as moot.  See Dkt. No. 40.

On May 11, 2010, Plaintiffs Eric Barkwell and Gary Massey filed their First Amended Complaint.  See Dkt. No. 41.  On May 25, 2010, Sprint filed its Answer, denying Plaintiffs' allegations of wrongdoing and asserting 29 affirmative defenses.  See Dkt. No. 42.

On July 21, 2010, Sprint filed a motion for summary judgment arguing primarily that the language of its wireless services agreements gave it discretion to change the amounts and/or nature of Sprint Surcharges (Dkt. Nos. 44 and 51), which Plaintiffs and Class Counsel opposed (Dkt. No. 47).

On December 6, 2010, the Court issued an Order denying Sprint's motion for summary judgment.  See Dkt. No. 56.

On February 16, 2011, the parties attended a full day of mediation with mediator Arthur Glazer of Henning Mediation but no final agreement was reached.

In May 2011, the Supreme Court's decision in <u>AT&T Mobility LLC v. Concepcion</u>, __ U.S. __, 131 S. Ct. 1740 (2011), was released and Sprint moved to enforce the arbitration provision in its standard customer agreements (Dkt. Nos. 63 and 65), a request which Plaintiffs opposed (Dkt. No. 64).

On January 12, 2012, this Court denied Sprint's motion to compel arbitration. <u>See</u> Dkt. No. 67. Sprint thereafter appealed this decision and the Court stayed the case pending the outcome of the arbitration appeal. <u>See</u> Dkt. Nos. 68, 72.

The appeal was subsequently referred to mediation at the Eleventh Circuit Kinnard Mediation Center. On December 10, 2012, as a result of two earlier sessions of mediation with mediator William Roland of the Kinnard Mediation Center, the parties executed a Memorandum of Agreement ("MOA") evidencing an agreement in principle to settle this litigation on a class-wide basis. The Agreement was conditioned on Sprint providing confirmatory discovery showing that the total amount of Sprint Surcharges that were assessed during the relevant years were less than the costs it expended in conjunction with government programs.

The appeal was subsequently stayed by the Eleventh Circuit pending finalization of the Settlement. During the stay, an outside auditor conducted a review of Sprint's records for confirmatory discovery purposes.

On August 22, 2013, the parties moved to lift the stay so (i) a stipulated protective order governing confirmatory discovery could be entered and (ii) the parties could seek preliminary approval of the Settlement. <u>See</u> Dkt. Nos. 75, 76. On August 23, 2013, this Court lifted the stay and entered the stipulated protective order. <u>See</u> Dkt. No. 77.

The audit report and additional confirmatory discovery was subsequently exchanged and the Agreement was executed.

B.      **Summary of the Settlement Terms.**

The Settlement's terms are detailed in the Agreement, which is incorporated herein by reference.   All capitalized defined terms used herein have the same meanings ascribed in the Agreement.   The Court now provides a summary of material terms.

1.      The Settlement Class and Sub-Class.

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.   The Settlement Class is defined as:

> All Persons in the United States or the U.S. territories, who are or were parties to an Individual Liable Account with Sprint for wireless services between January 1, 2007, and the date of this Agreement and who were charged or were subject to Sprint Surcharges on any or all wireless lines of service.   The Settlement Class does not include governmental or corporate accounts.

Agreement § I(LL).

Additionally, there is a sub-class, the "Fee Notice Sub-Class," which is defined as all Persons holding Individual Liable Accounts who were subject to Sprint Surcharges and who did not receive notice of Sprint Surcharge increases.   It is not possible to define that Sub-Class precisely by date, but Sprint has identified the approximately 2.3 million members of this Sub Class by account number and has developed lists by account number of the persons that make up this class.   For guidance and notice purposes, the Sub-Class members generally fall into one or more of the following categories:

•       Individual Liable Accounts that were opened on or after November 11, 2007, and on or before December 31, 2007;

•       Individual Liable Accounts that were on suspension on November 11, 2007, but that were subsequently reinstated;

•       Individual Liable Accounts that were opened on or after October 5, 2008, and on or before December 31, 2008;

6

- Individual Liable Accounts that were on suspension on October 5, 2008, but that were subsequently reinstated;

- Individual Liable Accounts that were opened as new accounts in Sprint retail stores in 2009;

- Individual Liable Accounts that were opened on or after November 8, 2009, and on or before December 31, 2009; and

- Individual Liable Accounts that were on suspension on November 8, 2009, but that were subsequently reinstated.  Agreement § I(P).

    2.    Prospective Relief for the Settlement Class.

In this case, Plaintiffs alleged that the disclosures and wireless services agreements that Sprint provided to its customers were unclear as to (i) whether Sprint Surcharges could only be imposed to recoup Sprint's costs of complying with governmental programs, (ii) whether the nature and make-up of Sprint Surcharges were subject to change, and (iii) the type of notice Sprint had to provide before increasing the amounts of Sprint Surcharges.  E.g., Dkt. No. 41. These questions are answered in the important Prospective Relief that is being provided to all Class Members.  Agreement § II(A).  In collaboration with Class Counsel, Sprint has reviewed and revised its point of sale disclosures, invoice disclosures, wireless services agreement terms and conditions, website disclosures, and invoice notices to reflect the following:

- that Sprint Surcharges are not taxes or amounts Sprint is required to collect from its customers by law;

- that Sprint Surcharges are separated and clearly differentiated from Government Taxes and Fees that Sprint is required to collect from customers;

- that Sprint shall not refer to Sprint Surcharges set by Sprint as being taxes or amounts that Sprint is required by law to collect and remit to any government entity; and

- that when Sprint increases the amounts of Sprint Surcharges it will provide notice of any such change which will inform customers of the change, the effective date of the change, how to obtain additional information, and a reminder to consult their wireless services agreement.

Id.  The revised notices and disclosures are set forth in Exhibit H to the Agreement.  See Dkt. No. [[]].

3.    Additional Settlement Benefits for the Fee Notice Sub-Class.

In addition to the foregoing relief, the approximately 2,300,000 members of the Fee Notice Sub-Class may file a Claim with the Claims Administrator to receive either a Cash Benefit or one of the Non-Cash Benefits.  Agreement II(B).

The Cash Benefit is (1) a $1 account credit for a current customer or a former customer with an unpaid account due Sprint, or (2) a $1 check, electronic transfer or e-account credit to a former customer whose account is not past due.  Id. at § II(B)(2).

The Non-Cash Benefits are:  (1) a 30-minute long distance, domestic calling card; (2) a 30% discount on any accessory purchased at a Sprint-owned retail store, limited to one accessory; or (3) a waiver of the $36 activation fee when activating a new line of service under Sprint's then-existing Terms & Conditions of Services. To be eligible for the waiver of the $36 activation fee, the Claimant must be eligible under Sprint's activation and credit policies.  Id. at ¶ II(B)(3).

The Claims process was described in, and the Claim Form was attached to, the Motion for Preliminary Approval (Dkt. No. [[]]), and was previously approved by this Court (Dkt. No. [[]]).  The Claims Administrator will determine the validity and amount of all Claims. Agreement § II(C).  Sprint will pay any and all claims administration and notice costs, separate and apart from any monetary relief that is being paid to the Fee Notice Sub-Class.  Id. at § IV(A)-(D).

8

4.      Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will be deemed to have released Sprint from claims related to the subject matter of the Action.   The detailed release language can be found in Section VII of the Agreement.

## II.   DISCUSSION.

Federal courts have long recognized a strong policy and presumption in favor of class action settlements.  The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement."  In re Chicken Antitrust Litig. Am. Poultry, 669 F.2d 228, 238 (5th Cir. Unit B 1982).  In evaluating a proposed class action settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'"  Rankin v. Rots, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) (quoting Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."  In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1105 (5th Cir. 1977).

As explained below, the Settlement here is more than sufficient under Rule 23(e).  It includes important Prospective Relief that will ensure that customers will be fully informed not only about the true nature and amount of Sprint Surcharges, but of any changes thereto, as well as what the customers' rights are in response to such changes.  It also provides the opportunity for the approximately 2.3 million members of the Fee Notice Sub-Class (i.e., those Settlement Class Members who allegedly did not receive notice of increases to Sprint Surcharges) an

opportunity to claim additional Cash or Non-Cash Benefits, at their election.  Sprint is also paying any and all Claims administration and Notice costs, attorneys' fees, and Incentive Awards separate and apart from any monetary relief that is being paid to the Fee Notice Sub-Class.

A.      **The Court's Exercise of Jurisdiction Is Proper.**

In addition to having personal jurisdiction over the Plaintiffs, who are parties to the Action, the Court also has personal jurisdiction over all Settlement Class Members because they received the requisite notice and due process.  See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950)).  The Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6).

1.      The Best Notice Practicable Was Provided to the Settlement Class.

As discussed above, Notice of the Settlement on the forms approved by the Court was provided to members of the Settlement Class via Invoice Notice for current customers and Direct Mail Notice for former customers.  See Dkt. Nos. [[]].  Notice of the Settlement was also published in U.S.A. Today and on Sprint's website.  See Dkt. Nos. [[]].  Moreover, a special Settlement Website and toll-free telephone number were established to enable Settlement Class Members to obtain detailed information about the Action and the Settlement.  See Dkt. Nos. [[]].

2.      The Notice Was Reasonably Calculated to Inform Settlement Class Members of Their Rights.

The Court-approved Notice satisfied due process requirements because it described "the substantive claims . . . [and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment."  In re Nissan Motor Corp. Antitrust Litig., 552 F.2d at 1104-05.  The Notice, among other things, defined the Settlement Class and Fee Notice Sub-Class; described the release provided to Sprint under the Settlement as well as

the nature and amount of the Settlement proceeds; and informed Settlement Class Members of their right to opt-out and object, the procedures for doing so, and the time and place of the Final Approval Hearing.  Further, the Notice stated that Class Counsel intended to seek attorneys' fees of up to $500,000 and Incentive Awards of up to $5,000 for each named Plaintiff.  In addition to disclosing these material terms, the Notice informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could get more information, including the Settlement Website that posts a copy of the fully executed Agreement, as well as other important court documents such as the Motion.

The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).  This Settlement with Sprint was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so.

**B.      The Settlement Is Fair, Adequate, Reasonable, and Is Finally Approved.**

In determining whether to approve the Settlement, the Court considers whether it is "fair, adequate, reasonable, and not the product of collusion."  Leverso v. SouthTrust Bank of Al., N.A., 18 F.3d 1527, 1530 (11th Cir. 1994); see also Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."  In re Lorazepam & Clorazepate Antitrust Litig., 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting Manual for Complex Litig. (Third) § 30.42 (1995)).  The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether

class members will receive as much from a settlement as they might have recovered from victory at trial." In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. Leverso, 18 F.3d at 1530 n.6; see also Bennett, 737 F.2d at 986.

### 1. There Was No Fraud or Collusion.

The Court has readily concluded there was no fraud or collusion behind this Settlement. See, e.g., In re Sunbeam Sec. Litig., 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); Ingram v. Coca-Cola Co., 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); In re Motorsports Merchandise Antitrust Litig., 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion."); Warren v. City of Tampa, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), aff'd, 893 F.2d 347 (11th Cir. 1989).

### 2. The Settlement Will Avert Years of Complex and Expensive Litigation.

This case involves millions of Settlement Class Members. The claims and defenses are complex. Litigating them has been difficult and time consuming. Although this litigation has

been pending for over four years, recovery by any means other than settlement would require additional years of litigation in this Court and others, including appellate courts.  See United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."); In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297 at 317, 325-26 & n.32 (N.D. Ga. 1993) ("adjudication of the claims of two million claimants could last half a millennium").

The Settlement provides immediate and substantial benefits to the Settlement Class.  See In re Shell Oil Refinery, 155 F.R.D. 552, 560 (E.D. La. 1993) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (quoting Oppenlander v. Standard Oil Co., 64 F.R.D. 597, 624 (D. Colo. 1974)); see also In re U.S. Oil & Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive").  Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," Ressler v. Jacobson, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no reasonable doubt as to the adequacy of this Settlement.

Prosecuting the Action was risky from the outset.  See Dkt. Nos. [[]].  For example, Plaintiffs had to overcome (i) the arbitration clause in Sprint's wireless services agreements, (ii) the choice of law provision in the wireless services agreement, which could have impacted Plaintiffs' ability to certify a nationwide class, and (iii) the fact that the majority of the

Settlement Class likely voluntarily paid the Sprint Surcharges at issue without dispute.  Id.  The Settlement is very fair given the specific issues and risks present in this case.  E.g., In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011) ("The combined risks here were real and potentially catastrophic . . . . [B]ut for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery").

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair compromise.  See, e.g., Bennett v. Behring Corp., 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), aff'd, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### 3.  The Factual Record is Sufficiently Developed.

The Court considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating."  In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 813 (3d Cir. 1995).  At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."  Ressler, 822 F. Supp. at 1555.

Settlement Class Counsel negotiated the Settlement with the benefit of merits discovery as well as confirmatory discovery.  Review of the documents and data positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and defenses, as well as the amount of and range of damages that were potentially recoverable if the Action

successfully proceeded to judgment on a class-wide basis.  Id.  The stage of this Action also supports granting Final Approval.

        4.     Plaintiffs Would Have Faced Significant Obstacles to Obtaining Relief.

The Court also considers "the likelihood and extent of any recovery from the defendants absent . . . settlement."  In re Domestic Air Transp., 148 F.R.D. at 314; see also Ressler, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").  Here, it was not at all clear that Plaintiffs and the Settlement Class Members would have won their case on the merits had the suit gone forward.

Plaintiffs and Class Counsel faced several significant risks in this litigation in addition to arbitration.  See Dkt. No [[]].  Absent this Settlement, this litigation likely would have continued for at least two or three more years.  Given the myriad risks attending these claims, the Settlement is a fair compromise.  See, e.g., Bennett, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"), aff'd, 737 F.2d 982 (11th Cir. 1984).

        5.     The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable When Compared to the Range of Possible Recovery.

In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the "important maxim[]" that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." Behrens, 118 F.R.D. at 542.  This is because a settlement must be evaluated "in light of the attendant risks with litigation."  Thompson v. Metropolitan Life Ins. Co., 216 F.R.D. 55, 64 (S.D.N.Y. 2003); see Bennett, 737 F.2d at 986 ("[C]ompromise is the essence of settlement.");

<u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is . . . a yielding of absolutes and an abandoning of highest hopes.") (internal quotation omitted).  Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." <u>Warren</u>, 693 F. Supp. at 1059; <u>see, e.g.</u>, <u>Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.</u>, 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

Here, the Settlement provides extremely fair and reasonable benefits to the Settlement Class.  According to Class Counsel, the confirmatory discovery established that the Settlement Class had little (if any) actual damages and thus the Prospective Relief is an excellent result. Class Counsel has also declared that the additional Settlement Benefits being made available to the Fee Notice Sub-Class (i.e., $1 Cash or one of the three Non-Cash Benefits) exceeds or at the very least provides a substantial portion of such individuals' potentially recoverable trial damages.  Sprint's agreement to pay all fees, costs, and expenses of Notice and the Claims Administrator, estimated to be [[]] will further enhance the Settlement.  In light of the substantial risks presented by the litigation, this recovery represents fair value.

> 6.  <u>The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Strongly Favor Approval of the Settlement.</u>

The Court gives "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." <u>Warren</u>, 693 F. Supp. at 1060; <u>see also</u> <u>Mashburn</u>, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); <u>In re Domestic Air Transp.</u>, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is

entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

Class Counsel believe that this Settlement is deserving of Final Approval, and the Court agrees.  Furthermore, the Court also finds it telling that of the millions of Settlement Class Members only [[]] timely requests for exclusion from the Settlement were received, and only [[]] objections to the Settlement were timely submitted.   Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (finding that a low percentage of objections "points to the reasonableness of a proposed settlement and supports its approval").

### C.    The Settlement Class.

This Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied in this Action in a settlement posture (Dkt. No. [[]]).  The Court hereby reiterates its findings that, for settlement purposes: (a) the Settlement Class Members are so numerous that joinder of them is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the representative Plaintiffs are typical of the claims of the Settlement Class; (d) the representative Plaintiffs and Class Counsel fairly and adequately represent and protect the interests of the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

The  [[]]  individuals listed in Exhibit A to the Final Judgment being entered contemporaneously herewith timely elected to opt out of the Settlement.  The Court therefore finds and decrees that they are not part of the Settlement Class, are not bound by the Settlement or release contained therein, and will not receive any benefits from the Settlement.

**D.      The Application for Incentive Awards Is Approved.**

Incentive awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  Allapattah Services, Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).   "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action."  David v. Am. Suzuki Motor Corp., 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives.  See, e.g., Ingram, 200 F.R.D. at 694 (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); Spicer v. Chi. Bd. Options Exch., Inc., 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).  The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. See, e.g., Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

The named Plaintiffs provided invaluable assistance to counsel in this litigation by, among other things, engaging in significant interviews and conferences with counsel and by locating and producing responsive documents and information.  The Incentive Awards will be paid by Sprint separate and apart from any Benefits that are available to the Fee Notice Sub-Class and the amounts of the Incentive Awards are fair and reasonable in view of the efforts of the named Plaintiffs that greatly benefited the Settlement Class.

The Court finds that the named Plaintiffs/class representatives expended substantial time and effort in representing the Settlement Class, and deserve to be compensated for such time and effort on behalf of the Settlement Class. Therefore, the Court approves the requested Incentive Awards of $5,000 to Plaintiff Eric Barkwell and $5,000 to Plaintiff Gary Massey.

**E.      Class Counsel's Fee and Costs Application Is Granted.**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. Camden I Condo. Ass'n. v. Dunkle, 946 F.2d 768, 771 (11th Cir. 1991); Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." In re Gould Sec. Litig., 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. Van Gemert, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." Sunbeam, 176 F. Supp. 2d at 1333 (citing Van Gemert, 444 U.S. at 478); see also Camden I, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

In the Eleventh Circuit, class counsel are awarded a percentage of the fund generated through a class action settlement.  As the Eleventh Circuit held, "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  Camden I, 946 F.2d at 774.

This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel.  "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  In re Sunbeam, 176 F. Supp. 2d at 1333 (quoting Camden I, 946 F.2d at 774).  However, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund," although "an upper limit of 50 percent of the fund may be stated as a general rule."  Id. (quoting Camden I, 946 F.2d at 774-75); see also Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher based on the circumstances of the case).

Here, it is difficult to calculate the total amount of the common fund given that the majority of the relief is non-monetary in nature.  The Prospective Relief afforded by the Settlement will ensure that customers will be fully informed not only about the true nature and amount of Sprint Surcharges, but of any changes thereto, as well as what the customers' rights are in response to such changes and thus has real value.  Agreement § II(A).  Moreover, the estimated 2.3 million members of the Fee Notice Sub-Class are each entitled to a minimum of $1.00 in Cash Benefits or a maximum of up to $36.00 in Non-Cash Benefits.  Id. at § II(B).

Sprint has also agreed to pay up to $500,000 in attorneys' fees and expenses separate and apart from such monetary and non-monetary relief.  Id. at § VI(C); also Johnston v. Comerica Mortgage Corp., 83 F.3d 241, 246 (8th Cir. 1996) (holding that although the agreement states that fees are to be paid separately from the class' recovery, the entire settlement comes from the same source and thus the fees are best viewed as an aspect of the class' recovery).

As such, the Court finds that at a bare minimum, the common fund in this case is at least $2,800,000.  Class Counsel requests attorneys' fees in the amount of $500,000, which represents approximately 17.85% of this common fund.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are:  (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.  Camden I, 946 F.2d at 772 n.3. These twelve factors are guidelines; they are not exclusive.  "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  Sunbeam, 176 F. Supp. 2d at 1333 (quoting Camden I, 946 F.2d at 775).

Applying these factors here, the Court concludes that the requested award is fair and reasonable.  Class Counsel has exercised diligence in investigating the facts, researching the law,

prosecuting the Action, and facilitating settlement.  The Action presented novel questions of law, and counsel's knowledge and experience in class action litigation were necessary to shepherd the claims through the litigation process.  Class Counsel undertook a risky and undesirable case on a contingency basis and assumed a significant risk of non-payment or underpayment.  They overcame numerous procedural and substantive hurdles to obtain this Settlement which, for reasons already noted, are favorable to members of the Settlement Class.  Class Counsel's firm is small and their work on this matter undoubtedly precluded them from accepting other matters. Finally, the requested award is consistent with, and actually lower than, other such awards in this Court and other district courts in the Eleventh Circuit.  Perkins v. American Nat. Ins. Co., 2009 WL 111631, *1 (M.D. Ga. Jan. 14, 2009) (awarding fees of 25% of settlement); see also In re Checking Account Overdraft Litig., 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011) (awarding fees of 30% of settlement); Morefield v. NoteWorld, LLC, 2012 WL 1355573, *5 (S.D. Ga. April 18, 2012) (awarding fees of 33.3% of settlement).  Based on the foregoing, Class Counsel's requested fee of $500,000, which amounts to a maximum of 17.85% of the common fund, is granted.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court: (1) grants Final Approval to the Settlement; (2) appoints Plaintiffs Eric Barkwell and Gary Massey as Class Representatives for this Settlement; (3) appoints as Class Counsel E. Adam Webb and Matthew C. Klase of Webb, Klase & Lemond, LLC; (4) awards Incentive Awards to Plaintiffs Eric Barkwell and Gary Massey in the amount of $5,000 each; (5) awards Class Counsel attorneys' fees and costs in the amount of $500,000; (6) directs Class Counsel, Plaintiffs, and Sprint to implement and consummate the Settlement pursuant to its terms and conditions; (7) retains continuing jurisdiction over Plaintiffs, the

Settlement Class, and Sprint to implement, administer, consummate and enforce the Settlement and this Final Approval Order; and (8) will separately enter Final Judgment dismissing the Action with prejudice.

**DATED** this _____ day of _____, 2014.


_____
CLAY D. LAND
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| ERIC BARKWELL and GARY MASSEY,<br>on behalf of themselves and all other<br>similarly situated Persons, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO. 4:09-CV-56 (CDL) |
| | : | |
| SPRINT COMMUNICATIONS<br>COMPANY, L.P, SPRINT NEXTEL<br>CORPORATION, SPRINT SOLUTIONS,<br>INC., and SPRINT SPECTRUM, L.P., | : | |
| | : | |
| Defendants. | : | |

**[PROPOSED] FINAL JUDGMENT**

The Court, having entered the Order of Final Approval of Settlement, Authorizing Incentive Awards, and Granting Fees and Costs Application (Dkt. No. [[]]), hereby ORDERS AND ADJUDGES as follows:

1.      The Court incorporates herein by reference the Order of Final Approval of Settlement, Authorizing Incentive Awards, and Granting Fees and Costs Application ("Final Approval Order") (Dkt. No. [[]]).

2.      Except as specifically modified by the Final Approval Order, all capitalized terms used herein shall have the meaning set forth in the Class Action Settlement Agreement ("Agreement" or "Settlement") (Dkt. No. [[]]).

3.      This Court has personal jurisdiction over all of the Settlement Class Members because they received the best practicable notice of the Settlement, which notice was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the Action and the terms of the Settlement, and to afford them an opportunity to present their

24

objections or to request exclusion from the Settlement.  The Court also has jurisdiction over Sprint and over the Plaintiffs, all of whom have personally appeared in the Action pending before this Court.  The Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6).

4.      For purposes of effectuating the Settlement, and in accordance with Federal Rules of Civil Procedure 23(a) and 23(b)(3), the Court certifies the Settlement Class defined as:

> All Persons in the United States or the U.S. territories, who are or were parties to an Individual Liable Account with Sprint for wireless services between January 1, 2007, and the date of this Agreement and who were charged or were subject to Sprint Surcharges on any or all wireless lines of service.  The Settlement Class does not include governmental or corporate accounts.

Agreement § I(LL).

5.      The Action is hereby dismissed with prejudice, each side to bear its own fees and costs, except as otherwise provided in the Final Approval Order.

6.      Without limiting the scope of Section VII of the Settlement, as of the Effective Date, Plaintiffs and all Settlement Class Members (who do not timely opt-out of the Settlement) shall automatically be deemed to have fully and irrevocably released and forever discharged Sprint and the Released Parties from the Released Claims.

7.      The release in paragraph 6 above extends to all Released Claims, known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent, which now exist, or heretofore existed, or may hereafter exist, without regard to the subsequent discovery of additional or different facts or a change in law.

8.      Those persons identified on the List of Exclusions attached hereto as Exhibit A are hereby excluded from the Settlement, shall not receive any distribution from the Settlement, and are not bound by this Judgment.

9.      The Parties to the Settlement submit to, and this Court expressly reserves and retains, exclusive jurisdiction over the Action and the Parties, including Sprint, Plaintiffs, and all Settlement Class Members, to administer, implement, supervise, construe, enforce and perform the Settlement in accordance with its terms, and to enforce the Final Approval Order.

10.      Nothing in the Settlement, the Final Approval Order, or this Judgment shall be deemed to be an admission, or to constitute an adjudication by the Court, of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by Sprint or any party of any fault, liability or wrongdoing of any kind whatsoever or of any violation of statute, regulation or law.

11.      In the event that the Settlement does not become effective according to the terms of the Agreement, the Final Approval Order and this Final Judgment shall be rendered null and void as provided by the Agreement, shall be vacated and, all orders entered, delivered or released in connection herewith (except for the Protective Order entered by the Court – Dkt. No. 77) shall be null and void to the extent provided by and in accordance with the Agreement.

12.      Plaintiffs and all Settlement Class Members are hereby barred and enjoined from asserting any of the Released Claims including, without limitation, during any appeals from the Final Approval Order and this Judgment.

**DATED** this _____ day of _____, 2014.


_____
CLAY D. LAND
United States District Judge


51179199_2