IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| ERIC BARKWELL and GARY MASSEY, on behalf of themselves and all other similarly situated persons,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>SPRINT COMMUNICATIONS COMPANY, L.P, SPRINT NEXTEL CORPORATION, SPRINT SOLUTIONS, INC., and SPRINT SPECTRUM, L.P.,<br><br>　　　　　Defendants. | CIVIL ACTION FILE<br><br>NO. 4:09-CV-56 (CDL) |

**JOINT DECLARATION OF E. ADAM WEBB AND MATTHEW C. KLASE
IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
AND FOR CERTIFICATION OF SETTLEMENT CLASS**

E. Adam Webb and Matthew C. Klase declare as follows:

1.　　We are Class Counsel for Plaintiffs and the Settlement Class in connection with the settlement with Sprint.[1] We submit this declaration in support of Plaintiffs' and Class Counsel's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.　　After more than four years of litigation and protracted settlement negotiations, Plaintiffs, Class Counsel, and Sprint entered into a Class Action Settlement Agreement ("Settlement" or "Agreement") under which Sprint will (i) provide Prospective Relief in the

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement attached to Plaintiffs' and Class Counsel's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class.

form of revisions to Sprint's customer contracts and disclosures; (ii) Cash or Non-Cash Benefits to members of the Fee Notice Sub-Class; and (iii) Sprint's payment of all costs and fees associated with Class Notice and Claims administration.

3. The Action involved sharply opposed positions on several fundamental legal questions, including: (i) the legal viability of Plaintiffs' claims; (ii) the interpretation of Sprint's wireless services agreements and specifically whether they authorize Sprint's assessment and modification of Sprint Surcharges; (iii) whether Plaintiffs' claims are barred by prior class settlements; (iv) whether Plaintiffs' claims are barred by the voluntary payment doctrine; and (v) whether Sprint's arbitration agreements are enforceable and/or whether Sprint waived its right to pursue arbitration by actively participating in this litigation.

4. Plaintiffs maintain that the claims asserted in the Action are meritorious; that they would defeat Sprint's effort to compel individual arbitrations; that class certification would be granted; that Plaintiffs would establish liability and recover damages if the Action proceeded to trial; and that the final judgment would be affirmed on appeal. Plaintiffs' ultimate success in the litigation required them to prevail, in whole or in part, at *all* of these junctures. Conversely, Sprint's success at any one of these junctures could or would have spelled defeat for Plaintiffs and the Settlement Class. Thus, continued litigation posed significant risks and countless uncertainties, as well as the time, expense, and delays associated with trial and appellate proceedings, particularly in the context of complex class litigation. In light of the foregoing, the Settlement represents a significant achievement by providing valuable benefits to the Settlement Class.

**A.      Background of the Litigation.**

5. Beginning in April 2009, Plaintiffs sought monetary damages, restitution, and declaratory relief, challenging Sprint's disclosure and assessment of Sprint Surcharges.

Plaintiffs alleged that the disclosures and wireless services agreements that Sprint provided to its customers were inherently unclear as to (i) whether Sprint Surcharges could *only* be imposed to recoup Sprint's costs of complying with governmental programs, (ii) whether the nature and make-up of Sprint Surcharges were subject to change, and (iii) the type of notice Sprint had to provide before increasing the amounts of Sprint Surcharges.  Plaintiffs also alleged that Sprint charged its customers higher Sprint Surcharges than were authorized by their wireless services agreements and included amounts within Sprint Surcharges that were not permitted by the agreements.  According to Plaintiffs, Sprint's practices violated its contractual and good faith duties, were substantively and procedurally unconscionable, and resulted in unjust enrichment to Sprint.

6.      Sprint denied Plaintiffs' allegations of wrongdoing.  From the outset of the litigation, Defendant consistently defended its conduct by, *inter alia*, highlighting language in the relevant wireless services agreements that authorized its conduct.  Eventually, Sprint also asserted that its right to compel individual arbitration precluded Plaintiffs and all Settlement Class Members from pursuing the Action, individually or as a class action.

7.      Class Counsel devoted substantial time and expended significant resources researching and developing the legal claims at issue, before and after the litigation began.  Class Counsel interviewed Sprint customers and potential plaintiffs to gather information about Sprint's conduct and its impact upon consumers.  This information was essential to Class Counsel's ability to understand the nature of Sprint's conduct, the language of the wireless services agreements at issue, and potential claims for relief and remedies.

8.      During the case, Class Counsel and Sprint engaged in formal and informal discovery, including written discovery and the production of many pages of documents.

9. After the parties reached preliminary agreement on the settlement terms, Class Counsel and Sprint also engaged in confirmatory discovery, which included hiring a third party auditor to review Sprint's records as they relate to Sprint Surcharges and exchanging written discovery.

**B.   Settlement Negotiations and the Agreement.**

10. On February 16, 2011, the parties attended a full day of mediation with mediator Arthur Glazer of Henning Mediation. The framework of a potential settlement was reached but ultimately the parties did not agree on all terms.

11. While the arbitration issue was on appeal to the Eleventh Circuit, the case was referred to mediation at the Eleventh Circuit Kinnard Mediation Center. On April 17, 2012, the parties attended a mediation with mediator William Roland. The parties further developed the framework of a potential settlement but ultimately did not agree on all terms. They did, however, under Mr. Roland's supervision, agree to continue negotiating.

12. On October 2, 2012, the parties returned for a second day of mediation with Mr. Roland. At the conclusion of this mediation, the parties reached an agreement in principle.

13. Over the next few months, the parties negotiated the terms of a Memorandum of Agreement ("MOA"). The MOA was ultimately signed on December 10, 2012. It was conditioned on Sprint providing confirmatory discovery proving that the total amount of Sprint Surcharges that were assessed during the relevant years were less than the costs it expended in conjunction with government programs.

14. On December 17, 2012, the Eleventh Circuit stayed proceedings in the appeal for a period of 120 days to allow the parties to finalize the open issues identified in the MOA, complete confirmatory discovery, to execute a final settlement agreement, and to obtain

preliminary and final approval from this Court. The Eleventh Circuit thereafter granted several additional stays in order to facilitate the completion of these tasks.

15. During the stay periods, the parties worked together to resolve the open issues. For example, the parties revised certain notice and disclosure language at issue in this lawsuit. In addition, an outside auditor conducted a review of Sprint's records for confirmatory discovery purposes. The parties also performed additional work to finalize the settlement, including holding multiple conference calls and exchanging hundreds of drafts and emails in an effort to finalize the details of the Agreement and related documents.

16. On August 22, 2013, the parties moved to lift the stay so (i) a stipulated protective order governing confirmatory discovery could be entered and (ii) the parties could seek preliminary approval of the Settlement. On August 23, 2013, this Court lifted the stay and entered the stipulated protective order.

17. The audit report and additional confirmatory discovery was subsequently exchanged. The confirmatory discovery revealed that Sprint's costs of complying with governmental programs actually exceeded the amounts it collected from Sprint Surcharges during the years at issue.

18. On October 8, 2013, the parties executed the Agreement.

19. At all times throughout the mediation proceedings and subsequent settlement discussions, the negotiations were adversarial, non-collusive, and at arm's length.

20. The Settlement provides important Prospective Relief to all Settlement Class Members in the form of changes to Sprint's disclosures and wireless services agreements. This relief ensures that in the future customers will be fully informed not only about the true nature

and amount of Sprint Surcharges, but of any changes thereto, as well as what the customers' rights are in response to such changes.

21. Following confirmatory discovery, it became clear that proving damages on behalf of the Settlement Class as a whole would be extremely difficult, if not impossible. Indeed, the third party audit undermined Plaintiffs' primary damages theory (i.e., that Sprint Surcharges exceeded Sprint's costs of complying with governmental programs). Consequently, there is no monetary relief being provided to the Settlement Class as a whole in the Settlement.

22. Members of the Fee Notice Sub-Class, on the other hand, are eligible to make a claim for additional benefits. The Fee Notice Sub-Class consists of those Sprint individual customers that were not provided notice of increases to Sprint Surcharges from 2008 through 2010. Discovery has revealed that there are approximately 2,300,000 members of the Fee Notice Sub-Class. These individuals are eligible to file a Claim with the Claims Administrator to receive either a Cash Benefit or one of the Non-Cash Benefits. Given that these individuals were allegedly not given notice of very minor increases in Sprint Surcharges (i.e., $0.24/month), the available relief represents a substantial portion of the damages the Sub-Class could have hoped to win at trial.

23. As part of the Settlement, Sprint will also pay any and all claims administration and notice costs, separate and apart from any monetary relief that is being paid to the Fee Notice Sub-Class. These costs will be very substantial.

24. Finally, Sprint has agreed not to oppose and to pay, separate and apart from any monetary relief that is being paid to the Fee Notice Sub-Class, (i) Incentive Awards of $5,000 per Class Representative, which are intended to compensate Mr. Barkwell and Mr. Massey for their time and effort in the Action and for the risk they undertook in prosecuting the Action

against Sprint and (ii) Class Counsel's request for attorneys' fees and expenses of up to $500,000. Importantly, the Parties negotiated and reached agreement regarding these amounts only after reaching agreement on all other material terms of this Settlement.

## C.  Considerations Supporting Settlement.

25. Settlement negotiations were informed by the experience of counsel for both sides in the litigation, certification, trial, and settlement of nationwide class action cases. In particular, Class Counsel had the benefit of years of experience and a familiarity with the facts of this case as well as with other cases involving similar claims.

26. As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and Sprint's defenses, and engaged in pretrial and confirmatory discovery. Counsel's review of that extensive discovery enabled them to gain an understanding of the evidence related to central legal and factual issues in the case, prepared counsel for well-informed settlement negotiations, and supported Sprint's representations that the amounts Sprint collected from Sprint Surcharges were less than the costs Sprint paid in conjunction with government programs.

27. While Class Counsel are confident in the strength of our case, we are also pragmatic in our awareness of the various defenses available to Sprint and the risks inherent in continued litigation. Plaintiffs and all Settlement Class Members face the prospect of being forced to *individually* arbitrate their claims in the event the appellate courts reverse this Court's arbitration decision. In addition to the prospect of individual arbitration, Plaintiffs face the risk of dismissal on various theories, including the voluntary payment doctrine, as well as the denial of class certification on various theories, including multi-state law issues. The success of

Plaintiffs' claims in future litigation turns on these and other questions that were certain to arise in the context of motions for class certification and summary judgment and at trial.

28.     Protracted litigation carries inherent risks and inevitable delay.  Under the circumstances, Class Counsel determined that the Settlement outweighs the risks of continued litigation.

29.     In reaching the Settlement, Class Counsel were forced to consider the potential impact of Sprint's ongoing attempts to compel Plaintiffs and all members of the proposed class to *individually* arbitrate their claims, in addition to all of the other litigation risks created in this complex proceeding.

30.     If Sprint were successful in enforcing its arbitration agreement, the result would have effectively wiped out 100% of the value of Settlement Class Members' claims in the Action.  Moreover, the likelihood that more than a handful of Settlement Class Members could or would have successfully pursued *individual* arbitrations was virtually non-existent.  Thus, if Sprint were successful in enforcing its arbitration agreements, it would have effectively spelled the "death-knell" of Settlement Class Members' ability to successfully recover any damages arising from the Sprint practices challenged in the Action.

31.     Moreover, given that confirmatory discovery support Sprint's contention that its costs of complying with governmental programs exceeded the amounts it collected from Sprint Surcharges, it is possible Plaintiffs could have proven its claims but been unable to prove any actual damages at trial.

32.     Given these risks, the relief obtained through the Settlement is outstanding.

33.     The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiffs and Settlement Class Members through continued litigation could only

have been achieved if: (i) Sprint's effort to enforce mandatory, *individual* arbitration was defeated in its entirety on appeal; (ii) Plaintiffs succeeded in certifying a nationwide class and the Eleventh Circuit declined to accept Sprint's inevitable rule 23(f) petition; (iii) Plaintiffs and the certified class established liability at trial; (iv) Plaintiffs and the certified class proved and recovered damages at trial; and (v) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Class in light of Sprint's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent the Settlement.

34. The Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Ongoing litigation would involve substantial, expensive fact and expert discovery, lengthy additional pretrial proceedings in this Court and the appellate courts and, ultimately, a trial and appeal. Absent the Settlement, the Action would likely continue for two or more years.

35. Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

36. The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class and Fee Notice Sub-Class consist of millions of people throughout the United States, and joinder of all such persons is impracticable.

37. The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class and Fee Notice Sub-Class that center on Sprint's disclosure and assessment of Sprint Surcharges.

38. Plaintiffs are typical of absent Settlement Class Members and Fee Notice Sub-Class Members because they were subjected to the same Sprint practices and claim to have suffered from the same injuries, and because they will equally benefit from the relief provided by the Settlement.

39. Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class and Fee Notice Sub-Class, because Plaintiffs and absent Class Members have an equally great interest in the relief offered by the Settlement, and absent Class Members have no diverging interests.  Further, Plaintiffs are represented by qualified and competent Class Counsel with extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case.  We have devoted substantial time and resources to vigorous litigation of the Action from inception through the date of the Settlement.

40. Plaintiffs satisfy Rule 23(b)'s predominance requirement because liability questions common to all Settlement Class Members and Fee Notice Sub-Class Members substantially outweigh any possible issues that are individual to each such Class Members.  For example, each Settlement Class Member and Fee Notice Sub-Class Member's relationship with Sprint arises from a wireless services agreement that is the same or substantially similar in all relevant respects to other Class Members' agreements.  Furthermore, resolution of millions of

claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication.

We declare under penalty of perjury of the laws of Georgia and the United States that the foregoing is true and correct, and that this declaration was executed in Atlanta, Georgia on October 9, 2013.

                                                  */s/ E. Adam Webb*
                                                  E. Adam Webb

                                                  */s/ Matthew C. Klase*
                                                  Matthew C. Klase